LATHAM & WATKINS LLP
   Marvin S. Putnam (Bar No. 212839)
      *marvin.putnam@lw.com*
   Laura R. Washington (Bar No. 266775)
      *laura.washington@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Telephone:  +1.424.653.5500
Facsimile:  +1.424.653.5501

*Attorneys for Defendants*
Netflix, Inc., and
Netflix Worldwide Entertainment, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIONA HARVEY, | Case No. 2:24-cv-04744-RGK-AJR |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT** |
| v. | |
| NETFLIX, INC., and NETFLIX WORLDWIDE ENTERTAINMENT, LLC, | Date:      September 3, 2024<br>Time:      9:00 a.m.<br>Place:     Courtroom 850 |
| Defendants. | Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION. ........................................................................................... 1

II.    STATEMENT OF FACTS. ............................................................................. 3

    A.     Fiona Harvey. ..................................................................................... 3

    B.     The Series. .......................................................................................... 3

    C.     Harvey's Piers Morgan Interview. ..................................................... 5

    D.     Harvey's Allegations. ......................................................................... 5

III.   LEGAL STANDARD. ..................................................................................... 6

IV.    HARVEY'S CLAIMS SHOULD BE DISMISSED. ....................................... 7

    A.     Harvey Fails to Adequately Allege Defamation. ................................ 7

    B.     Harvey's Remaining Claims Must Be Dismissed As
           Duplicative. ....................................................................................... 11

    C.     Harvey's IIED Claim Independently Fails. ...................................... 12

    D.     Harvey's Negligence and Gross Negligence Claims Also
           Fail. ................................................................................................... 13

    E.     Harvey's Right of Publicity Claims Also Fail. ................................. 15

    F.     Harvey Fails to Adequately Allege Punitive Damages. .................... 16

V.     CONCLUSION. ............................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguilar v. Universal City Studios, Inc.*,
   174 Cal. App. 3d 384 (1985) ................................................................. 8

*Angie M. v. Superior Ct.*,
   37 Cal. App. 4th 1217 (1995) .............................................................. 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 6

*Atteukenian v. Ohio Sec. Ins. Co.*,
   2023 WL 8939218 (C.D. Cal. Nov. 17, 2023) .................................... 12

*Baez v. Pension Consulting All., Inc.*,
   2017 WL 9500979 (C.D. Cal. July 20, 2017) ..................................... 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 6

*Bowman v. Adams & Assocs., Inc.*,
   2022 WL 624882 (E.D. Cal. Mar. 3, 2022) ........................................ 13

*Brodeur v. Atlas Enter., Inc.*,
   248 Cal. App. 4th 665 (2016) ............................................................... 8

*Couch v. San Juan Unified Sch. Dist.*,
   33 Cal. App. 4th 1491 (1995) ............................................................. 11

*Daly v. Viacom, Inc.*,
   238 F. Supp. 2d 1118 (N.D. Cal. 2002) .............................................. 15

*De Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845 (2018) ............................................................... 10

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) .............................................................. 16

*Elliot v. Lions Gate Ent'mt Corp.*,
   639 F. Supp. 3d 1012 (C.D. Cal. 2022) ................................................ 4

ii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

*Epochal Enters., Inc. v. LF Encinitas Props., LLC*,
  99 Cal. App. 5th 44 (2024) ................................................................... 13

*Federico v. Superior Ct. (Jenry G.)*,
  59 Cal. App. 4th 1207 (1997) ................................................................ 13

*Ferlauto v. Hamsher*,
  74 Cal. App. 4th 1394 (1999) ............................................................. 7, 9

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.*,
  12 F. Supp. 2d 1068 (C.D. Cal. 1998) ..................................................... 8

*Gonzalez v. Planned Parenthood of Los Angeles*,
  759 F.3d 1112 (9th Cir. 2014) ................................................................. 7

*Guccione v. Hustler Mag., Inc.*,
  800 F.2d 298 (2d Cir. 1986) .................................................................... 9

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ............................................................................... 11

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
  129 Cal. App. 4th 1228 (2005) ............................................................. 12

*Keller v. Ling*,
  2023 WL 9511158 (C.D. Cal. Aug. 23, 2023) ..................................... 17

*Khodorkovskaya v. Gay*,
  5 F.4th 80 (D.C. Cir. 2021) ..................................................................... 8

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ................................................................. 7

*KOVR-TV, Inc. v. Superior Ct.*,
  31 Cal. App. 4th 1023 (1995) ............................................................... 12

*McClintock v. West*,
  219 Cal. App. 4th 540 (2013) ............................................................... 12

*McCollum v. CBS, Inc.*,
  202 Cal. App. 3d 989 (1988) ................................................................ 14

iii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

*Mossack Fonseca & Co., S.A. v. Netflix, Inc.*,
  2020 WL 8510342 (C.D. Cal. Dec. 23, 2020) ...................................................... 8

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) ................................................................................. 9

*Partington v. Bugliosi*,
  825 F. Supp. 906 (D. Haw. 1993), *aff'd*, 56 F.3d 1147 (9th Cir.
  1995) ...................................................................................................................... 9

*Pettitt v. Levy*,
  28 Cal. App. 3d 484 (1972) ................................................................................... 9

*Planet Aid, Inc. v. Reveal*,
  44 F.4th 918 (9th Cir. 2022) ............................................................................... 10

*Polydoros v. Twentieth Century Fox Film Corp.*,
  67 Cal. App. 4th 318 (1997) ............................................................................... 16

*Rivin v. Patrick K. Willis Co., Inc.*,
  2020 WL 8365251 (C.D. Cal. Dec. 4, 2020) ...................................................... 17

*ROF, LLC v. Travelers Prop. Cas. Co. of Am.*,
  2021 WL 3578672 (C.D. Cal. Apr. 21, 2021) ..................................................... 17

*Rowland v. Christian*,
  69 Cal. 2d 108 (1968) ......................................................................................... 14

*Sarver v. Hurt Locker LLC*,
  2011 WL 11574477 (C.D. Cal. Oct. 13, 2011) ..................................................... 8

*Schering Corp. v. First Databank Inc.*,
  2007 WL 1068206 (N.D. Cal. Apr. 10, 2007) ..................................................... 14

*Scott v. McDonnell Douglas Corp.*,
  37 Cal. App. 3d 277 (1974) ................................................................................... 9

*Seelig v. Infinity Broad. Corp.*,
  97 Cal. App. 4th 798 (2002) ............................................................................... 11

*Silva v. Hearst Corp.*,
  1997 WL 33798080 (C.D. Cal. Aug. 22, 1997) .................................................. 11

iv

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

*Standing Committee on Discipline of U.S. Dist. Court for Cent. Dist.*
*of California v. Yagman*,
55 F.3d 1430 (9th Cir. 1995) ................................................................ 8

*Tamkin v. CBS Broad., Inc.*,
193 Cal. App. 4th 133 (2011) ............................................................... 7

*Twentieth Century Fox Television a division of Twentieth Century Fox*
*Film Corp. v. Empire Distribution, Inc.*,
875 F.3d 1192 (9th Cir. 2017), *abrogated on other grounds by*
*Punchbowl, Inc. v. AJ Press, LLC*,
90 F.4th 1022 (9th Cir. 2024) ............................................................. 15

*Underwager v. Channel 9 Australia*,
69 F.3d 361 (9th Cir. 1995) .................................................................. 9

*Vijay v. Twentieth Century Fox Film Corp.*,
2014 WL 5460585 (C.D. Cal. Oct. 27, 2014) .................................... 16

*Wynberg v. Nat'l Enquirer, Inc.*,
564 F. Supp. 924 (C.D. Cal. 1982) ....................................................... 9

## STATUTES

Cal. Civ. Code
§ 47(b) ................................................................................................... 9
§ 3294(a) ........................................................................................ 16, 17

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend I .................................................................................. *passim*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

## I.     INTRODUCTION.

Defendants Netflix, Inc. and Netflix Worldwide Entertainment, LLC (collectively, "Netflix") create and distribute artistic content globally.  Netflix provides storytellers like Richard Gadd ("Gadd")—the creator of, and lead actor in, *Baby Reindeer* (the "Series")—the opportunity to display their creative works.  The Series—based on real events in Gadd's life—follows the character Donny Dunn ("Donny"), an aspiring comedian who struggles with his sexual identity and past sexual abuse.  Another character, Martha Scott ("Martha"), stalks, harasses, and physically assaults Donny, forcing him to confront his insecurities.

Well before the Series was released, plaintiff Fiona Harvey ("Harvey") was publicly accused of stalking and harassing Scottish attorney Laura Wray ("Wray"), wife of Labour Party Member of Parliament Jimmy Wray, and politician Donald Dewar ("Dewar"), the inaugural First Minister of Scotland.  After the Series' release and critical acclaim, Harvey came forward to claim the character Martha was actually her.  Harvey asserts defamation, intentional infliction of emotional distress, negligence, gross negligence, and right of publicity claims against Netflix.  Netflix's concurrently filed Special Motion to Strike ("Motion to Strike") seeks to strike Harvey's complaint in its entirety, as she cannot establish the required minimal merit to overcome the protections provided by California's anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute.  That said, Harvey's claims also fail at the pleading level, as explained in this motion to dismiss.

Harvey's defamation claim fails because she does not allege a provably false statement of fact was made about her.  None of the alleged statements can form a legal basis for defamation.  In fact, Harvey is incapable of showing reputational harm.  Her reputation was already tarnished by past news stories detailing her previous harassment and stalking of public figures.  And as a public figure herself, she must allege actual malice.  She does not even attempt to do so.  Her defamation

1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

claim thus fails, as do the rest of her derivative claims—each of which also independently fails for the following reasons.

*First*, Harvey fails to sufficiently allege intentional infliction of emotional distress because she does not allege Netflix engaged in outrageous conduct. Nor does she plausibly allege causation, as even if Harvey did suffer emotional distress, *Harvey*—not Netflix—caused it. The Series never mentions Harvey. Harvey became news only after *she* proclaimed she was the supposed inspiration for the Martha character. Any supposed harm was caused by Harvey, and Harvey alone.

*Second*, Harvey's negligence and gross negligence claims fail because Netflix does not owe her a legal duty separate from the duty not to defame, which is subsumed in Harvey's defamation allegations. In any event, if a supposed legal duty in negligence existed here (and it does not), Harvey cannot sufficiently allege breach. A disclaimer appears in every single episode indicating the Series is fictionalized for dramatic purposes, and her name appears nowhere in the Series. This clear notice only reinforces the care Netflix took to ensure the Series' fictionalized characters were not associated with real individuals. Harvey also fails to adequately allege causation because, again, *she* is the cause of any purported harm.

*Third*, Harvey's right of publicity claims fail because the Series is an expressive work protected by the First Amendment. They also separately fall because Harvey fails to plausibly allege that Netflix used her identity, much less that it would have been to Netflix's commercial advantage to do so. *Finally*, Harvey's request for punitive damages fails because she does not sufficiently allege fraud, oppression, or malice.

All of Harvey's claims should be dismissed. That said, as detailed extensively in Netflix's concurrently filed Motion to Strike, and as demonstrated by the accompanying evidence and declarations in support thereof, Harvey's claims are completely barred by the anti-SLAPP statute. As such, Netflix respectfully requests

2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

1  for judicial economy that the Court determine the merits of that Motion to Strike
2  before ruling on Netflix's motion to dismiss.

3  **II.    STATEMENT OF FACTS.**

4      **A.    Fiona Harvey.**

5      Harvey resides in England and has a publicly documented and judicially
6  noticeable history of alleged stalking. She was publicly accused of stalking Scottish
7  attorney Laura Wray, politician Donald Dewar (the inaugural First Minister of
8  Scotland), and former Labour Party Member of Parliament (now Prime Minister of
9  the United Kingdom) Keir Starmer. Declaration of Marvin S. Putnam ("Putnam
10 Decl.") Exs. B-D. As to Wray, Harvey was publicly accused of: (1) threatening
11 Wray's law firm; (2) calling Wray's clients and making threatening remarks about
12 Wray; (3) threatening Wray and her husband including leaving messages on their
13 answering machine stating "I'm going to get you" and otherwise issuing death
14 threats; and (4) falsely accusing the couple of abusing their disabled son. *Id.*, Exs.
15 B-C. As to Dewar, it was publicly reported that Harvey allegedly showed up at his
16 surgeries shouting and swearing at him. *Id.*, Ex. B. Harvey was reported to have
17 commented on these allegations. *Id.* It was also publicly reported that a formal
18 complaint was made to the police regarding Harvey "bombard[ing]" Starmer and
19 "other Labour party figures with hundreds of emails." *Id.*, Ex D. Harvey was also
20 publicly reported to have put herself forward as a candidate for the Scottish
21 Parliament and Westminster. *Id.* Exs. B, G.[1]

22      **B.    The Series.**

23      Gadd created, wrote, and starred in the Series, based on his play *Baby*
24 *Reindeer.* Compl. ¶ 24. Since premiering on Netflix on April 11, 2024, the Series
25 has become a worldwide phenomenon with over 56 million views. *Id.* ¶ 21. Netflix
26 has received praise for the Series. *Id.* ¶ 45.

27

28 _____
   [1] Fiona Harvey previously went by the name Fiona Muir. *See* Compl. Ex. 1.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

The Series follows fictionalized character Donny (played by Gadd), an aspiring comedian who grapples with his sexual identity and past sexual abuse. *See generally* Series.[2]  While Donny's character relays "this is a true story" once during the first episode, each episode includes a disclaimer that states:  "This program is based on real events:  however, certain characters, names, incidents, locations, and dialogue have been fictionalized for dramatic purposes." *See, e.g.*, Series Ep. 1 at 30:43.

Donny first meets Martha at his bartending job when she enters the pub crying. *Id.* at 02:06.[3]  Donny takes pity on her and gives her a free drink, and Martha proceeds to return during Donny's subsequent shifts. *Id.* at 02:25, 05:08.  When Martha says she needs someone to "hang her curtains," Donny, jokes, with sexual innuendo, that he'll "hang her curtains." *Id.* at 08:54.  Martha then starts showing up at his stand-up shows, frequently emails, asks him on dates, and sends a "friend request" on Facebook. *Id.* at 20:21, 23:07, 09:44, 27:37.  This leads to Donny searching Martha's name on the Internet, where he discovers that she has a history of stalking. *Id.* at 28:22.

Donny then begins dating a transgender woman but struggles with feelings of shame. *Id.* Ep. 2 at 03:20.  When she tries to publicly kiss him, Donny panics and flees. *Id.* at 20:50.  Suddenly, out of nowhere, Martha appears and follows him down a dark alley, corners him, and fondles him. *Id.* at 22:04.  This assault triggers painful memories of Donny's prior sexual abuse. *See generally id.* Ep. 4.  Martha, meanwhile, continues to stalk Donny, sitting outside his house for hours and harassing him at his comedy shows. *Id.* Ep. 3 at 12:20, 14:10, 27:07.  Donny

---

[2] The Complaint relies on the Series and attaches screenshots of scenes; the Court thus may consider the entire Series, which is incorporated by reference. *See, e.g.*, *Elliot v. Lions Gate Ent'mt Corp.*, 639 F. Supp. 3d 1012, 1021 (C.D. Cal. 2022).  A copy of the Series will be lodged with the Court.  Additionally, paragraph 41 of the Complaint relies on a newspaper article that accuses Harvey of stalking a lawyer, and the Court may also consider it, as it is incorporated by reference.

[3] Citations to time stamps indicate time elapsed in the episode.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

1  repeatedly reports Martha to the police. *See*, *e.g.*, *id.* Ep. 3 at 42:07; Ep. 5 at 15:44.

2  Finally, after Donny gives the police Martha's full name, they inform him that she

3  once stalked a policeman. *Id.* Ep. 5 at 16:23.   Martha then shows up at Donny's

4  work, they get into an argument, and Martha hits Donny in the head with a glass and

5  then grabs his face, digging her fingers into his eyes. *Id.* Ep. 6 at 14:10.

6      Shaken from the attack, Donny later attempts to perform at a comedy

7  competition but is overwhelmed. *Id.* at 22:35.   He suddenly details his history of

8  abuse in a cathartic monologue that goes viral, bringing Donny unexpected

9  recognition. *Id.* Ep. 7 at 00:20.   Martha then tracks down Donny's cell number and

10 calls him incessantly. *Id.* at 01:47.   At the police's suggestion, Donny listens to

11 hours of voicemails to show Martha is a threat. *Id.* at 10:00.   Her rapid-fire chatter

12 overlays a montage of Donny's daily activities. *Id.* at 10:40.   Martha ultimately

13 threatens to stab someone, *id.* at 12:55, and in a "dramatic[]" scene, Compl. ¶ 56,

14 she pleads guilty to stalking and harassment, is sentenced to prison, and a restraining

15 order is issued. Series Ep. 7 at 13:34.   After her sentencing, Donny stops into a bar

16 and orders a drink. *Id.* at 25:50.   In a poetic, full-circle moment, Donny starts to cry,

17 and the bartender offers him the drink for free. *Id.* at 26:26.

18      **C.    Harvey's Piers Morgan Interview.**

19      Following the release of the Series, but before she filed her Complaint, Harvey

20 appeared on the show *Piers Morgan Uncensored* hosted by British celebrity

21 journalist Piers Morgan.   Putnam Decl., Ex. A.

22      **D.    Harvey's Allegations.**

23      Harvey alleges that "all viewers" of the Series concluded she did the

24 "monstrous things" Martha does in the Series in real life. Compl. ¶¶ 29-35, 40-41.

25 To support this claim, Harvey alleges that viewers would understand the Martha

26 character *is* actually her because Donny character jokes that he will "hang [Martha's]

27 curtains," and Harvey allegedly once sent a tweet to Gadd that made a similar

28 reference. *Id.* ¶¶ 30-39.   Harvey further alleges that she shares some similarities

5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

1  with Martha which reinforce this understanding, namely that, (1) they are both
2  Scottish lawyers living in London who were accused of stalking a lawyer; (2) Martha
3  is older than Donny and Harvey is older than Gadd; (3) they "bear an uncanny
4  resemblance" to one another; and (4) they have similar accents and manners of
5  speaking. *Id.* ¶¶ 40-41. Also, according to Harvey, Netflix's statements on a
6  marketing website and before Parliament that the Series is a "true story" defame her
7  for the same reason. *Id.* ¶¶ 71-80.

8       Yet, Harvey concedes that her name does not appear in the Series, there are
9  no characters named after real persons, and dramatic scenes and content were created
10 to make the story emotionally compelling. *Id.* ¶¶ 2, 14-15, 20, 24, 27, 56, 60. Harvey
11 further concedes that the Series' portrayal of Martha is entirely "fabricated." Compl.
12 ¶ 27. She acknowledges both Gadd and Netflix sought to disguise any real persons
13 who served as inspiration for Gadd in creating the Series. Compl. ¶¶ 34, 77.

14      In addition to her defamation claim, Harvey asserts claims for intentional
15 infliction of emotional distress ("IIED"), negligence, gross negligence, and
16 violations of the common law and statutory right of publicity, each of which is based
17 on the same allegations as her defamation claim.

18 **III.   LEGAL STANDARD.**

19      To survive a motion to dismiss, "a complaint must contain sufficient factual
20 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
21 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550
22 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action,
23 supported by mere conclusory statements, do not suffice," nor do "'naked
24 assertion[s]' devoid of 'further factual enhancement.'" *Id.* The complaint must
25 allege sufficient "factual content" to create "the reasonable inference that the
26 defendant is liable for the misconduct alleged." *Id.* The Court need not accept as
27 true allegations that contradict matters properly subject to judicial notice or
28 documents incorporated by reference into the complaint. *Gonzalez v. Planned*

6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

1   *Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).

2   **IV.   HARVEY'S CLAIMS SHOULD BE DISMISSED.**

3       **A.      Harvey Fails to Adequately Allege Defamation.**

4           As detailed in Netflix's concurrently filed Motion to Strike, Harvey cannot

5   establish that her defamation claim is legally sufficient and substantiated.  The claim

6   is also not sufficiently pled for four independent reasons: (1) she fails to adequately

7   allege that the Series makes any provably false statement of fact about her; (2) the

8   alleged defamatory statements constitute legally protected opinion; (3) Harvey is a

9   libel-proof plaintiff; and (4) Harvey fails to allege actual malice.

10              1.    Harvey Fails to Allege a Provably False Statement of Fact.

11          Statements cannot form the basis of a defamation action if they cannot

12  reasonably be interpreted as stating actual facts *about an individual*.  *Ferlauto v.*

13  *Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999).   Courts consider "whether a

14  reasonable person . . . would understand that the fictional character therein pictured

15  was, in actual fact, the plaintiff acting as described," *Tamkin v. CBS Broad., Inc.,*

16  193 Cal. App. 4th 133, 146 (2011) (citation omitted), looking at the "totality of the

17  circumstances," *Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005), including

18  the broader context.  *Id.*  Here, the alleged statements occur amidst dramatic and

19  cinematic devices.  Moreover, Harvey does not allege the Series uses her name,

20  names any real persons from her life, or depicts any real events.  *See generally*

21  Compl.  In such context, no reasonable viewer could understand the Series to

22  somehow convey statements of fact about Harvey.

23          Harvey's lament that internet sleuths supposedly identified her from a single

24  tweet from a decade ago sent from the account @FionaHarvey2014 to

25  @MrRichardGadd, Compl. ¶ 35, that this tweet made her easy for the public to

26  identify, *id.* ¶ 36, and that broad similarities exist between her and the Martha

27  character, *id.* ¶¶ 40-41, do not plausibly allege that the Series is "of and concerning"

28  her.   After all, the legal test is whether *reasonable viewers*, not a specialized

7

1    audience, would understand the character Martha acted as Harvey did in real life.

2    *Aguilar v. Universal City Studios, Inc.*, 174 Cal. App. 3d 384, 391 (1985); *Standing

3    Committee on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*,

4    55 F.3d 1430, 1437-38 (9th Cir. 1995) (specialized audience not representative of

5    reasonable person).  Further, a "mere similarity" is "insufficient to establish a work

6    of fiction is of and concerning a real person," *Aguilar*, 174 Cal. App. 3d at 388,

7    especially here where Harvey necessarily admits Martha is "fabricated," Compl.

8    ¶ 27, and members of the public have speculated that several other women and a

9    man may have been inspiration for the Martha character.  Putnam Decl., Exs. E, F.

10       Even if a reasonable viewer would somehow understand the statements to be

11   "of and concerning" her, Harvey nonetheless still fails to plausibly allege that a

12   reasonable viewer would understand the statements in the Series—replete with over-

13   the-top cinematic elements—to be literally *factual*, especially in light of the

14   disclaimer appearing in every episode.  *See, e.g.*, *Brodeur v. Atlas Enter., Inc.*, 248

15   Cal. App. 4th 665, 680 (2016) (no reasonable viewer would understand film as

16   conveying objective facts given disclaimer); *Mossack Fonseca & Co., S.A. v. Netflix,

17   Inc.*, 2020 WL 8510342, at *4 (C.D. Cal. Dec. 23, 2020) (same); *Sarver v. Hurt

18   Locker LLC*, 2011 WL 11574477, at *8 (C.D. Cal. Oct. 13, 2011) (same).  Each

19   alleged defamatory statement is presented in the context of stylistic, cinematic

20   choices that reaffirm for the viewer that the Series is not a precise portrayal of

21   historical fact.  *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d

22   1068, 1081 (C.D. Cal. 1998) (use of rhetoric negates impression of fact);

23   *Khodorkovskaya v. Gay*, 5 F.4th 80, 86-88 (D.C. Cir. 2021) (context not factual

24   where comedic devices framed statements); *Brodeur*, 248 Cal. App. 4th at 680

25   (statement not factual where made by "slightly unhinged" character).  In short, the

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

general context and content of the Series demonstrates that no reasonable viewer could understand it as making statements of *fact about Harvey*.[4]

### 2. The Alleged Defamatory Statements Are Not Actionable.

Netflix's presentation of Gadd's story is legally protected opinion. The law protects Gadd's right to tell his story, his way. The First Amendment protects "an author writing about a controversial occurrence [who] fairly describes the general events involved and offers his personal perspective about some of its ambiguities and disputed facts." *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995). Crucially, where the storyteller was personally involved in the controversial story, viewers thus fully expect that the storyteller is biased and preferential to his own viewpoint. *See Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401-03 (1999). In such circumstances, "language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Id.* at 1401-02; *see also Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995).

### 3. Harvey Is A Libel-Proof Plaintiff.

Under the libel-proof doctrine, "a plaintiff's reputation with respect to a specific subject may be so badly tarnished that he cannot be further injured by allegedly false statements on that subject." *Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 303 (2d Cir. 1986); *see also Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 927-28 (C.D. Cal. 1982) ("[I]f an individual's general reputation is bad, he is libel proof on all matters."); *Partington v. Bugliosi*, 825 F. Supp. 906, 915 n.7 (D. Haw. 1993), *aff'd*, 56 F.3d 1147 (9th Cir. 1995) (citing *Guccione*, 800 F.2d at 303).

---

[4] Harvey also fails to plausibly allege the statements purportedly made by Netflix on Tudum.com and by Mr. King before Parliament are somehow statements of fact *about Harvey*. After all, those statements never mention Harvey. Regardless, statements made before Parliament are absolutely privileged under California Civil Code section 47(b), and thus cannot form the basis of a defamation claim. *See Scott v. McDonnell Douglas Corp.*, 37 Cal. App. 3d 277, 288 (1974); *Pettitt v. Levy*, 28 Cal. App. 3d 484, 488 (1972).

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

Harvey fits the bill of a libel-proof plaintiff.  She was publicly accused of stalking Scottish attorney Wray, and politician Dewar.  The public accusations made against her included, but were not limited to:  (i) threatening Wray's law firm and staff to the extent she had to issue them panic alarms due to their fright; (ii) threatening Wray and her husband, including leaving messages on their answering machine saying "*I'm going to get you*" and otherwise issuing *death threats*; (iii) *falsely accusing* Wray and her husband *of abusing their disabled son*; (iv) showing up to Dewar's surgeries and shouting, swearing, and calling him names; and (v) telling a London-based black female candidate for the Glasgow Cathcart Parliamentary nomination that she had been wheeled in at the last minute by men in Cathcart to "bump local Scottish women off the short list."  Putnam Decl., Exs. B, C, G.

These allegations, taken together, tarnished Harvey's public reputation such that none of the alleged defamatory statements could bring her reputation any lower. As such, Harvey is a libel-proof plaintiff, and her claim fails.

### 4.   Harvey Failed to Allege Netflix Acted with Actual Malice.

The First Amendment prohibits "public figures" from asserting defamation claims unless they can demonstrate that the defendant made the allegedly defamatory statement with "actual malice."  *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 856 (2018).  Harvey voluntarily injected herself into a public controversy concerning her stalking and harassment of various individuals and thereby became a limited purpose public figure on issues related to stalking, harassment, and assault.  *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 927 (9th Cir. 2022).  Despite this, Harvey does not really attempt to allege actual malice.  The closest she comes is alleging that Netflix failed to conduct due diligence, Compl. ¶¶ 81-84, but the Supreme Court has made clear that "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

1   sufficient to establish reckless disregard." *Harte-Hanks Commc'ns, Inc. v.*
2   *Connaughton*, 491 U.S. 657, 688 (1989).

3         **B.**    **Harvey's Remaining Claims Must Be Dismissed As Duplicative.**

4         It is well-established that when "a complaint alleges defamation, as well as
5   *other causes of action based on the same allegations*, the additional claims should
6   be dismissed as surplusage." *Silva v. Hearst Corp.*, 1997 WL 33798080, at *3 (C.D.
7   Cal. Aug. 22, 1997) (emphasis added).  Every allegation in Harvey's complaint is
8   connected to and made in support of her defamation claim.  *See* Compl. ¶¶ 19-29
9   (Harvey's summary of Series), 30-51 (Series' purported identification of Harvey and
10  her purported injury in connection with being supposedly identified as Martha), 52-
11  80 (a section labeled "Defamation" describing the purportedly defamatory
12  statements), 81-84 (allegations that Netflix failed to diligence the purported "lies"
13  before distributing), 85-86 (discussing the popularity of Series).  As such, Harvey's
14  claims for IIED, negligence, gross negligence, common law right of publicity, and
15  statutory right of publicity must be dismissed as "surplusage" because they do not
16  rely on any additional allegations beyond those already forming the basis of
17  Harvey's defamation claim.  *Silva*, 1997 WL 33798080, at *3 ("Although [plaintiff]
18  may claim emotional distress damages as part of her defamation claim, she may not
19  bring a separate claim for IIED."); *see also, e.g.*, *Baez v. Pension Consulting All.,*
20  *Inc.*, 2017 WL 9500979, at *5 (C.D. Cal. July 20, 2017) (dismissing negligence
21  claim where plaintiff "relie[d] on the same core nucleus of facts" as defamation
22  claim); *Seelig v. Infinity Broad. Corp.,* 97 Cal. App. 4th 798, 812 (2002) (striking
23  IIED, invasion of privacy, and negligent hiring, retention and supervision of
24  employees claims); *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491,
25  1504 (1995) ("When claims for invasion of privacy and emotional distress are based
26  on the same factual allegations as those of a simultaneous libel claim, they are
27  superfluous and must be dismissed.").
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

### C.    Harvey's IIED Claim Independently Fails.

To state a claim for IIED, Harvey had to allege that Netflix engaged in "outrageous conduct" that was the proximate cause of her purported emotional distress. *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc*., 129 Cal. App. 4th 1228, 1259 (2005). Harvey wholly failed to do so. She does not identify what specific conduct was supposedly "outrageous," instead referring vaguely to "Defendants' conduct herein." Compl. ¶ 98. Outrageous conduct is conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized society." *McClintock v. West*, 219 Cal. App. 4th 540, 556 (2013); *see also KOVR-TV, Inc. v. Superior Ct.*, 31 Cal. App. 4th 1023, 1028-31 (1995) (interviewing young children, with no adults present, concerning the murder of two children and their mother); *Angie M. v. Superior Ct.*, 37 Cal. App. 4th 1217, 1225-26 (1995) (48-year-old medical doctor having sexual relationship with minor while providing her alcohol and controlled substances).

No conduct that Harvey alleges comes close to "outrageous." The Series does not even mention Harvey. And even if the Martha character were not fictitious, a reasonable viewer would not have associated Martha with Harvey. The possibility that an internet sleuth might have connected the Series' use of the phrase "hang your curtains" with a single tweet from Harvey 10 years ago, Compl. ¶ 35, does not equate to conduct "so extreme as to exceed all bounds of that usually tolerated in civilized society." *McClintock*, 219 Cal. 4th at 556. The disclaimer in each episode only reinforces the *reasonableness* of Netflix's conduct in distributing the Series. *See, e.g.*, Series Ep. 1 at 30:43. Even if Netflix somehow intended to out Harvey as Gadd's stalker (and it did not), "accusing a person of stalking" and "stating that one is afraid of [her]" is not "extreme and outrageous" conduct. *McClintock*, 219 Cal. App. 4th at 556. Nor is any purported failure to investigate. *Atteukenian v. Ohio Sec. Ins. Co.*, 2023 WL 8939218, at *2 (C.D. Cal. Nov. 17, 2023) ("[R]efusal to properly investigate" is not outrageous "even if intentional and willful"); *Bowman*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

1   *v. Adams & Assocs., Inc.*, 2022 WL 624882, at *11 (E.D. Cal. Mar. 3, 2022) (failing
2   to investigate does not in itself constitute extreme and outrageous conduct).

3       Harvey also fails to plausibly allege that Netflix's supposedly "outrageous"
4   conduct was the actual and proximate cause of her emotional distress.  She alleges
5   that "a[f]ter being identified," she has been "tormented," and "suffer[ed] emotional
6   distress."  Compl. ¶ 43.  And she claims that she "is fearful of leaving her home or
7   checking the news." *Id.* ¶ 44.  But Harvey had no problem leaving home or *becoming*
8   the news on May 9, 2024, when she sat down with Piers Morgan for a nearly hour-
9   long interview.  Putnam Decl., Ex. A.  These judicially noticeable facts make clear
10   that Harvey, not Netflix, was the actual and proximate cause of any purported
11   emotional distress she suffered as a result of being "identified" as Martha.

12       **D.    Harvey's Negligence and Gross Negligence Claims Also Fail.**

13       To state a claim for negligence or gross negligence, Harvey needed to allege
14   "(1) the existence of a legal duty to use due care; (2) a breach of that duty; and (3)
15   the breach as a proximate cause of the plaintiff's injury."  *Federico v. Superior Ct.*
16   *(Jenry G.)*, 59 Cal. App. 4th 1207, 1210–11 (1997); *see also Epochal Enters., Inc.*
17   *v. LF Encinitas Props., LLC*, 99 Cal. App. 5th 44, 56 (2024) ("Because gross
18   negligence is simply a degree of negligence, the elements of a claim for gross
19   negligence is the same as one for ordinary negligence."); *id.* at 55 (noting there is no
20   "distinct common law cause of action for gross negligence").  Harvey does not
21   sufficiently allege any of these elements, let alone all of them.

22       *First*, Harvey asserts that Netflix owed her a duty of care "to accurately
23   represent her in *Baby Reindeer*," "to confirm the details of allegations made about
24   her in *Baby Reindeer* as true," and "to sufficiently ensure Harvey could not be
25   identified based on information in *Baby Reindeer*."  Compl. ¶ 105.[5]  These
26   allegations all relate to how she was purportedly depicted in the Series.  They are

27   _____

28   [5] Harvey does not allege that Netflix has any "special relationship" that would give
   rise to a duty of care to her.  *See generally* Compl.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

1   defamation allegations.  They cannot *also* be the basis for Harvey's negligence

2   claims.  It is well-established that a streamer like Netflix owes no duty to confirm or

3   ensure the accuracy of works it streams—separate from the duty not to defame,

4   which is subsumed in Harvey's defamation allegations.  *See, e.g.*, *Schering Corp. v.*

5   *First Databank Inc.*, 2007 WL 1068206, at *7 (N.D. Cal. Apr. 10, 2007) ("[Plaintiff]

6   has cited no authority from [] California . . . establishing that a publisher of

7   information owes a duty of care to the subject of its statements where the publisher

8   is also sued, as here, for defamation or product disparagement.  Nor has the Court

9   found any authority supporting this proposition.").

10      But even assuming that Harvey could assert a separate negligence claim based

11  on allegations regarding her purported depiction in the Series, there is still no duty

12  as a matter of law.  California courts have declined to find a duty under the *Rowland*

13  factors, *see Rowland v. Christian*, 69 Cal. 2d 108 (1968), for claims implicating

14  expression.  *See, e.g.*, *McCollum v. CBS, Inc.*, 202 Cal. App. 3d 989, 1005-06 (1988)

15  (not acceptable to impose duty upon artists to restrict creativity to avoid

16  dissemination of artistic speech).  The Series is indisputably an expressive work, and

17  Netflix thus does not owe Harvey a duty with respect to its dissemination.  Absent

18  any such legal duty, Harvey's negligence and gross negligence claims fail.

19      *Second*, even if Netflix somehow owed Harvey a duty of care (it did not),

20  Harvey still fails to adequately allege that Netflix breached that duty.  As discussed,

21  a reasonable viewer would not associate Martha with Harvey, and the possibility that

22  an internet sleuth might have connected the Series' use of the phrase "hang your

23  curtains" with a single decade-old tweet, Compl. ¶ 35, does not indicate that Netflix

24  therefore breached any purported duties Harvey wishes to ascribe.  The disclaimer

25  in each episode only reinforces the care Netflix took to ensure fictionalized

26  characters were not associated with real individuals.  *See, e.g.*, Series Ep. 1 at 30:43.

27      *Finally*, Harvey fails to plausibly allege that any purported breach of duty was

28  the proximate cause of her purported injury.  As with her IIED claim, she alleges

14

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

that "[s]ince being identified as the real 'Martha,'" she has experienced "panic, fear, anxiety, sleeplessness, and despair" and "is reluctant to go outside, watch the news, and has become inhumanly isolated."  Compl. ¶ 108.  Yet, again, Harvey, not Netflix, was the proximate cause of any injury she suffered given that she identified herself as the Martha character.  Putnam Decl., Ex. A.

### E.    Harvey's Right of Publicity Claims Also Fail.

As a threshold matter, Harvey cannot maintain a right of publicity claim because the Series is an expressive work subject to First Amendment protection. "Under the First Amendment, a cause of action for appropriation of another's 'name and likeness may not be maintained' against 'expressive works, whether factual or fictional.'" *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002).  This protection applies "'[w]hether the publication involved was factual and biographical or fictional'" as "privacy rights have 'not been held to outweigh the value of free expression.'"  *Id.*  After all, "entertainment is entitled to the same constitutional protection as the exposition of ideas."  *Id.*  Expressive works encompass a wide variety of media sold for profit, including books, plays, movies, and video games. *Twentieth Century Fox Television a division of Twentieth Century Fox Film Corp. v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017) (a "television show itself is clearly an expressive work"), *abrogated on other grounds by Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028 (9th Cir. 2024).  It is indisputable that the Series is an expressive work, and the First Amendment prevents Harvey from maintaining a right of publicity cause of action.

Even if the Series were not an expressive work (it is), Harvey's claims would still fail.  To state a right of publicity claim, Harvey must *also* allege "knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose."  *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).  Harvey cannot plausibly allege that Netflix used Harvey's identity. Harvey does not contend that the Series uses any historical footage of her, that it

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

1    uses her name, or that it depicts real events from her life. *See generally* Compl.

2    Indeed, the only allegedly identifying characteristics are that she is a female Scottish

3    lawyer, living in London, who visited a pub that Gadd worked at in 2014. These

4    details are far too general to establish the use of her likeness. *Polydoros v. Twentieth*

5    *Century Fox Film Corp.,* 67 Cal. App. 4th 318, 325 (1997) (plaintiff "not entitled to

6    recover under a commercial appropriation of name or likeness theory merely

7    because respondents used a name that sounds like [plainitff's] name" and "[b]ecause

8    [defendants] were creating a fictionalized artistic work, their endeavor is

9    constitutionally protected").

10    Moreover, she fails to adequately allege that the appropriation of her name

11    was somehow to Netflix's advantage commercially or otherwise. Instead, she only

12    includes conclusory assertions to that effect. *See* Compl. ¶¶ 119, 125. Even then,

13    she fails to allege that there is *any* commercial value actually associated with her

14    name. *See generally* Compl.; *see also Vijay v. Twentieth Century Fox Film Corp.*,

15    2014 WL 5460585, at *4 (C.D. Cal. Oct. 27, 2014) ("Nor can it be said that it is

16    Plaintiff's likeness that is generating such economic value that Plaintiff's right to his

17    appearance must be protected above Defendants' First Amendment rights to use his

18    likeness in an expressive work.").

19    **F.    Harvey Fails to Adequately Allege Punitive Damages.**

20    Punitive damages are only available where "it is proven by clear and

21    convincing evidence that the defendant has been guilty of oppression, fraud, or

22    malice." Cal. Civ. Code § 3294(a). At the pleading stage, "[d]istrict courts in

23    California regularly dismiss punitive damages claims for lack of specificity." *ROF,*

24    *LLC v. Travelers Prop. Cas. Co. of Am.*, 2021 WL 3578672, at *3 (C.D. Cal. Apr.

25    21, 2021). Harvey seeks punitive damages with respect to her defamation, IIED,

26    gross negligence, and right of publicity claims. Compl. ¶¶ 96, 103, 117, 130. As to

27    defamation, IIED, and gross negligence, Harvey alleges only that punitive damages

28    are warranted based on Netflix's "outrageous" conduct. *Id.* ¶¶ 96, 103, 117. That is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT

1  not the standard.  *See* Cal. Civ. Code § 3294(a).  Even if it were, Netflix's conduct

2  was not "outrageous," *see supra* at Section IV.C, and Harvey does not otherwise

3  plead any facts "that could plausibly give rise to a finding of fraud, oppression, or

4  malice."  *Rivin v. Patrick K. Willis Co., Inc.*, 2020 WL 8365251, at *3 (C.D. Cal.

5  Dec. 4, 2020).  As to the right of publicity claim, Harvey does not allege *any* basis

6  whatsoever for punitive damages.  Compl. ¶ 130; *see also Keller v. Ling*, 2023 WL

7  9511158, at *2 (C.D. Cal. Aug. 23, 2023) (same punitive damages standard for Civil

8  Code Section 3344 claim).  Finally, Harvey's "catch-all" regarding punitive

9  damages, Compl. ¶ 131, is impermissibly conclusory.  *Rivin*, 2020 WL 8365251, at

10  *3 (dismissing punitive damages prayer where "[t]he FAC merely regurgitates the

11  definition of malice, fraud, and oppression").  The Court should dismiss Harvey's

12  punitive damages demand.

13  **V.     CONCLUSION.**

14         For the foregoing reasons, Netflix respectfully requests that the Court dismiss

15  all of Harvey's claims for failure to state a claim.

16

17  Dated:  July 29, 2024                                    Respectfully submitted,

18                                                                          LATHAM & WATKINS LLP
                                                                            Marvin S. Putnam
19

20                                                                          By  /s/ *Marvin S. Putnam*
                                                                            Marvin S. Putnam
21                                                                          Attorneys for Defendants
                                                                            Netflix, Inc., and Netflix Worldwide
22                                                                          Entertainment, LLC

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Netflix, Inc., and Netflix Worldwide Entertainment, LLC, certifies that this brief contains 5,593 words, which complies with the word limit set by the Court's standing order.  In making this calculation, I have relied on the word count of the word-processing system used to prepare the document.

Dated: July 29, 2024                    By:  */s/ Marvin S. Putnam*
                                             Marvin S. Putnam

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT