Richard A. Roth * *Pro Hac Vice*
Email: Richard@rrothlaw.com
Brian S. Levenson * *Pro Hac Vice*
Email: Brian@rrothlaw.com
THE ROTH LAW FIRM, PLLC
295 Madison Avenue, 22nd Floor
New York, NY 10017
Phone: 212-784-6699

Allen Hyman (California State Bar No. 73371)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, CA 91602
Phone: (818) 763-6289
Fax: (818) 763-4676
E-mail: lawoffah@aol.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIONA HARVEY,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>NETFLIX, INC. and NETFLIX WORLDWIDE ENTERTAINMENT, LLC,<br><br>　　　　　　　　　Defendants. | Case No. 2:24-cv-04744-RGK-AJR<br><br>**PLAINTIFF'S MEMORANDUM OF LAW TO STRIKE THE DECLARATIONS OF LAURA WRAY, RICHARD GADD, AND LOUISE OAKLEY**<br><br>Hearing Date: Sept. 23, 2024<br>Time: 9:00 a.m.<br>Place: Courtroom 850<br><br>Hon. R. Gary Klausner |

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**

# TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................. 1

**BACKGROUND** .................................................................................................... 3

    A. Laura Wray's Declaration ............................................................................ 4

    B. Richard Gadd's Declaration ......................................................................... 6

    C. Louise Michelle Oakley's Declaration ........................................................ 7

**POINT I:   LEGAL STANDARD** ....................................................................... 8

**POINT II:   ARGUMENT** ..................................................................................... 8

    A. Laura Wray's Declaration And All Exhibits Thereto Should Be Struck As Immaterial, Impertinent and Scandalous......................................................... 8

    B. Richard Gadd's Declaration and Exhibits Thereto Should Be Struck As Immaterial, Impertinent and Scandalous......................................................... 9

    C. Louise Michelle Oakley's Declaration Should Be Struck ......................... 10

        1. Failure to Give Rule 44.1 Notice .................................................. 10

        2. Failure to Qualify under FRE 702 and *Daubert I*......................... 11

**CONCLUSION** .................................................................................................... 13

i

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF LAURA WRAY, RICHARD GADD AND LOUISE MICHELLE OAKLEY**
Case No. 2:24-cv-04744-RGK-AJR

## TABLE OF AUTHORITIES

**CASES**

*Allison v. McGhan Med. Corp.*,
    184 F.3d 1300 (11th Cir. 1999). .................................................................... 11

*Carrigan v. California State Legislature*,
    263 F.2d 560 (9th Cir. 1959) ..................................................................... 8, 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579, 113 S.Ct. 2786 (1993) .................................................. 8, 10, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir.1995) ......................................................................... 12

*DP Aviation v. Smiths Indus. Aerospace and Def. Sys. Ltd.*,
    268 F.3d 829 (9th Cir. 2001).) ...................................................................... 11

*Eastridge Dev. Co. v. Halpert Assoc., Inc.*,
    853 F.2d 772 (10th Cir. 1988) ...................................................................... 13

*HFGL Ltd. v. Alex Lyon & Sons*,
    264 F.R.D. 146 (D.N.J. 2009) ....................................................................... 12

*Krish v. Balasubramanian*,
    2006 WL 2884794 (E.D. Cal. 2006) ............................................................. 13

*Lanza v. Poretti*,
    537 F.Supp. 777 (E.D. Pa. 1982) .................................................................... 3

*Lithuanian Commerce Corp., v. Sara Lee Hosiery*,
    177 F.R.D. 245 (D.N.J. 1997) ....................................................................... 13

*Metabolife Intern., Inc. v Wornick*,
    264 F.3d 832 (9th Cir 2001) .......................................................................... 11

ii

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF LAURA WRAY, RICHARD GADD AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**

*Minebea Co v. Pabst*,
　444 F. Supp. 2d 68 (D.D.C. 2006) ................................................................. 12

*Nee v. Federal Deposit Insurance Corporation*,
　2011 WL 13185691, *1 (C.D.Cal. 2011) ......................................................... 8

*Nieves–Villanueva v. Soto–Rivera*,
　133 F.3d 92 (1st Cir.1997) ............................................................................. 12

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
　627 F.3d 402, 404 (9th Cir. 2010), ................................................................... 8

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*,
　2007 WL 935703 (S.D. Cal. 2007) ................................................................ 11

*United States v. Bighead*,
　128 F.3d 1329 (9th Cir. 1997) ........................................................................ 13

*United States v. Castle*,
　2024 WL 85604 (E.D.Cal. 2024). ..................................................................... 8

*United States v. Prigmore*,
　243 F.3d 1 (1st Cir.2001) ............................................................................... 12

**STATUTES**

Fed R. Civ. P. 44.1 .................................................................................... 10, 11

Fed. R. Evid. 401 ............................................................................................. 9

Fed. R. Evid. 702 ..................................................................................... 11, 12

# INTRODUCTION

Fiona Harvey filed a straightforward defamation action against Netflix asserting that it made false statements in the Netflix series *Baby Reindeer* (the "Series") about her. The Complaint specifically alleges that the following statements by Netflix were false and defamatory: (1) Harvey is a twice convicted criminal who served five years in prison; (2) Harvey sexually assaulted Richard Gadd by grabbing his penis until he "beated'; (3) Harvey violently attacked Richard Gadd by gouging his eyes with her thumbs and smashing a glass over his head; (4) Harvey waited outside Richard Gadd's house for 16 hours a day; (5) Harvey stalked a police officer (the "Defamatory Statements"). Complt., ¶ 88.

In its motion to strike pursuant to California's anti-SLAPP statute, Netflix does not dispute that *none* of these events actually happened. Netflix even admitted to UK Parliament that "the person on whom the show is based [Harvey]" had not been convicted of a crime. See Declaration of Brian S. Levenson in Opposition to Motion to Strike ("Levenson Decl."), Exh. 3.

Nonetheless, in support of its motion to strike, Netflix has submitted two Declarations from Richard Gadd (ECF # 23-1; ECF # 27; ECF #35) and Laura Wray (ECF # 26-27) that are not relevant but deeply impertinent and scandalous. Netflix has also submitted the Declaration of Louise Michelle Oakley (ECF # 26-3) a barrister in the United Kingdom who has offered the opinion that "there was sufficient evidence to provide a realistic prospect of conviction" of Plaintiff of stalking punishable by up to eight years in prison based on conduct that occurred over 20 years ago. Oakley Decl., ¶¶ 80-84. The Court should strike each of these declarations and not consider them on Defendants Motion to Strike.

The Declaration of Laura Wray is not relevant because *none* of the events or conduct described in Wray's declaration or the exhibits thereto, all of which took

1

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**

place over 20 years ago, is referenced in the Complaint or even in the *Baby Reindeer* series itself. The Wray Declaration does not make any of the undisputed facts at issue, more or less probable. Nor could they since Netflix concedes that the false statements at issue in the Series are fictional. Further, Wray's declaration of irrelevant facts and exhibits relate to *her experience* with Harvey, which does not form any part of the Complaint. Accordingly, the Wray Declaration should be struck entirely and Laura Wray should be precluded from testifying at trial.

The Declaration of Richard Gadd is equally irrelevant, impertinent, and scandalous. Gadd does not dispute that Netflix's statements about Harvey are false. Instead, Gadd denies that Harvey is 'Martha' and claims that the Series is "fictionalized." This is where Gadd's declaration ceases to have any bearing on Netflix's motion to strike.

From that point on, in what can be fairly described as scorched earth litigation, Gadd describes in detail over the course of 17 pages, his "real life experiences with Fiona Harvey" and unloads what he claims are sixty *real* emails, messages, and letters, from Harvey that are at all times, irrelevant, impertinent and scandalous. As an initial matter, if Harvey is not 'Martha' as Gadd insists, then there is no relevance in Gadd thoroughly documenting his "real life experiences with Fiona Harvey." But more baffling is how Gadd can claim under oath that Harvey is not 'Martha' when every interaction Gadd recalls about Harvey is identically attributed to Martha in the Series. Gadd Decl., ¶¶ 14-15, 19, 22.

Regardless, other than Exhibit 44 which confirms Harvey did not wait outside Gadd's home for 16 hours per day because Harvey did not know where Gadd lived (Complt., ¶ 88), not one of Gadd's Exhibits 1-60 relates to Netflix's Defamatory Statements or Harvey's Complaint, and all the exhibits are scandalous and prejudicial with no relevance – they purport to be Harvey's sexually explicit

2

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**

1  messages to Gadd or emails that purport to include racist remarks by Harvey. Harvey
2  does not concede these are authentic, given all the lying that has already been
3  documented in this case, and the fact that discovery has not commenced and native
4  files have not been produced. But, *even if* these emails are legitimate, they do not
5  make any fact concerning Harvey's defamation claims more or less probable. As
6  Netflix concedes, Gadd's exhibits "are awash with violent hate speech and sexually
7  explicit, deeply disturbing vitriol that is *nowhere depicted in the Series.*" Netflix Br.
8  at 14. Accordingly, paragraphs 23-65 of Gadd's declaration and Exhibits 1-60
9  thereto, should be struck, **except the last sentence of Paragraph 41 and Exhibit 44,**
10 which confirm that Harvey did not wait outside Gadd's home 16 hours per day
11 because Harvey did not know where Gadd lived. Gadd Decl., ¶ 41, Exh. 44.

12       Finally, Netflix offers the Declaration of Louise Michelle Oakley, a barrister
13 in the UK who has been hired as an expert by Defendants to offer the opinion that
14 "there was sufficient evidence to provide a realistic prospect of conviction" of
15 Plaintiff of stalking punishable by up to eight years in prison based on conduct that
16 occurred over 20 years ago. Oakley Decl., ¶¶ 80-84. Netflix cites no authority that
17 would support the consideration of an expert's opinion that someone could
18 hypothetically have been convicted of a crime based on a set of assumed facts. Based
19 on Oakley's hypothetical conviction of Harvey, Netflix argues that the defamatory
20 statements are thus nonactionable as they are "substantially true." Defendant's Brief,
21 p. 14. The Oakley Declaration is unduly speculative and should be struck.

## BACKGROUND

*Baby Reindeer* is a hit television series by Netflix. Netflix represents that the Series is a "true story" written by Richard Gadd, about Richard Gadd's experience

1  with a real-life stalker. To make the Series as true as possible, Gadd plays himself in
2  the Series and relives, on screen, his own account of being stalked.
3      Gadd's stalker, 'Martha' has the same personal history, age, nationality,
4  accent, cadence, occupation, physical appearance, residence, social media messages,
5  and history of being accused of stalking a barrister, as plaintiff, Fiona Harvey.
6  Harvey was immediately identified as 'Martha' after *Baby Reindeer* premiered in
7  April 2024 and began to receive death threats and messages on Facebook calling her
8  a rapist and telling her to kill herself.
9      Prior to Harvey filing suit, Netflix acknowledged in a letter to UK Parliament
10 it was wrong when it said that "the person on whom the show is based" was
11 convicted. Levenson Decl., Exh. 3. Harvey filed suit alleging Netflix defamed her
12 by making the Defamatory Statements in the Series. Netflix filed a special motion to
13 strike in which it conceded *Baby Reindeer* was "fictionalized." Netflix Decl., ¶¶ 7-8;
14 Gadd Decl., ¶¶ 5, 9-10, 13. Despite its representation that *Baby Reindeer* is a true
15 story, Netflix now does not claim that any of the conduct that is the subject of the
16 Defamatory Statements actually happened. Instead of defending its "true story" as
17 true, Netflix has submitted declarations from Richard Gadd and Laura Wray that
18 only serve as a means to gift Netflix's 50 million viewers, who already have made
19 death threats against Harvey, with impertinent, scandalous and irrelevant materials to
20 feed their hatred of her.

21 **A.    Laura Wray's Declaration**

22      The Wray Declaration provides detailed anecdotes about Harvey's
23 employment with her law firm in 1997 that caused Wray to terminate Harvey. Wray
24 Decl., ¶¶ 4-6. Following Wray's decision to terminate Harvey, Wray claims that
25 Harvey harassed and stalked Wray and her husband, who was a member of
26 Parliament. Wray Decl., ¶¶ 3, 7. Wray states communicated her concerns about

4

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**

Harvey to the Law Society of Scotland, Harvey continued to harass with calls and letters, and Wray again express her concerns to the Law Society. Wray Decl., ¶¶ 8-18. Wray claims that Harvey made false reports to the authorities about the Wray mistreating their developmentally disabled son. Wray Decl., ¶¶ 19-20. Wray contacted the police on "several occasions between 1997 and 2002" but they took no action. Wray Decl., ¶ 21. Wray obtained an Interim Interdict (a temporary restraining order) in 2002. Wray Decl., ¶ 21. Wray states she did not hear from Harvey after 2002 until *Baby Reindeer* was released in April 2024. Wray Decl., ¶ 25. Wray claims Harvey stalked other politicians. Wray Decl., ¶ 32. Wray provides 16 exhibits, primarily consisting of her correspondence in the late 1990s with the Law Society, another law firm, the Interim Interdict, and articles about Wray's allegations of being stalked by Harvey. Wray Decl., Exhs. 1-16.

**B.     Richard Gadd's Declaration**

The Gadd Declaration provides details on his professional accomplishments. Gadd Decl., ¶¶ 1-5. In his declaration, Gadd describes the *Baby Reindeer* Series as "based on my life and real-life events" and that he "created fictionalized characters, including Martha" and that he "used [his] real-life experiences to craft the Martha character." Gadd Decl., ¶ 9-11. Gadd claims, "Martha is a fictional character" (Gadd Decl., ¶ 67) and that he "did not write the Series as a representation of actual facts about any real person, including Fiona Harvey." Notwithstanding Gadd's statements that 'Martha' is fictional" and "Martha is not Fiona Harvey" (Gadd Decl., ¶ 67), Gadd inexplicably writes 17 pages of details about his "real-life experience with Fiona Harvey under a section heading, "Real-Life Experiences With Fiona Harvey" that serve no purpose other than to publicly humiliate Harvey. Gadd Decl., ¶¶ 14-65.

Gadd's real-life experiences with Harvey are depicted note for note in *Baby Reindeer* as 'Martha.' These experiences include meeting Harvey at the pub where

5

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**

Gadd worked (Episode One at 1:43), offering her a cup of tea on the house (Episode One at 2:27), engaging in banter (Episode One at 5:55 – 8:15), discussing their common Scottish heritage (Episode One at 12:00-12:15). Gadd Decl., ¶ 14. Gadd states that after that first meeting, Harvey stalked and harassed Gadd by "frequently appearing at the pub" including arriving at the pub before his shift started, and "interjecting as [Gadd] tried to serve tables" (Episode Two at 12:00 – 13:00). Gadd Decl., ¶ 15. Gadd states that when "Harvey once mentioned to a customer a bad review about [his] comedy show"" (Episode 6 at 14:45 – 16:23); Gadd Decl., ¶ 19. Gadd recalls that Harvey went to his comedy shows (Episode One at 20:20); Gadd Decl., ¶ 21. In addition, Gadd states that Harvey emailed him "relentlessly throughout all hours of the day and night" (Episode One at 9:50); Gadd Decl., ¶ 22, and that Harvey sent Gadd hundreds of voicemails (Episode Seven at 10:15-12:00); Gadd Decl., ¶ 23.

However, after these initial 23 paragraphs, Gadd's declaration takes a sharp turn. Paragraphs 24-65 of Gadd's Declaration are Gadd's explanations of Exhibits 1-60 that he annexed to his Declaration. Exhibits 1-60 are emails and letters that Gadd claims Harvey sent him between 2015 and 2017 which "frequently contained hateful speech and derogatory racist and homophobic language." Gadd Decl., ¶ 24. Gadd includes emails purportedly from Harvey to support his statement that Harvey is hateful racist and homophobe who threatened him. Gadd Decl., ¶ 25-30. Gadd includes emails to support his statement that Harvey "regularly propositioned [him[ with lewd and explicit language." Gadd Decl., ¶¶ 33 -37. Gadd includes his emails with the police about Harvey. Gadd Decl., ¶¶ 40-41, 46-47, 50. Gadd provides angry voicemails that Harvey left for Gadd. Gadd Decl., ¶¶ 44, 46, 48. Paragraphs 57–65 of Gadd's declaration explain the contents of Harvey's purported emails concerning Harvey's problems with her sister, a trust and estate law firm, and politicians.

6

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY**
Case No. 2:24-cv-04744-RGK-AJR

## C. Louise Michelle Oakley's Declaration

Louise Michelle Oakley's Declaration provides detail on her professional accomplishments. Oakley Decl., ¶¶ 7-17. In her declaration, Oakley explains the background regarding criminal stalking laws in the United Kingdom and how such cases are prosecuted. Oakley Decl., ¶¶ 18-79. Oakley then lists the materials she reviewed (Oakley Decl., ¶¶ 80-81) and, while conceding that "it is not [ her ] function to decide whether a person is guilty of a criminal offence…" she offers her opinion that Plaintiff "pursued a course of conduct towards Richard Gadd that amounted to stalking," and that "there was sufficient evidence to provide a realistic prospect of conviction in respect of at least one charge of stalking" and that Plaintiff's alleged unwanted sexual touching "is capable of amounting to a sexual assault." Oakley Decl., ¶¶ 82, 84.

Having convicted Plaintiff of hypothetical stalking and sexual assault offenses, Oakley then leaves her self-appointed roles of prosecutor and trial jury and wraps herself in the judge's robe (and perhaps a wig) for sentencing. She classifies the hypothetical stalking offense as a "category 1" (the highest level) offense and pronounced that "5 years imprisonment with a category range of 3 ½ years - 8 years custody," would be the "starting point". Oakley Decl., ¶ 84. As for the sexual assault charge, Oakley opines that Plaintiff "did not commit one single sexual offense. She committed multiple incidents…" and decides that the factors in the Sentencing Council Guidelines "do not adequately reflect the culpability of Fiona Harvey and/or the harm caused to Richard Gadd". Based on these findings, Oakley bangs the gavel and declares that Plaintiff's conduct passes the custody threshold and that "a sentence of up to 2-3 years custody may be appropriate" for sexual assault. Oakley Decl., ¶ 86. The Oakley Declaration is silent as to whether Plaintiff's imaginary prison sentences will run consecutively or concurrently.

7

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**

## I. LEGAL STANDARD

Courts have inherent authority to strike improper filings, particularly where a document is immaterial, impertinent, or scandalous. *Carrigan v. California State Legislature*, 263 F.2d 560, 564 (9th Cir. 1959); *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010), ("[i]t is well established that district courts have inherent power to control their docket . . .includ[ing] the power to strike items from the docket as a sanction for litigation conduct.")(internal citations omitted); *Nee v. Federal Deposit Insurance Corporation*, 2011 WL 13185691, *1 (C.D.Cal. 2011); *United States v. Castle*, 2024 WL 85604, 81 (E.D.Cal. 2024).

Courts are also empowered, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), to reject speculative expert testimony. *Daubert* makes clear that, to be admissible, expert testimony must "connote[ ] more than subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590.

## II. ARGUMENT

### A. Laura Wray's Declaration And All Exhibits Thereto Should Be Struck As Immaterial, Impertinent and Scandalous

The pure irrelevance of Laura Wray's Declaration is evident in that Netflix only makes two passing references to the Declaration in its memorandum of law to repeat Wray's scandalous claims that in the *late 1990s*, Harvey stalked Wray, and made death threats against Wray and her husband, and made a false report to authorities that the couple mistreated their developmentally disabled child. Netflix Br. at 4 and 14, citing Wray Decl., ¶¶ 8-13, 19. What do these 'facts' have to do with Netflix's false claims about Harvey with respect to Gadd – that she was convicted for stalking Gadd, raped him, attacked him, or waited outside his home?  Nothing.

8

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**

Wray's 'evidence' has no relevance to any of Harvey's claims of defamation against Netflix concerning Richard Gadd in *Baby Reindeer* in that these statements do not make it more likely that (i) Harvey was convicted; (ii) Harvey spent five years in prison, including six months for crimes related to harassing Gadd; (iii) raped Gadd by grabbing his penis in dark alley until he beated; (iv) gouged Gadd's eyes with her thumbs and smashed a glass over his head; (v) waited outside Gadd's home 16 hours a day for him; or (vi) stalked a police officer. Complt., ¶ 88; Fed. R. Evid. 401. *Even if* Wray's statements are true, none of Wray's statements makes any of Harvey's defamation claims less likely to be proven. In light of Netflix and Gadd's admissions that Baby Reindeer is "fictionalized" and their failure to claim that any of the specific conduct attributed to Harvey that is the subject of the Complaint is actually true (as Netflix comfortably represented to fifty million people), it is clear that sole purpose of Netflix's filing of Wray's declaration is to provide scandalous and impertinent and "compelling" information about Harvey to its subscribers. Complt., ¶¶ 11, 88. Wray's declaration must be struck entirely.

**B. Richard Gadd's Declaration And Exhibits Thereto Should Be Struck As Immaterial, Impertinent and Scandalous**

With the exception of the last sentence of Paragraph 41, Paragraphs 24-65 of Gadd's Declaration, have no relevance to Harvey's claims.  Likewise, with the exception of Exhibit 44, Exhibits 1-60 that Gadd includes in his Declaration are not relevant to Harvey's claims. Gadd states that he is providing the purported emails from Harvey to show that Harvey is "hateful" "racist" and "homophobe" who propositioned him "lewd" and "explicit" language. Gadd Decl., ¶¶ 24-30; 33-37. This is plainly impertinent, scandalous and not relevant to Harvey's claims.  Gadd's statements have no bearing on whether Netflix's statements that Harvey was

9

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**

convicted, grabbed Gadd's penis until he beat, gouged his eyes, bloodied his head, stalked a police officer, are false as Harvey claims. Complt., ¶ 88.

Throughout his 21-page declaration, Gadd does not dispute that any of this conduct is made up by Netflix. In fact, Gadd confirms it is a "fictionalized story." Gadd Decl., ¶¶ 5, 9, 11. Netflix itself admits that Gadd's Exhibits 3-41 "are awash with violent hate speech and sexually explicit, deeply disturbing vitriol that is *nowhere depicted in the Series.*" Netflix Brief at 14. Plainly, material that is "nowhere depicted in the Series" cannot be relevant to the claims in this case. Accordingly, paragraphs 24-65 of the Gadd Declaration and Exhibits 1-60 (**except the last sentence of Paragraph 41 and Exhibit 44**) should be struck as irrelevant, impertinent, and scandalous and under the Court's inherent authority. *Carrigan v. California State Legislature*, 263 F.2d 560, 564 (9th Cir. 1959).

### C. Louise Michelle Oakley's Declaration Should Be Struck

There is no question that Plaintiff was never convicted of any crime, much less for any of the crimes which Martha's character was convicted in *Baby Reindeer*. Defendants wish to argue that Plaintiff ***could have been*** convicted based on the conduct alleged in the Gadd Declaration and based on the opinions of their legal expert Louise Michelle Oakley. The Oakley Declaration should be excluded for several reasons. First, Defendants have failed to comply with the notice requirements for Rule 44.1. Second, under Rule 702 of the Federal Rules of Evidence and the decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)(*Daubert I* ) because it is neither relevant not reliable.

**1. Failure to Give Rule 44.1 Notice**

Oakley's opinions as to U.K. law should be excluded because Defendants never gave notice that they intended to raise foreign law issues under Rule 44.1,

1  which provides that "[a] party who intends to raise an issue about a foreign country's
2  law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1. "The
3  primary purpose of Rule 44.1's notice requirement is to avoid unfairly surprising
4  opposing parties." *DP Aviation v. Smiths Indus. Aerospace and Def. Sys. Ltd.*, 268
5  F.3d 829, 846 (9th Cir. 2001).

6  Here, Defendants never gave such notice and simply submitted her
7  Declaration on the Motion to Strike. *DP Aviation*, 268 F.3d at 847 (affirming
8  decision to not apply foreign law where "[n]o extenuating circumstances were
9  presented . . . to show that prior notice was impracticable or that the need for notice
10 was not reasonably foreseeable").

### 2. Failure to Qualify under FRE 702 and *Daubert I*

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert I*. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The party offering the expert testimony bears the burden of satisfying Rule 702 by a preponderance of the evidence. *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, 2007 WL 935703,*4 (S.D. Cal. 2007) (*citing Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Further, the Court has the power to strike expert testimony on the motion to strike. *Metabolife Intern., Inc. v Wornick*, 264 F3d 832, 845 (9th Cir 2001)(assessing admissibility of expert testimony on a

motion to dismiss "is entirely within [ the court's ] province as a Daubert II gatekeeper").

Expert evidence is admitted pursuant to Federal Rule of Evidence 702. In, the Supreme Court held that Rule 702 displaced the prior "general acceptance" test. Under *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir.1995) (*Daubert II*), the district court acts as a "gatekeeper," excluding "bad science" that does not carry sufficient indicia of reliability for admission under Rule 702. This is accomplished through a preliminary determination that the proffered evidence is both relevant and reliable. *Daubert I*, 509 U.S. at 589–92, 113 S.Ct. 2786.

Defendants offer no legal authority to support their contention that the Declaration of a foreign attorney such as Oakley should be accepted by the court as evidence on the question of whether a party ***could have been convicted of multiple offenses and sentenced to prison time*** based on conduct alleged to have occurred in another witness's affidavit. Courts have repeatedly held that expert testimony "proffered solely to establish the meaning of a law is presumptively improper." *United States v. Prigmore*, 243 F.3d 1, 18 n. 3 (1st Cir.2001); *see Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 99–101 (1st Cir.1997) (ruling that it was error to admit expert testimony explaining the holdings of various Puerto Rico Supreme Court opinions).

The Oakley Declaration should be excluded because it is an impermissible attempt to apply U.K. law to the facts of this case, which is not proper for a foreign law expert to do. See *Minebea Co v. Pabst*, 444 F. Supp. 2d 68, 182 (D.D.C. 2006) ("The purpose of [foreign law] expert testimony . . . is to aid the court in determining the content of the applicable foreign law— not to apply it to the facts of the case."); *HFGL Ltd. v. Alex Lyon & Sons*, 264 F.R.D. 146, 148 (D.N.J. 2009) ("the Court may use an expert report to determine substantive foreign law, but not to assist the Court

12

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**

in determining facts"); *Krish v. Balasubramanian*, 2006 WL 2884794, at *3 (E.D. Cal. 2006)("foreign law experts may not opine as to the ultimate application of the foreign law to the facts of the case"); *Lithuanian Commerce Corp., v. Sara Lee Hosiery*, 177 F.R.D. 245, 264 (D.N.J. 1997)(same).

Even though the law is clear on this, Ms. Oakley's report cites extensive materials she considered in forming her opinions, see Oakley Decl., ¶¶ 80 (i) through (xxiv), and her report is filled with improper conjecture about what a U.K. court might do if presented with facts from the Gadd Declaration. This is yet another reason her testimony and opinions should be excluded. *United States v. Bighead*, 128 F.3d 1329, 1335 (9th Cir. 1997)("Experts are not to testify to their subjective belief or unsupported speculation"); *Eastridge Dev. Co. v. Halpert Assoc., Inc.*, 853 F.2d 772, 783 (10th Cir. 1988)(excluding an expert's testimony due to "the tentative and speculative nature of the witness' proposed testimony"); *Lanza v. Poretti*, 537 F.Supp. 777, 785 (E.D. Pa. 1982)(excluding an expert's testimony where "the witness' opinion amounted to nothing more than mere speculation and conjecture").

## CONCLUSION

The Court should strike Laura Wray's declaration all exhibits thereto in their entirety, (ECF 26-27 to 26-43), from the motion to strike record and preclude Laura Wray from testifying at trial. In addition, the Court should strike paragraphs 24-65 of Richard Gadd's declaration and Exhibits 1-60 (***except* the last sentence of Paragraph 41 and Exhibit 44**) (ECF 23-1 to 23-60; ECF 27 to 27-60, ECF 35 to 35:58), from the motion to strike record. Finally, the Court should strike the Declaration of Louise Michelle Oakly (ECF 26-3) in its entirety from the motion to strike record.

| | | |
|---|---|---|
| 1 | DATED: August 26, 2024 | Respectfully submitted, |
| 2 | | By: */s/ Brian Levenson* |
| 3 | | Brian S. Levenson * *Pro Hac Vice* |
| 4 | | THE ROTH LAW FIRM, PLLC<br>295 Madison Avenue, 22nd Floor |
| 5 | | New York, NY 10017<br>Phone: 212-784-6699 |
| 6 | | Email: brian@rrothlaw.com |
| 7 | | |
| 8 | | Allen Hyman (California State Bar No. 73371)<br>LAW OFFICES OF ALLEN HYMAN |
| 9 | | 10737 Riverside Drive |
| 10 | | North Hollywood, CA 91602<br>Phone: (818) 763-6289 |
| 11 | | E-mail: lawoffah@aol.com |
| 12 | | |
| 13 | | *Attorneys for Plaintiff* |

**PLAINTIFF'S MOTION TO STRIKE DECLARATIONS OF
LAURA WRAY, RICHARD GADD, AND LOUISE MICHELLE OAKLEY
Case No. 2:24-cv-04744-RGK-AJR**