Richard A. Roth * *Pro Hac Vice*
Email: Richard@rrothlaw.com
Brian Levenson * *Pro Hac Vice*
Email: Brian@rrothlaw.com
THE ROTH LAW FIRM, PLLC
295 Madison Avenue, 22nd Floor
New York, NY 10017
Phone: 212-784-6699

Allen Hyman (California State Bar No. 73371)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, CA 91602
Phone: (818) 763-6289
Fax: (818) 763-4676
E-mail: lawoffah@aol.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIONA HARVEY,<br><br>                    Plaintiff,<br><br>      v.<br><br>NETFLIX, INC. and NETFLIX WORLDWIDE ENTERTAINMENT, LLC,<br><br>                    Defendants. | Case No. 2:24-cv-04744-RGK-AJR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: September 16, 2024<br>Time: 9:00 a.m.<br>Place: Courtroom 850<br><br>Hon. R. Gary Klausner |

# <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................. **1**

**BACKGROUND** ......................................................................................... **2**

**STANDARD ON A MOTION TO DISMISS** .............................................. **3**

**ARGUMENT** .............................................................................................. **4**

**POINT I:    HARVEY STATED A CLAIM FOR DEFAMATION MISREPRESENTATION** ............................................. **4**

   A. The Public Reasonably Believed Netflix's False Statements Were True .... 5

     1. Fictional Works Can Defame Real People ........................................ 5

     2. Netflix's Argument About Its "Disclaimer" is Improper and Unavailing ..................................................................................... 6

   B. Netflix's Defamatory Statements Are Not Opinions ................................. 7

   C. Harvey Is Not Libel-Proof............................................................................ 8

**POINT II:  HARVEY IS NOT A PUBLIC FIGURE** ........................... **9**

   A. Harvey Is Not A Limited Public Figure ................................. 10

   B. Netflix Had Actual Malice.................................................... 11

**POINT III: HARVEY'S CLAIMS ARE NOT DUPLICATIVE** ....................... **12**

**POINT IV: HARVEY'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IS STATED** ........................................ **13**

**POINT V:   HARVEY'S NEGLIGENCE CLAIM IS STATED** ......................... **14**

   A. Netflix Is The Cause of Harvey's Damages  ........................ 15

i

**POINT VI: HARVEY'S RIGHT OF PUBLICITY CLAIMS ARE STATED** .. **16**

    A. The First Amendment Does Not Bar Harvey's Right of Publicity
       Claims ................................................................................................ 17

**POINT VII: HARVEY'S CLAIM FOR PUNITIVE DAMAGES IS NOT
      SUBJECT TO A RULE 12(b)(6) MOTION** ..................................... **18**

**CONCLUSION** ................................................................................... **18**

'

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

1

## <u>TABLE OF AUTHORITIES</u>

2

3    ## <u>CASES</u>

4

*Ampex Corp. v. Cargle*,
5        128 Cal.App.4th 1569 (2005). ................................................................ 10, 11

6    *Bindrim v. Mitchell*,
7        92 Cal. App. 3d 61 (1979) ........................................................................ 6, 15

8    *Belen v. Ryan Seacrest Productions, LLC*,
9        65 Cal.App.5th 1145 (2021)) ....................................................................... 13

10   *Briscoe v. Reader's Digest Association Inc.*,
11       4 Cal.3d 529 (1971) (en bank) ................................................................... 10

12   *Camacho v. Control Group Media Company*,
13       2022 WL 3093306 (S.D.Cal 2022) .............................................................. 16

14   *Cardillo v. Doubleday & Co., Inc.*,
15       518 F.2d 638, 639 (2d Cir.1975). ................................................................. 8

16   *Colborn v. Netflix Inc.*,
17       541 F. Supp. 3d 888, 901 (E.D. Wis. 2021) .................................................. 7

18   *Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
19       25 Cal.4th 387 (2001) ................................................................................ 17

20   *Dickinson v. Cosby*,
21       37 Cal.App.5th 1138 (2019) ......................................................................... 8

22   *Downing v. Abercrombie & Fitch*,
23       265 F.3d 994 (9th Cir. 2001) ...................................................................... 17

24   *Ely v. Wal*Mart, Inc.*,
25       875 F.Supp. 1422 (C.D.Cal. 1995) .............................................................. 13

26   *Fairstein v. Netflix, Inc.*,
27       553 F.Supp.3d 48, 59 (S.D.N.Y. 2021) ...................................................... 6, 7

28

iii

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

*Gaprindashvili v. Netflix, Inc.*,
    2022 WL 363537, *5 (C.D.Cal. 2022) ......................................... 5, 6

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323, 94 S.Ct. 2997 (1974) ...................................................... 9

*Hospital Bldg. Co. v. Trustees of the Rex Hospital*,
    425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) ....................... 4

*Khawar v. Globe Intern., Inc.*,
    19 Cal.4th 254 (1998) ...................................................................... 11

*Kirby v. Sega of America, Inc.*,
    144 Cal.App.4th 47 (2006) ............................................................... 16

*Lee v. City of Los Angeles*,
    250 F.3d 668, 688 (9th Cir. 2001)........................................................ 4

*Lugtu v. California Highway Patrol*,
    26 Cal. 4th 703 (2001) .................................................................... 14

*Masson v. New Yorker Magazine, Inc.*,
    960 F.2d 896 (9th Cir. 1992) ........................................................... 15

*Miller v. Sawant*,
    811 Fed.Appx.408, n.3 (9th Cir. 2020) ................................................ 4

*Miller v. Sawant*,
    18 F.4th 328, 337 (9th Cir. 2021) ........................................................ 4

*Motschenbacher v. R.J. Reynolds Tobacco Co.*,
    498 F.2d 821 (9th Cir. 1974) ........................................................... 16

*Muzikowski v. Paramount Pictures Corp.*,
    322 F.3d 918 (7th Cir. 2003).............................................................. 6

*NL Indus., Inc. v. Kaplan*,
    792 F.2d 896, 898 (9th Cir.1986)......................................................... 4

iv

*Partington v. Bugliosi*,
    56 F.3d 1147, 1155 (9th Cir. 1995) .................................................................. 6

*Polydoros v. Twentieth Century Fox Film Corp.*,
    67 Cal. App. 4th 318 (1997) ............................................................................ 17

*Rosenblatt v. Baer*,
    383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966) ........................................... 9

*Sturm v. Rasmussen*,
    2019 WL 626167 (S.D.Cal. 2019) .................................................................. 18

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967) ........................................................................................ 17

*Toufanian v. Oreffice*,
    2021 WL4353115 (C.D.Cal. 2021) ............................................................. 7, 9

*Townsend v. McDonnell*,
    2019 WL 7882085 (C.D.Cal. 2019) ............................................................... 18

*Unsworth v. Musk*, 2
    2019 WL 8220721 (C.D.Cal. 2019) ................................................................. 9

*Van Buskirk v. Cnn*,
    284 F.3d 977 (9th Cir. 2002) ............................................................................. 5

*Von Kahl v. Bureau of Nat. Affairs, Inc.*,
    934 F.Supp.2d 204 (D.C. 2013) ........................................................................ 8

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991) .................................................................. 12, 14

*Wolston v. Reader's Digest Ass'n., Inc.*,
    443 U.S. 157, 99 S.Ct. 2701 (1979) ............................................................. 9, 10

*Wynberg v. National Enquirer, Inc.*,
    564 F.Supp. 924 (C.D.Cal.1982). ..................................................................... 8

v

## STATUTES

Fed R. Civ. P. 12(b)(6) ............................................................................... 18

Fed. R. Evid. 201 ......................................................................................... 4

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

# PRELIMINARY STATEMENT

Netflix defamed Fiona Harvey in its unrestrained pursuit of adding more subscribers to its streaming service. Complt., ¶ 11. The scale and scope of Netflix's defamation is unprecedented. Netflix represented to 56 million viewers of its series, *Baby Reindeer* (the "Series"), that Fiona Harvey was a twice convicted stalker who served five years in prison, and that she raped Richard Gadd, smashed his head, waited outside home for 16 hours a day and stalked a police officer. Complt., ¶ 88. Netflix made it clear that all of this was "true" not only in the first minutes of the Series on a black screen on which only these words "this is a true story" appeared, but also in promotional materials on its website, social media posts, and even during hearing in Parliament. Complt., ¶¶ 23, 73, 77.

But, the truth caught up with Netflix. In response to a demand by Member of Parliament, John Nicholson, for evidence of Netflix's "serious claims" about Harvey's convictions, Netflix confessed it was all made up. Levenson Decl., ¶ 5, Exh. 3. But, for Netflix, that was a small price to pay. Netflix enjoyed a gangbuster second quarter because of its new hit series, *Baby Reindeer*, and added millions of subscribers.

Meanwhile, Fiona Harvey's life has literally been destroyed. As a result of Netflix's calculated decision to falsely tell 56 million people that Harvey was a head smashing, rapist, who was twice convicted and imprisoned for five years, Harvey received death threats and a non-stop stream of messages from members of the public who wanted to confront the monster in *Baby Reindeer*. Complt. ¶¶ 37, 42. As a direct result, Harvey has experienced chest pains, panic attacks, insomnia, and general fear of going outside.  Complt., ¶¶ 43-44.

Netflix, not satisfied with having added millions of subscribers, now seeks to dismiss Harvey's Complaint, primarily on the basis that Netflix was careful not to use Harvey's real name when it destroyed her life. As demonstrated herein, Netflix's

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

position has no merit. The motion must be denied and Netflix must be held accountable for destroying Fiona Harvey's life for the sake of adding subscribers.

## BACKGROUND

In the Netflix series *Baby Reindeer* (the "Series"): (1) Martha was convicted of stalking a barrister with a disabled child and served a four-and-a-half-year sentence; (2) Martha pled guilty and was a convicted stalking a second time and was sentenced to a nine-month sentence for stalking Gadd; (3) Martha cornered Gadd in a dark alley and raped him by grabbing his penis until he 'beated'; (4) Martha gouged Gadd's eyes with her thumbs and smashed a glass over his head leaving him bloodied; (5) Martha waited outside Gadd's residence 16 hours a day; and (6) Martha stalked a policeman. Complt., ¶ 88.

The public understood that the real 'Martha' did these monstrous things for good reason. Episode One of *Baby Reindeer* begins with a black screen on which the words "this is a true story appear." Complt., ¶ 23. Netflix promoted *Baby Reindeer* on its website, with an article about the Series that states, "it's important to remember that this isn't just a story – it's true." Complt., ¶ 73; Levenson Decl., ¶ 4, Exh. 2. Netflix promoted the Series on Facebook and Twitter with a post viewed by millions purporting to show Harvey's real emails, titled, "Martha's Real Emails from Baby Reindeer – Every One of Them Is Real." Levenson Decl., ¶ 9, Exh. 7.

The only question then was, who was the real Martha?  That question was answered just days after Netflix released the Series. Complt., ¶ 36. The answer was plaintiff, Fiona Harvey. Harvey, like Martha, are Scottish lawyers, twenty years older than Gadd, living in London, with identical accents, cadence, and physical appearance, who both were accused in newspapers of stalking a barrister, and who messaged Gadd with the unusual euphemism for sex, "my curtains need hung badly." Complt., ¶¶ 33, 40-41. There is no question that Harvey is 'Martha.'

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

On May 8, 2024, during a committee hearing in the House of Commons, Netflix stated that "*Baby Reindeer* is obviously a true story of the horrific abuse that [Richard Gadd] suffered at the hands of a convicted stalker [Fiona Harvey]." Complt., ¶ 77; Levenson Decl., ¶ 3, Exh. 1, at Q401 (p. 32). In response to Netflix's unequivocal statement, Member of Parliament, John Nicholson sent a follow up written demand for evidence supporting Netflix's "serious claim," particularly, since "journalists have thus far been unable to find a record of the conviction." Complt., ¶ 79. MP Nicholson's demand was significant in that it demonstrated members of Parliament and journalists believed Netflix's statement that 'this is a true story' and searched for records of Harvey's convictions.  On May 28, 2024, in response to MP Nicholson's demand, Netflix provided a signed letter in which it confessed that "the person upon whom the show is based" was never convicted.  Levenson Decl., ¶ 5, Exh. 3.

Now, Netflix moves to dismiss Harvey's Complaint on the basis that it technically did not defame Harvey because Harvey's real name was not used in the Series, and Harvey is a public figure with a reputation so low that she is incapable of being defamed. Nonsense. As a matter of Ninth Circuit law, a person need not be named to be defamed. And as a matter of fact, Harvey is a private person who has never been convicted of any crime. Complt., Exh. 1. Regardless, discovery will show that Netflix acted with actual malice, and indeed it continues to do so by continuing to stream Baby Reindeer to more than 50 million people with the representation "this is a true story" *after* Netflix conceded that the "person upon whom the show is based" was never convicted. Netflix's motion must be denied.

## <u>STANDARD ON A MOTION TO DISMISS</u>

A federal court cannot dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Moore v. City of Costa Mesa*, 886 F.2d 260,

262 (9th Cir.1989). The allegations contained in the complaint must be construed in the light most favorable to the plaintiff, and all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—must be accepted as true. *Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

On a motion to dismiss, a court generally limits its review to the face of the complaint. See *Van Buskirk v. Cnn*, 284 F.3d 977, 980 (9th Cir. 2002). There are two exceptions to this rule.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). First, the Court may take judicial notice of any material submitted as part of the Complaint, and if the material is not physically attached to the Complaint, so long as "its authenticity is not questioned" and the Complaint "necessarily relies on them." *Id.* Second, the Court may take judicial notice of matters in the public record under Fed. R. Evid. 201. *Id.*

### ARGUMENT

### POINT I

### <u>HARVEY STATED A CLAIM FOR DEFAMATION</u>

To state a claim for defamation, "the complaint need only plead facts to show that [Defendant's] remarks can reasonably be understood to refer to Plaintiff." *Miller v. Sawant*, 18 F.4th 328, 337 (9th Cir. 2021). A plaintiff may "plead extrinsic facts to show that [the] statements were "of and concerning" them." *Miller v. Sawant*, 811 Fed.Appx.408, n.3 (9th Cir. 2020).

Netflix's statements that it was true that the 'real Martha' was a twice convicted criminal who served five years in prison, reasonably can be understood to refer to Harvey because 'Martha' has the identical personal history, occupation, nationality, residence, physical appearance, accent, cadence, phraseology, messages Gadd ("hang my curtains"), and was also once accused of stalking a barrister with a

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

disabled child, as Harvey. Complt., ¶¶ 40-41. Harvey was identified as 'Martha' by the public based on the obvious idiosyncratic facts about Harvey referenced in the Series (above), in particular the "hang my curtains" tweet to Gadd. Complt., ¶ 35.

**A. The Public Reasonably Believed Netflix's False Statements Were True**

Netflix argues that the Complaint fails to allege that a reasonable viewer would understand the statements in the Series to be factual, especially in light of a disclaimer in each episode. Netflix Br. at 8.  Netflix's position is pure gaslighting. Within two minutes of Episode One, Netflix tells viewers in a clear affirmative statement, a title screen, "this is a true story." Complt., ¶ 23.



Further, Netflix promoted the series as a "true story." ¶ 71-73. Netflix unequivocally stated in its promotion, "it's important to remember that this isn't just a story – it's true." Complt., ¶ 73; Levenson Decl., ¶ 4; Exh. 2. The Complaint alleges the public believed it was true as evidenced by the hate mail and death threats that Harvey received from members of the public who reasonably believed Harvey was the real 'Martha.' Complt., ¶ 37.

**1. Fictional Works Can Defame Real People**

Netflix's passing argument that no reasonable person would think its statements about Harvey were true because Netflix used of "dramatic and cinematic devices" is unavailing.  Netflix Br. at 7. *Gaprindashvili v. Netflix, Inc.*, 2022 WL

363537, *5 (C.D.Cal. 2022) ("the fact that the Series was a fictional work does not insulate Netflix from liability for defamation if all the elements of defamation are otherwise present.") (citing *Bindrim v. Mitchell*, 92 Cal. App. 3d 61 (1979), cert. denied, 444 U.S. 984 (1979) (fictional character in the novel was identifiable as the real person). See *Partington v. Bugliosi*, 56 F.3d 1147, 1155 (9th Cir. 1995) (creators of docudramas that mix fact and fiction "must attempt to avoid creating the impression that they are asserting objective facts"). Here, the Complaint is clear that in addition to the hate mail Harvey received from members of the public, Members of Parliament and journalists believed Netflix's statements were true and searched for records of Harvey's convictions. Complt., ¶¶ 37, 79.

## 2. Netflix's Argument About Its Disclaimer is Improper and Unavailing

Netflix argues that the Series could not be understood as depicting real events because each episode had a disclaimer. Netflix Br., at 18. Netflix has tried, and failed, to assert the same disclaimer defense in other litigations. See *Gaprindashvili* at *6 (C.D.Cal. 2022) (rejecting Netflix's disclaimer and holding "in context, therefore, Netflix created the impression that it was asserting objective facts."); *Fairstein v. Netflix, Inc.*, 553 F.Supp.3d 48, 59 (S.D.N.Y. 2021) (statements in Netflix docudrama were actionable notwithstanding a disclaimer that appeared in each episode). See also *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918 (7th Cir. 2003) (defamation claim stated notwithstanding disclaimer "this is a fictious story and no actual persons  . . . have been portrayed.").

Here, the entire premise of the Series is that "this is a true story." Complt., ¶ 23. Netflix's disclaimer buried in credits minutes after the episode already ended does nothing to change the impression that Netflix was asserting objective facts. Moreover, when the Series is streamed on the Netflix platform (as opposed to the thumb drive Netflix provided the Court), the disclaimer does not appear unless the viewer proactively clicks the "Watch Credits" option at the end of the episode.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**



If "Watch Credits" is not selected, the next episode automatically begins to play. Finally, even if "Watch Credits" is selected, the disclaimer is fine print buried halfway through the credits.

**B. Netflix's Defamatory Statements are Not Opinion**

Netflix argues its false statements about Harvey were non-actionable opinions. Netflix Br., at 15.  Netflix made this same failed argument in other litigations, and it must fail here as well. See *Fairstein v. Netflix, Inc.*, 553 F. Supp.3d 48, 58 (S.D.N.Y. 2021), ("[t]he average viewer could conclude that these scenes have a basis in fact and do not merely reflect the creators' opinions about controversial historical events."); *Colborn v. Netflix Inc.*, 541 F. Supp. 3d 888, 901 (E.D. Wis. 2021) (Netflix's implication that plaintiff criminally framed Avery for murder was not a nonactionable opinion). Netflix asserted cold hard facts in the true story about Harvey – the eye gouging, head smashing monster, who raped Gadd, got convicted (twice), and served five years in prison. See *Toufanian v. Oreffice*, 2021 WL4353115, *5 (C.D.Cal. 2021) (statements of opinion are "broad, unfocused, and

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 2:24-cv-04744-RGK-AJR**

wholly subjective."). Regardless, "a statement that implies a false assertion of fact, even if couched as an opinion, can be actionable." *Dickinson v. Cosby*, 37 Cal.App.5th 1138 (2019).

**C. Harvey Is Not Libel-Proof**

A plaintiff is libel-proof when he is "so unlikely by virtue of his life as a habitual criminal to be able to recover anything other than nominal damages as to warrant dismissal of the case, involving as it does First Amendment considerations." *Cardillo v. Doubleday & Co., Inc.*, 518 F.2d 638, 639 (2d Cir.1975). A determination of libel-proof "[d]epend[s] upon the nature of the conduct, the number of offenses, and the degree and range of publicity received." *Wynberg v. National Enquirer, Inc.*, 564 F.Supp. 924, 928 (C.D.Cal.1982). The passage of time and geographical distance from when and where press coverage existed are also relevant factors. *Von Kahl v. Bureau of Nat. Affairs, Inc.*, 934 F.Supp.2d 204, 215 (D.C. 2013).

Harvey is not libel-proof because there is no allegation in the four corners of the Complaint that Harvey has ever committed any crime. It is just the opposite. The Complaint confirms with a certified background check with the United Kingdom that Harvey has no criminal record. Complt., ¶ 52, Exh. 1.

Netflix relies on articles it found on the Internet that were purportedly published more than twenty years ago in Scotland (Harvey resides in London), and that are outside the four corners of the Complaint to prove Harvey is libel proof. This is improper on a motion to dismiss. Putnam Decl., Exhs. M, T. Regardless, one article relied on by Netflix refers to Harvey with a different surname "Muir." Netflix Exh. B (ECF 28-5). It is unlikely anyone would connect that article to Harvey. The articles do not accuse of Harvey of criminal convictions, sexually assault or violent physical attacks, as Netflix represented in *Baby Reindeer*. Complt., ¶¶ 88. There is no indication anyone has seen these articles in twenty years or read them. Even if these articles were known, Netflix's over the top false statements that Harvey is an eye-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

gouging, head smashing, convicted criminal, and rapist, plainly did more to damage

Harvey's reputation than articles Netflix dug up on the Internet. Harvey is not libel-

proof.

## POINT II

### HARVEY IS NOT A PUBLIC FIGURE

"At the pleading stage, a determination of whether a plaintiff is a public figure

is made from allegations in the complaint itself or from documents properly noticed."

*Toufanian v. Oreffice*, 2021 WL4353115, *4 (C.D.Cal. 2021). The determination of

whether Plaintiff is a public figure is a question of law. *Rosenblatt v. Baer*, 383 U.S.

75, 88 n. 15, 86 S.Ct. 669, 677 n. 15, 15 L.Ed.2d 597 (1966). As the moving party,

the defendant bears the burden of showing plaintiff is a public figure. *Unsworth v.

Musk*, 2019 WL 8220721, *4 (C.D.Cal. 2019). "Absent clear evidence of general

fame or notoriety in the community, and pervasive involvement in the affairs of

society, an individual should not be deemed a public personality for all aspects of his

life." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352, 94 S.Ct. 2997, 3013 (1974).

The Complaint merely alleges Harvey is a lawyer with no criminal history.

Complt. ¶¶ 41, 52; Exh. 1. There is no allegation Harvey is a public figure or famous.

Netflix does not provide any noticeable documents stating otherwise. The two

newspaper articles Netflix dug up on the Internet that report of an accusation that

Harvey stalked another person, were published more than twenty years ago in

another country. That is insufficient to make Harvey a public figure. See *Wolston v.

Reader's Digest Ass'n., Inc.*, 443 U.S. 157, 167, 99 S.Ct. 2701, 2707 (1979) ("[a]

private individual is not automatically transformed into a public figure just by

becoming involved in or associated with a matter that attracts public attention.").

Regardless, "a public figure can be so far removed from his former position in the

public eye, that the publisher will no longer enjoy the prophylactic treatment

accorded him when he deals with those persons who truly are public officials or

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

public figures." *Briscoe v. Reader's Digest Association Inc.,* 4 Cal.3d 529, n. 13 (1971) (en bank).

### A. Harvey Is Not A Limited Public Figure

Three elements must be present in order to characterize a plaintiff as a limited purpose public figure: (1) there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipant; (2) the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust him or herself into the public eye; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1577 (2005).

Netflix argues that Harvey is a limited public figure because she "voluntarily injected herself into a public controversy, namely stalking and harassment of various individuals." Netflix Br. at 10. First, these purported events reported in articles outside the Complaint, occurred 25 years ago. See *Briscoe* at n. 12 (""It would be a crass legal fiction to assert that a matter once public never becomes private again."). Further, the mere fact they were reported in article does not make Harvey a public figure. *Wolston v. Reader's Digest Ass'n., Inc*., 443 U.S. 157, 167, 99 S.Ct. 2701, 2707 (1979) ("[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention.").

Second, Harvey's purported stalking of "various individuals" was never a "public controversy" defined in law as an "issue that was debated publicly and had foreseeable and substantial ramifications for nonparticipants." *Ampex* at 1577. Netflix does not contend Harvey's conduct affected any nonparticipants.

Third, Netflix fails to identify any voluntary act by Harvey by which she sought to influence the public on any issue. *Ampex* at 1577. The full extent of

10

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

Harvey's public involvement was purportedly being quoted as stating "I'll be contacting my solicitor." Netflix Exh. B. (ECF 28-5). Finally, the purported articles from the late 1990s are not germane to Netflix's false statements in 2024 that Harvey raped Gadd, attacked Gadd, was convicted twice and served five years in prison. *Ampex* at 1577. Accordingly, Netflix has failed to satisfy any prong of three-part limited public figure analysis.

**B. Netflix Had Actual Malice**

'[A]ctual malice' means that the defamatory statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Khawar v. Globe Intern., Inc.*, 19 Cal.4th 254, 275 (1998). Reckless disregard, in turn, means that the publisher in fact entertained serious doubts as to the truth of his publication." *Id.* (internal citation omitted). To prove actual malice, therefore, a plaintiff must demonstrate with sufficient evidence that the defendant realized that his statement was false or that the subjectively entertained serious doubts as to the truth of his statement." *Id.* To prove this culpable mental state, the plaintiff may rely on circumstantial evidence, including evidence of motive and failure to adhere to professional standards. *Id.* at 275. When a finding of actual malice is based on the republication of a third party's defamatory falsehoods, the actual malice finding may be upheld 'where there are obvious reasons to doubt the veracity of the informant and the republisher failed to interview obvious witnesses who could have confirmed or disproved the allegations. *Id.*

Actual malice is easily established because Netflix's letter to UK Parliament confirms that Netflix knows Harvey is not a convicted stalker, yet Netflix continues to knowingly publish *Baby Reindeer* with the representation of fact she is a *twice* convicted stalker. Levenson Decl., ¶ 5, Exh. 3. It, thus, knew its statements were untrue. Second, there are obvious reasons to doubt Gadd's "true story" as Gadd is a self-admitted, crack, meth and heroin user who would anything, including prostitute

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

himself to a TV producer, for "a little peep at fame." Complt., ¶¶ 25, 47-48.  Third, according to the Complaint – and as will be proven at trial -- Netflix took Gadd's story and decided to turn it into a "true story."  Fourth, Netflix testified before Parliament not that the story was "fictionalized," as it argues in its motion, but that it was "obviously true."  In short, there is ample evidence of malice to allow the matter to proceed to discovery.

## POINT III

### HARVEY'S CLAIMS ARE NOT DUPLICATIVE

Harvey's common law and statutory right of publicity claims are not duplicative of her defamation claims because they arise from wholly separate facts, i.e., Netflix's unauthorized use of Harvey's likeness, as opposed to Netflix making false statements about Harvey. See *Sears v. Russell Road Food and Beverage LLC*, 460 F.Supp.3d 1065, 1072 (D.Nev. 2020). Netflix cites no case to the contrary. In addition, Harvey's negligence claims are not duplicative because they also arise from different allegations – the failure to conceal Harvey's identity or confirm outrageous allegations against her from an attention starved drug user who will do anything for a peep at fame. Complt. ¶¶ 24-26, 37; 105-109. See *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, n. 9 (9th Cir. 1991) (suggesting a plaintiff alleging libel could also sue a publisher for negligence). While a claim for IIED can be duplicative of one for defamation, Harvey's IIED claim arises from non-defamatory conduct. Specifically, Netflix's failure to conceal Harvey's identity when making false, unconfirmed and explosive allegations from a crack, meth and heroin user with a history of lying to authorities, before broadcasting them to 50 million people. Complt. ¶¶ 24-26, 37; 105-109.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

## POINT IV

## HARVEY'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IS STATED

To state a claim for intentional infliction of emotional distress the Complaint must allege (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Ely v. Wal*Mart, Inc.*, 875 F.Supp. 1422 (C.D.Cal. 1995). "Outrageous" as used in the analysis means, i.e., "conduct so extreme as to exceed all bounds of that usually tolerated in a civilized society."

The Complaint alleges that Netflix created a "true" show about Plaintiff in which she is falsely depicted as a convicted criminal, violently gouging Gadd's eyes, and raping Gadd in a dark alley, and streamed it to *50 million people*. Complt., ¶ 91, 109; Levenson Decl., ¶ 5; Exh. 3 ("the person on whom the show is based . . . was subject to a court order rather than a conviction.").  Netflix's conduct is not only outrageous, but unprecedented. For perspective, In *Ely v. WalMart, Inc.*, the plaintiff's allegation that her former employer, WalMart, falsely represented to Woman's World Shops, by whom the plaintiff had been offered a job, that plaintiff was then involved in litigation with WalMart, was held to be sufficiently outrageous. Id. at 1439-1440. See also *Belen* (IIED claim stated where plaintiff's areolas, but not breasts, were blurred in reality-television show).

Netflix's claim that Harvey is to blame for her own emotional distress is factually wrong and grotesque. Netflix Br. at 13. Harvey was identified by the press and members of the public within days of Baby Reindeer's release and weeks before she agreed to be interviewed to rebut Netflix's claims about her. Complt., ¶ 37. Harvey received disturbing direct communications from thousands of strangers about

'Martha' including some who told called her a rapist. Complt., ¶ 37. Harvey also received death threats that were "liked" on social media by *thousand*s of people. Complt., ¶ 42. As a result of these communications from the public, Harvey became afraid to go outside or read the news; she suffered from panic attacks, extreme stress, sickness, fear, and has gone days without leaving her home. Complt., ¶ 43. Harvey has pled an IIED claim.

**POINT V**

**HARVEY'S NEGLIGENCE CLAIM IS STATED**

"Under general negligence principles...a person ordinarily is obligated to exercise due care in his or her own actions so as not to create an unreasonable risk of injury to others." *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (2001). It is "well established" that one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably foreseeable conduct of a third person. *Id*. Netflix's failure to conceal Harvey's identity created an unreasonable and foreseeable risk of injury to Harvey by outraged viewers wanting vengeance for Gadd. Complt. ¶¶ 37; 107-109.

In addition, Netflix's failure to confirm the details of the inflammatory allegations about Harvey in its unqualified true story was negligent. Complt., ¶ 105; *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, n. 9 (9th Cir. 1991) left the door open to negligence against a publisher by a plaintiff alleging libel ("[a] stronger argument [for a duty owed by a publisher] might be made by a plaintiff alleging libel . . . but such is not contended in this case."). This is such a case.

Netflix's decision to make the unqualified representation "this is a true story" about "the person on whom the show is based" created a duty to investigate.  This is particularly the case, where the source material came from a self-admitted crack, meth, and heroin user, with a history of lying, and doing unthinkable acts for "a little

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

peep at fame." Complt., ¶¶ 25, 47-49. See *Bindrim v. Mitchell*, 92 Cal.App.3d 61, 73 (1979) ("where the publication comes from a known reliable source and there is nothing to suggest inaccuracy, there is no duty to investigate.").

In addition, Netflix not only had doubts about its true story, it *knew* it was not true, but continued, and *continues*, to stream it anyway. Levenson Decl., ¶ 5, Exh. 3. Netflix never contacted Harvey to confirm the allegation or confirmed it without governmental authority. Complt., ¶¶ 81-84. See *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 901 (9th Cir. 1992) ("Once doubt [about the accuracy of a story] exists, the publisher must act reasonably in dispelling it.")  The Complaint sufficiently alleges that Netflix breached its duties and that was the cause of Harvey's distress and damages. Complt., ¶ 104-110. See *Belen v. Ryan Seacrest Productions, LLC*, 65 Cal.App.5th 1145, 1166 (2021) ("serious emotional distress [from negligence without an accompanying personal or physical injury] may be found where a reasonable person would be unable to adequately cope with the mental stress engendered by the circumstances of the case").

**A. Netflix is the Cause of Harvey's Damages**

Netflix falsely claims that Harvey was only identified because she made a public appearance on the Piers Morgan show on April 25, 2024. Netflix Br. at 14-15. This is simply wrong. The Complaint alleges that Harvey was identified within days of Baby Reindeer's premiere by Netflix on April 11, 2024, and no later than April 21, 2024 (the date of the earliest time stamped message included in the Complaint by a member of the public directly identifying Harvey as Martha). Complt., ¶ 37. This is long before Harvey appeared on the Piers Morgan show on May 9, 2024, to rebut Netflix's allegations against her. Complt., ¶¶ 36-37.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

**POINT VI**

**HARVEY'S RIGHT OF PUBLICITY CLAIMS ARE STATED**

Netflix makes two challenges to Harvey's common law and statutory right of publicity claim. Netflix Br. at 15-16. First, Netflix argues that Harvey "cannot plausibly plead Netflix used Harvey's identity" because the Series does not use "historical footage of Harvey," "her real name," or "real events in her life." *Id.* Netflix cites no authority for these purported requirements, and that is not the law. See *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974); *Kirby v. Sega of America, Inc.*, 144 Cal.App.4th 47 (2006). Here, it is difficult to conceive of what is left for Netflix to take of Harvey's identity that it has not already used in *Baby Reindeer.* 'Martha' bears an uncanny resemblance to Harvey, used the same phrase, "hang my curtains," in messages t*o the same person*, Richard Gadd, as 'Martha' and has the same nationality, occupation, residence, age compared to Gadd, accent, and cadence. Complt., ¶¶ 31-33, 40-41. Netflix fails to identify a single difference between Harvey and Gadd.

Second, Netflix argues Harvey cannot allege Netflix appropriated Harvey's *identity* to its commercial advantage because Harvey did not allege her identity had preexisting value. Netflix Br. at 16. However, a plaintiff is not required to provide proof of preexisting commercial value or efforts to capitalize on such value in order to survive a motion to dismiss. *Camacho v. Control Group Media Company*, 2022 WL 3093306, *28 (S.D.Cal 2022) (citing *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821, n. 11 (9th Cir. 1974)("the appropriation of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously valueless."). Netflix offered *Baby Reindeer* to the public as "obviously a true story of the horrific abuse that [Richard Gadd] suffered at the hands of a convicted stalker." Complt., ¶¶ 76-78; Levenson Decl., ¶ 3, Exh. 1, at 32. To make the true story as true as possible, Netflix cast Richard Gadd

himself as the protagonist in his own "true story" of being stalked by Harvey. Complt., ¶ 1, 31-33, 35, 40-41. Harvey's identity is used in Netflix's "true story" to its commercial advantage. Complt., ¶ 1

**A. The First Amendment Does Not Bar Harvey's Right of Publicity Claims**

Netflix also asserts that Harvey's right of publicity claim is barred by the First Amendment. Netflix Br. at 16. However, a First Amendment defense to a right of publicity claim "is not absolute." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (reversing trial court's grant of summary judgment); *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387 (2001). The court must find "a proper accommodation between [the] competing concerns of freedom of speech and the right of publicity" must be found. *Downing* at 1001. In *Time, Inc. v. Hill,* 385 U.S. 374, 387-388 (1967), the Supreme Court held the plaintiff's right of publicity would be accommodated over concerns of freedom of speech to the extent the defendant used the plaintiff's name and likeness in an article with knowledge of, or reckless disregard for, the article's falsity, to increase circulation or enhance its standing with readers. *Id.* at 387-388, 395. The Supreme Court permitted the plaintiff to proceed under New York's right of publicity statute because ""calculated falsehood should enjoy no [first amendment] immunity in the situation here presented us." *Id.* at 390. The same is true, here. Netflix's calculated falsehood with respect to Harvey's identity to gain more subscribers does not enjoy first amendment immunity.

Netflix's citation to *Polydoros v. Twentieth Century Fox Film Corp.,* 67 Cal. App. 4th 318, 325 (1997) is not helpful because the Court held there was no balancing to require since the character in the work of fiction was plainly not the plaintiff. *Id.* at 323-324 ("[n]o person seeing this film could confuse the two."). Here, Netflix has horrifically defamed Harvey in a "true story" in which the public has not only identified Harvey as 'Martha' but acted on it in the real world by contacting and

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

threatening her. Complt., ¶ 37. Further, the procedural posture of *Polydorous* was an appeal on summary judgment, whereas the only issue on this motion is whether plaintiff has stated a claim. Netflix cites no case in which a defendant's appropriation of a plaintiff's identity or likeness for the purpose of defaming her was held to be protected speech.  Plaintiff's right of publicity claims are stated.

## POINT VII

### HARVEY'S CLAIM FOR PUNITIVE DAMAGES IS NOT SUBJECT TO A RULE 12(b)(6) MOTION

Netflix's motion to dismiss Plaintiffs' punitive damages claim must be denied because it is premised solely on lack of supporting factual matter, not the argument that punitive damages are precluded as a matter of law. *Townsend v. McDonnell*, 2019 WL 7882085, *5 (C.D.Cal. 2019) (Klausner J. ) (citing *Sturm v. Rasmussen*, 2019 WL 626167 (S.D.Cal. 2019) (Rule 12(b)(6) generally inapplicable to damage prayers) (collecting cases). Here, Netflix's motion does not contend punitive damages are precluded as a matter of law. Instead, Netflix argues the Complaint "sets forth no factual allegations of conduct by Defendants that" support a punitive damages award. Netflix Br. at 16-17.  Because punitive damages are not a claim for relief, Netflix's motion to dismiss for failure to state a claim is improper.

## CONCLUSION

For all the reasons set forth herein, Netflix's motion to dismiss should be denied in its entirety.

DATED: August 26, 2024             Respectfully submitted,

By: */s/ Brian Levenson*

Brian S. Levenson * *Pro Hac Vice*
Richard A. Roth * *Pro Hac Vice*

18

THE ROTH LAW FIRM, PLLC
295 Madison Avenue, 22nd Floor
New York, NY 10017
Phone: 212-784-6699
Email: brian@rrothlaw.com

Allen Hyman (California State Bar No. 73371)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, CA 91602
Phone: (818) 763-6289
E-mail: lawoffah@aol.com

*Attorneys for Plaintiff*

19

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**

1

2

## CERTIFICATE OF COMPLIANCE

3          The undersigned, counsel of record for Plaintiff Fiona Harvey certifies that

4   this brief contains 5,530 words, which complies with the word limit of the Court's

5   standing order. In making this calculation, I have relied on the word count of the

6   word-processing system used to prepare the document.

7

8   Dated: August 26, 2024

9                                   By: */s/ Brian Levenson*

10                                  Brian Levenson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**Case No. 2:24-cv-04744-RGK-AJR**