Richard A. Roth * *Pro Hac Vice*
Email: Richard@rrothlaw.com
Brian S. Levenson * *Pro Hac Vice*
Email: Brian@rrothlaw.com
THE ROTH LAW FIRM, PLLC
295 Madison Avenue, 22nd Floor
New York, NY 10017
Phone: 212-784-6699

Allen Hyman (California State Bar No. 73371)
LAW OFFICES OF ALLEN HYMAN
10737 Riverside Drive
North Hollywood, CA 91602
Phone: (818) 763-6289
Fax: (818) 763-4676
E-mail: lawoffah@aol.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FIONA HARVEY,<br><br>                              Plaintiff,<br><br>        v.<br><br>NETFLIX, INC. and NETFLIX WORLDWIDE ENTERTAINMENT, LLC,<br><br>                              Defendants. | Case No. 2:24-cv-04744-RGK-AJR<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE**<br><br>Date: September 16, 2024<br>Time: 9:00 a.m.<br>Place: Courtroom 850<br><br>Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................. **1**

**BACKGROUND** ...................................................................................... **1**

**STANDARD ON AN ANTI-SLAPP MOTION** ...................................... **4**

**ARGUMENT** ........................................................................................... **4**

**POINT I:    NETFLIX'S FALSE STATEMENTS ARE NOT SUBJECT TO A SPECIAL MOTION TO STRIKE** ....................................... **4**

  A. Netflix's False Allegations of Criminal Conduct Is Not Protected Activity Under §425.16 ...................................................................... 4

  B. Netflix's Defamatory Statements Are Not In The Public Interest ................ 5

**POINT II: HARVEY'S CLAIM HAS MINIMAL MERIT** ....................... **6**

  A. Harvey Stated A Claim For Defamation ....................................... 7

  B. The Public Reasonably Believed Netflix's False Statements Were True .... 9

  C. Netflix's False Statements Are Not Substantially True ........................ 11

  D. Netflix's Defamatory Statements Are Not Opinions ......................... 12

**POINT III: HARVEY IS NOT A PUBLIC FIGURE** ......................... **13**

  A. Harvey Is Not A Limited Public Figure .................................... 14

  B. Netflix Had Actual Malice .................................................. 15

  C. Harvey Is Not Libel-Proof Opinions ...................................... 16

  D. Attorneys' Fees Should Be Awarded Against Netflix Opinions ........... 17

**CONCLUSION** .................................................................................. **18**

i

# TABLE OF AUTHORITIES

## CASES

*Abuemeira v. Stephens*,
    246 Cal.App.4th 1291 (2016) ................................................................ 4

*Ampex Corp. v. Cargle*,
    128 Cal.App.4th 1569, 1577 (2005) .......................................... 14-15

*Ball v. Taylor*,
    416 F.3d 915 (8th Cir. 2005) ............................................................... 7

*Barnes-Hind, Inc. v. Superior Court*,
    181 Cal.App.3d 377 (1986) ............................................................... 11

*Bindrim v. Mitchell*,
    92 Cal. App. 3d 61 (1979) ........................................................... 7, 10

*Bernstein v. LaBeouf*,
    43 Cal. App. 5th 15 (2019) ................................................................. 6

*Briscoe v. Reader's Digest Association Inc.*,
    4 Cal.3d 529 (1971) (en bank) ........................................................ 14

*Burrill v. Nair*,
    217 Cal. App. 4th 357 (2013) ........................................................... 11

*Church of Scientology of California v. Flynn*,
    744 F.2d 694 (9th Cir.1984) ............................................................... 7

*Colborn v. Netflix Inc.*,
    541 F. Supp. 3d 888, 901 (E.D. Wis. 2021) ................................... 12

*Dickinson v. Cosby*,
    37 Cal.App.5th 1138 (2019) ............................................................ 12

*Dual Diagnosis Treatment Center, Inc. v. Buschel,*
   6 Cal.App.5th 1098 (2016) ................................................................. 6

*Fairstein v. Netflix, Inc.,*
   553 F.Supp.3d 48, 59 (S.D.N.Y. 2021) ..................................... 10, 12

*Gaprindashvili v. Netflix, Inc.,*
   2022 WL 363537 (C.D.Cal. 2022) ...................................................... 10

*Geiser v. Kuhns,*
   13 Cal.5th 1238 (2022) ...................................................................... 5

*Gertz v. Robert Welch, Inc.,*
   418 U.S. 323, 94 S.Ct. 2997 (1974) ................................................. 13

*In re Aroonsakool,*
   2012 WL 458819 (S.D.Cal. 2012) ...................................................... 17

*Kapellas v. Kofman,*
   1 Cal.3d 20 (1969) ............................................................................ 14

*Khawar v. Globe Intern., Inc.,*
   19 Cal.4th 254 (1998) ....................................................................... 15

*M.G. v. Time Warner, Inc.,*
   89 Cal.App.4th 623 (2001) ................................................................ 5

*MacDonald v. Brodkorb,*
   939 N.W.2d 468 (Minn. Ct. of Appeals 2020) ............................... 13

*Maheu v. Hughes Tool Co.,*
   569 F.2d 459 (9th Cir. 1977) ........................................................... 11

*Manzari v. Associated Newspapers Ltd.,*
   830 F.3d 881, 887 (9th Cir. 2016) ...................................................... 6

*Masson v. New Yorker Magazine, Inc.,*
   960 F.2d 896, 901 (9th Cir. 1992)..................................................... 16

iii

*Miller v. Sawant*,
    811 Fed.Appx.408, n.3 (9th Cir. 2020) ................................................................. 7

*Monster Energy Co., v. Schechter*,
    7 Cal.5th 781 (2019) ........................................................................................ 4

*Mosesian v. McClatchy Newspapers*,
    233 Cal.App.3d 1685 (1991) .............................................................................. 14

*Muzikowski v. Paramount Pictures Corp.*,
    322 F.3d 918 (7th Cir. 2003) .............................................................................. 10

*New Show Studios LLC v. Needle*,
    2014 WL 12495640 (C.D.Cal., 2014) ................................................................... 5

*Onokohwomo v. Sterling Jewelers, Inc.*,
    2022 WL 2256321*1 (9th Cir. 2022) ..................................................................... 7

*Partington v. Bugliosi*,
    56 F.3d 1147, 1155 (9th Cir. 1995) ...................................................................... 10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828, 833 (9th Cir. 2018) ......................................................................... 6

*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO*
    105 Cal.App.4th 913 (2003) ................................................................................. 5

*Rosenblatt v. Baer*,
    383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966) ............................................... 13

*Rutt v. Bethlehems' Globe Pub. Co.*,
    335 Pa.Super 163 (Pa. 1984) ............................................................................... 15

*SDV/ACCI, Inc. v. AT&T Corp.*,
    522 F.3d 955, 959–60 (2008) ............................................................................... 7

*Standing Committee on Discipline of U.S. Dist. Court for Cent. Dist. of California*,
    55 F.3d 1430 (9th Cir. 1995) ............................................................................... 10

iv

*Time, Inc. v. Firestone*,
    424 U.S. 448, 96 S.Ct. 958 (1976) ..................................................................... 6

*Toufanian v. Oreffice*,
    2021 WL4353115 (C.D.Cal. 2021) .................................................................. 12

*Umfress v. City of Memphis, Tennessee*,
    2021 WL 2828023 (6th Cir. 2021) .................................................................. 7

*Unsworth v. Musk*, 2
    2019 WL 8220721 (C.D.Cal. 2019) ............................................................... 13

*Von Kahl v. Bureau of Nat. Affairs, Inc.*,
    934 F.Supp.2d 204 (D.C. 2013) .................................................................... 17

*Weinberg v. Feisel*,
    110 Cal.App.4th 1122 (2003)...................................................................... 4, 5

*Weyrich v. New Republic, Inc.*,
    235 F.3d 617 (D.C. Cir. 2001) .................................................................... 10

*Wolston v. Reader's Digest Ass'n., Inc.*,
    443 U.S. 157, 99 S.Ct. 2701 (1979) .............................................................. 15

*Wynberg v. National Enquirer, Inc.*,
    564 F.Supp. 924 (C.D.Cal.1982). .................................................................. 17

**<u>STATUTES</u>**

Cal. Code Civ. Pro.§ 128.5(b)(2) ................................................................... 17

Cal. Code Civ. Pro. § 425.16 ...................................................................... 4

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

**PRELIMINARY STATEMENT**

This is a true story about what happens when Netflix's need to provide compelling content to add subscribers goes too far. To makes its new series *Baby Reindeer* about 'Martha' the convicted stalker more compelling, Netflix called *Baby Reindeer,* a "true story." Netflix now admits the Series is fictionalized. But for Netflix, its corporate mission was accomplished. Netflix added millions of subscribers immediately following Baby Reindeer's release.

Meanwhile, the real 'Martha' is plaintiff Fiona Harvey, an anonymous private person, living in a small flat in London, who as result of being easily identified as the real 'Martha' in Baby Reindeer has received death threats, been called a rapist, and has received a constant stream of direct messages to "kill herself."

Now, by this motion, Netflix seeks to rewrite history. Netflix expresses befuddlement that anyone would believe Netflix's claim that "this is a true story" and claims no reasonable person would believe Netflix when it made that representation to 50 million people. Netflix argues that it could not have defamed Harvey because although Netflix coopted her entire identity and depicted her committing rape, pleading guilty in court, and going to prison, Netflix was careful not to use her real name. Netflix knows better.

Netflix's motion to strike must be denied because the law does not protect false statements of criminal conduct. Discovery into the genesis of Netflix's calculated decision to falsely state "this is a true story" should proceed immediately. At trial, Netflix must be held responsible for destroying Fiona Harvey's life for the sake of adding subscribers.

**BACKGROUND**

In the Netflix series *Baby Reindeer* (the "Series"): (1) Martha was convicted of stalking a barrister with a disabled child and served a four-and-a-half-year sentence; (2) Martha pled guilty and was a convicted stalking a second time and was sentenced

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

1  to a nine-month sentence for stalking Gadd; (3) Martha cornered Gadd in a dark alley

2  and raped him by grabbing his penis until he 'beated'; (4) Martha gouged Gadd's

3  eyes with her thumbs and smashed a glass over his head leaving him bloodied; (5)

4  Martha waited outside Gadd's residence 16 hours a day; and (6) Martha stalked a

5  policeman. Complt., ¶ 88.

6       The public understood that the real 'Martha' did these monstrous things for

7  good reason. Episode One of *Baby Reindeer* begins with a black screen on which the

8  words "this is a true story appear." Complt., ¶ 23. Netflix promoted *Baby Reindeer*

9  on its website, with an article about the Series that states, "it's important to

10 remember that this isn't just a story – it's true." Complt., ¶ 73; Levenson Decl., ¶ 4,

11 Exh. 2. Netflix promoted the Series on Facebook and Twitter with a post viewed by

12 millions purporting to show Harvey's real emails, titled, "Martha's Real Emails from

13 Baby Reindeer – Every One of Them Is Real." Levenson Decl., ¶ 9, Exh. 7.  Netflix

14 stated in a UK Parliament committee hearing that "*Baby Reindeer* is obviously a true

15 story of the horrific abuse that [Richard Gadd] suffered at the hands of a convicted

16 stalker." Complt., ¶ 77; Levenson Decl., ¶ 3, Exh. 1, at Q401 (p. 32).

17      The only question then was, who was the real Martha?  That question was

18 answered within days. The answer was plaintiff, Fiona Harvey. Harvey, like Martha,

19 were Scottish lawyers, twenty years older than Gadd, living in London, with identical

20 accents, cadence, and physical appearance, who both were accused in newspapers of

21 stalking a barrister, and who messaged Gadd with the unusual euphemism for sex,

22 "my curtains need hung badly."  Complt., ¶¶ 33, 40-41; Hala Decl., ¶ 5; Harvey

23 Decl., ¶ 4, 8-9, 11, Exh. 26. There was no question that Harvey was Martha.

24      In May 2024, in response to an inquiry by a UK Parliament Committee

25 inquiring why journalists have not been able to find any record of Fiona Harvey's

26 convictions, Netflix provided a signed letter in which it confirmed that "the person

27 upon whom the show is based" was not a convicted stalker after all. Levenson Decl.,

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

¶ 5, Exh. 3. Now, Netflix admits in its motion to strike, that *none of the statements* about Harvey in *Baby Reindeer* are true, and that the Series is fictionalized. Gadd Decl., ¶¶ 10-13; Netflix Decl., ¶¶ 7-9.

Discovery will reveal that Netflix has always known that its Series *Baby Reindeer* was not a true story. In 2020, Netflix bought the rights a one-man stage play *Baby Reindeer* written by Richard Gadd, (the "Play"), that is "*based on* a true a story." Netflix Decl., ¶ 3; Levenson Decl., ¶ 8, p. 3. In Gadd's one-man play, Martha is played by a bar stool and has a pre-recorded Irish accent. Levenson Decl., ¶ 8, Exh. 6, p. 6. Martha is described as "a seasoned pro" at stalking. *Id*. at 29. Martha is never convicted of any crime and never goes to prison. Instead, the Play concludes with Martha receiving a First Instance Harassment Warning for stalking Gadd. *Id*. at p. 46.

When asked in a UK Parliament Committee about the Series, Netflix executive Benjamin King responded, "I cannot get into the specifics of what happened around the making of the show, because it would not be appropriate for me to comment," Levenson Decl., ¶ 3, Exh. 1 at Q403 (p. 33). Netflix has evaded the true story about Baby Reindeer for too long. Discovery will show that it was Netflix who insisted on the "this is a true story" title card at the beginning of Baby Reindeer to make its content more compelling to attract more subscribers and fatten its bottom line.  The same has recently been credibly reported in The Times UK. Levenson Decl., ¶ 7, Exh. 5 ("[s]ources in the TV industry have told The Sunday Times that th[e] line ['this is a true story'] was a *request from Netflix,* and that Gadd expressed concerns about presenting it as such (both Netflix and Gadd's representatives did not respond to requests for comment)." The motion must be denied, and discovery granted, because the true story of *Baby Reindeer* has not yet been written.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

1     **STANDARD ON AN ANTI-SLAPP MOTION**

2          "The anti-SLAPP statute does not insulate defendants from *any* liability for

3     claims arising from the protected rights of petition or speech. It only provides a

4     procedure for weeding out, at an early stage, *meritless* claims arising from protected

5     activity." *Monster Energy Co., v. Schechter*, 7 Cal.5[th] 781, 788 (2019). Resolution of

6     an anti-SLAPP motion involves two steps. First, the defendant must establish that the

7     challenged claim arises from activity protected by section 425.16. *Monster Energy* at

8     788. If the defendant makes the required showing, the burden shifts to the plaintiff to

9     demonstrate the merit of the claim by establishing a probability of success. In this

10    second-step, the plaintiff's evidence is accepted as true, and the court's inquiry is

11    limited to whether the plaintiff has stated a legally sufficient claim and made a prima

12    facie factual showing sufficient to sustain a favorable judgment. *Id*.

13    **ARGUMENT**

14    **POINT I**

15    **NETFLIX'S FALSE STATEMENTS ARE**
      **NOT SUBJECT TO A SPECIAL MOTION TO STRIKE**

16          Netflix's statements are not "free speech in connection with a public issue"

17    under § 425.16 for two reasons. First, as a matter of law, false accusations of

18    criminal conduct are not subject to a special motion to strike. Second, the statement

19    must relate to a public issue, not a private dispute. Netflix has failed to carry its

20    burden of establishing the subject statements are protected under the statute. The

21    motion to strike should be denied at the first step of the analysis.

22

23    **A. Netflix's False Allegations of Criminal Conduct Is Not Protected Activity**
      **Under §425.16**

24

25          Causes of action arising from false allegations of criminal conduct are not

26    subject to the anti-SLAPP laws. *Abuemeira v. Stephens*, 246 Cal.App.4[th] 1291, 1298

27    (2016)(citing *Weinberg v. Feisel* 110 Cal.App.4th 1122, 1127 (2003)); *Briganti v.*

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

*Chow*, 42 Cal. App.5[th] 504, 510 (2019); *New Show Studios LLC v. Needle*, 2014 WL 12495640 (C.D.Cal., 2014) (same). Otherwise, wrongful accusations of criminal conduct would receive the most stringent protections under law – a result that would be "inconsistent" the purpose of the anti-SLAPP statute. *Weinberg* at 1134-1136. See *M.G. v. Time Warner, Inc.*, 89 Cal.App.4[th] 623 (2001)(purpose of the anti-SLAPP statute is to curb meritless lawsuits, not to prohibit bona fide claims).

Netflix admits that all of Harvey's criminal conduct in *Baby Reindeer* – criminal convictions, sexual assault, physical assault, stalking a police officer, stalking Gadd outside his home for 16 hours a day, is "fiction." Gadd Decl., ¶ 9 ("[*Baby Reindeer*] is fictionalized and not intended to portray actual facts.") Accordingly, the motion to strike must be denied on this basis alone.

**B. Netflix's Defamatory Statements Are Not in the Public Interest**

No public interest was implicated by Netflix's statements about Harvey because: (1) Harvey is a private person; (2) Harvey's conduct could not directly affect a large number of people; and (3) Harvey's conduct was not of concern to a substantial number of people and never received extensive media coverage. *Geiser v. Kuhns*, 13 Cal.5[th] 1238, 1248 (2022).

Netflix argues its false statements about Harvey are in the public interest because the Series is about harassment and about Gadd, who is in the public eye. Netflix Br. 8-9. However, Netflix misses the mark. The issue is not whether the *subject matter of the Series* concerns a public interest, but rather whether Netflix's *statements about Harvey,* concern a public interest. *Geiser* at 1248. Further, speech concerning a private matter, such as this one between Gadd and Harvey, is not a public interest. *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* 105 Cal.App.4th 913, 919-924 (2003); *Weinberg v. Feisel*, 110 Cal.App.4th 1122, 1127 (2003) ("the defendant cannot turn otherwise private information into a matter of public interest simply by communicating it to a large

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

number of people." (citing *Time, Inc. v. Firestone*, 424 U.S. 448, 454, 96 S.Ct. 958, 965 (1976) (high profile divorce not a public interest). "Public interest does not equate with mere curiosity.' *Bernstein v. LaBeouf*, 43 Cal. App. 5th 15, 23 (2019). Netflix has failed to meet its burden to show its statements *about Harvey's* conduct concern a public interest.

Finally, *on this motion,* Netflix, relies on Gadd's declaration that *Baby Reindeer* does not concern Gadd. Netflix Decl., ¶ 3 ("fictionalized character Donny Dunn"). Netflix should not be permitted to simultaneously argue that Gadd's character "Donny" *really is Gadd* to survive opposition to its motion to strike. Regardless, a person's "celebrity status, on its own, is not sufficient to render anything the defendant says or does subject to anti-SLAPP protection." *Bernstein v. LaBeouf*, 43 Cal.App.5th 15, 23 (2019).

Netflix's motion to strike must be denied as Netflix failed to meet its burden at the first step of establishing statutorily protected speech. Accordingly, the Court need not reach the second step of the analysis – whether Harvey met her burden of establishing a probability of success on the merits. *Dual Diagnosis Treatment Center, Inc. v. Buschel*, 6 Cal.App.5th 1098, 1107 (2016).

## POINT II

### HARVEY'S CLAIM HAS MINIMAL MERIT

Even if Netflix reaches the second step of the anti-SLAPP analysis by making a threshold showing that its false statements about Harvey are statutorily protected, its motion to strike must be denied if Harvey shows her claim has "minimal merit." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887 (9th Cir. 2016). In the second step of the anti-SLAPP analysis, federal courts apply "different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018)."If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is

made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted." *Id.* at 834.

Netflix makes a series of legal and factual challenges to the Complaint that require discovery. Netflix argues that Harvey has not been defamed because (1) Harvey's real name is not used in Baby Reindeer; (2) no reasonable person would believe this "true story" was a true story; (3) Netflix's statements were mere opinions; (3) Netflix's false statements of fictional acts are substantially true; and (4) Harvey is a public figure who cannot show actual malice. Netflix's arguments must be rejected.

**A.   Harvey Stated a Claim for Defamation**

There is no requirement that the person defamed be mentioned by name. *Church of Scientology of California v. Flynn,* 744 F.2d 694 (9th Cir.1984) (citing *Bindrim v. Mitchell,* 92 Cal.App.3d 61, 75–76,). It is sufficient "if the publication points to the plaintiff by description or circumstance tending to identify him." *Id.* "[A] defamatory statement . . . sufficiently identifies the plaintiff if it is capable of being understood as referring to the plaintiff and there is evidence, direct or circumstantial, that the statement was "so understood by a third party." *Onokohwomo v. Sterling Jewelers, Inc*., 2022 WL 2256321*1 (9th Cir. 2022) (citing *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959–60 (2008). A plaintiff may use extrinsic facts to show that [the] statements were "of and concerning" them. *Miller v. Sawant*, 811 Fed.Appx.408, n.3 (9th Cir. 2020); *Ball v. Taylor*, 416 F.3d 915, 916 (8th Cir. 2005); *Umfress v. City of Memphis, Tennessee*, 2021 WL 2828023, *1-3 (6th Cir. 2021).

Harvey has the same nationality, age, occupation, residence, physical appearance, accent and cadence as 'Martha'. Complt., ¶¶ 40-41; Harvey Decl., ¶¶ 3, 4, 8, 20; Hala Decl., ¶¶ 5-6. In addition, Harvey and Martha are both highly stressful, emotional, bright and at times funny individuals. Hala Decl., ¶ 2. Harvey and Martha

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

both send Gadd messages about "hanging my curtains" as a euphemism for sex in around the year 2014, and both were accused of having stalked a barrister with a disabled child. Complt., ¶ 35; Levenson Decl, ¶ 11, Exh. 8; Armstrong Decl., ¶ 4.

Gadd denies that Harvey is Martha in his declaration, but then immediately, and perhaps, unwittingly, leaves no doubt that Harvey *is* Martha, by recounting his "real life" experiences with Fiona Harvey that are depicted note for note in the Series.  Gadd Decl., ¶¶ 10, 14-23. For example, Gadd declares under oath that in real-life, Gadd offered Harvey a free cup of tea at the pub where he worked (Gadd Decl., ¶ 14) (Episode One at 1:43); Harvey hung around the pub constantly while Gadd worked (Gadd Decl., ¶ 15) (Episode Two at 12:00-13:00); Harvey mentioned to a customer at the bar a bad review about Gadd which she had seen online (Gadd Decl., ¶ 19) (Episode Six at 14:45); Harvey attended Gadd's comedy shows (¶ 21) (Episode One at 20:20); Harvey emailed Gadd relentlessly (Gadd Decl., ¶ 22 ) (Episode One at 9:50); Harvey sent Gadd hundreds of voicemails (Gadd Decl., ¶ 23) (Episode Seven at 10:15-12:00).

If there was any doubt whether Martha is Harvey, Laura Wray, who accused Harvey of stalking her in 1999 (and who provided a declaration in support of Netflix's motion to strike (ECF 26-27) candidly admitted during an interview on the Piers Morgan show that 'Martha' is Fiona Harvey: "when [I] saw 'Martha' in Baby Reindeer [I] couldn't believe it. From the very beginning it was obvious that it was same the woman. ***It was Fiona Harvey***. The actress, who does a very good job, sounds like her, looks like her, mimicked her to a tee."Levenson Decl., ¶ 13 (at 3:35-4:05); Wray Decl., ¶ 28. Wray's statement is admissible under Fed. R. Evid. §§ 802, 803. To the extent it is not, her deposition is plainly necessary. Harvey was easily identified as 'Martha' by the public based on the obvious idiosyncratic facts about Harvey referenced in the Series (above).

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

**B. The Public Reasonably Believed Netflix's False Statements Were True**

Netflix argues that "[n]one of the claimed defamatory statements can, in context, be construed by a reasonable viewer as factual." Netflix Br. at 12.  Netflix's position is pure gaslighting. Netflix told the public this was a true story. Complt ¶¶ 23, 73; Levenson Decl., ¶ 9, Exh. 7.



In response, members of the public inundated Harvey with direct messages on Facebook who identified Harvey as 'Martha' and believed Harvey did what Netflix said she did. Harvey Decl., ¶ 17, Exhs. 1-23. Members of the public were so outraged by Harvey's purported conduct that they called her a rapist, threatened her, and told her to kill herself. *Id.* Likewise, reporter John Dingwall who published an article about Harvey on May 3, 2024,  received a barrage of intense feedback from people asking how he could give voice to Harvey, a convicted criminal and who did the things shown in *Baby Reindeer*. Dingwall, Decl., ¶ 9.

Netflix argues that the Series could not understood as depicting real events because each episode had a disclaimer. Netflix Br., at 12. Putting aside that the premise of the Series is "this is a true story," Netflix's 'disclaimer' is virtually non-existent. Episodes of the Series may have a disclaimer buried in the credits, but when Baby Reindeer is streamed on the Netflix paid subscription streaming service (and

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

not from the thumb drive provided to the Court by Netflix), the episodes automatically "turn" to the next episode *before* the credits finish, such that Netflix's disclaimer is never seen by the viewer. Levenson Decl., ¶ 10. A viewer would have to select "watch credits" and, even then, the disclaimer itself is unnoticeable buried in fine print halfway through three minutes of credits. Levenson Decl., ¶ 10.

Netflix has tried, and failed, to assert the same disclaimer defense in other litigations. See *Gaprindashvili v. Netflix, Inc.*, 2022 WL 363537, *6 (C.D.Cal. 2022) (rejecting Netflix's disclaimer and holding "in context, therefore, Netflix created the impression that it was asserting objective facts."); *Fairstein v. Netflix, Inc.*, 553 F.Supp.3d 48, 59 (S.D.N.Y. 2021) (statements in Netflix docudrama were actionable notwithstanding a disclaimer that appeared in each episode). See also *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918 (7th Cir. 2003) (defamation claim stated notwithstanding disclaimer "this is a fictious story and no actual persons  . . . have been portrayed.").

Finally, Netflix's litigation position that *Baby Reindeer* is fictionalized does not bar a finding of defamation. *Gaprindashvili* at *5 ("the fact that the Series was a fictional work does not insulate Netflix from liability for defamation if all the elements of defamation are otherwise present."); (citing *Bindrim v. Mitchell*, 92 Cal. App. 3d 61 (1979), *cert. denied*, 444 U.S. 984 (1979) (fictional character in the novel was identifiable as the real person). See *Partington v. Bugliosi*, 56 F.3d 1147, 1155 (9th Cir. 1995) (creators of docudramas that mix fact and fiction "must attempt to avoid creating the impression that they are asserting objective facts").

Netflix relies on *Standing Committee on Discipline of U.S. Dist. Court for Cent. Dist. of California*, 55 F.3d 1430, 1437-38 (9th Cir. 1995) and *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 626 (D.C. Cir. 2001) for the rule that a "specialized audience not representative of a reasonable person"). Netflix Br. at 10. These cases do not contain any such holding. Moreover, it is unclear who Netflix claims is a

specialized audience in this case – anyone with google could have found Harvey in minutes based on her "hang my curtains' tweet. Armstrong Decl.,¶ 4; Dingwall Decl., ¶ 6. Further, it was clear to those who knew Harvey that she was 'Martha.' Hala Decl., ¶¶ 4-8; Levenson Decl., ¶ 10.

**C. Netflix's False Statements Are Not Substantially True**

Netflix argues Harvey's claim does not have minimal merit because Netflix's false statements about Harvey are "substantially true." See *Maheu v. Hughes Tool Co.*, 569 F.2d 459 (9th Cir. 1977) ("minor inaccuracies" do not amount of falsity). Specifically, Netflix contends (1) Harvey pinching Gadd's 'bum' is substantially the same thing as Harvey raping him (Gadd Decl., ¶¶ 16-17) (Complt., ¶¶ 59-61); (2) Harvey never being convicted of a crime is substantially the same thing as Netflix falsely stating Harvey having two convictions, pleading guilty to crimes in a dramatic courtroom scene, and serving 5 years in prison (Harvey Decl., ¶ 13) (Complt., ¶ 52-58) ; (3) Harvey "shoving" Gadd in the back of his neck is substantially the same thing as Harvey horrifically gouging out his eyes and bloodying his head (Gadd Decl., ¶ 19) (Harvey Decl., ¶ 15) (Complt., ¶¶ 69-70); (4) making up that Harvey stalked a police officer is substantially the same thing as Harvey never having done so (Complt., ¶¶ 67-68) (Harvey Decl., ¶ 13); and (5) Harvey waiting outside Gadd's residence for 16 hours a day is the same thing as Harvey never having done that. (Complt., ¶ 64) (Harvey Decl., ¶ 13); (Gadd Decl., Exh. 44)) ("I am sure [Fiona Harvey] does not know where I live"). Netflix Br. at 13-14; Gadd Decl., ¶ 67; Netflix Decl., ¶ 8.

Netflix's argument that the "substantial truth" doctrine applies on these facts must be rejected. First, false statements charging commission of a crime . . . are defamatory per se." *Burrill v. Nair*, 217 Cal. App. 4th 357, 383 (2013) (*disapproved of on other grounds by Baral v. Schnitt*, 1 Cal. 5th 376 (2016); *Barnes-Hind, Inc. v.*

*Superior Court*, 181 Cal.App.3d 377, 385, 226 Cal.Rptr. 354 (1986). Second, the conduct that Netflix attributes to Harvey is obviously far from 'substantially true.'

Netflix's statements are more negative and monstrous than the truth because the truth was less entertaining. For example, we do not see 'Martha' pinch Gadd's bum (as Gadd claims) at the end of Episode Two. Instead, we see Harvey corner Gadd in a dark alley and rape him. Complt., ¶¶ 59-61. Likewise, the Series finale does not conclude with Harvey receiving a warning letter from the police as Gadd claims. Gadd Decl., ¶ 53. Rather, we see a dramatic courtroom scene in which Harvey sobs as she pleads to guilty and is sentenced to a nine-month prison sentence. Complt., ¶¶ 56-57.

**D. Netflix's Defamatory Statements are Not Opinions**

Netflix argues its false statements about Harvey were non-actionable opinions. Netflix Br., at 15. Netflix made this same failed argument in other litigations, and it must fail here as well. See *Fairstein v. Netflix, Inc.*, 553 F. Supp.3d 48, 58 (S.D.N.Y. 2021), ("[t]he average viewer could conclude that these scenes have a basis in fact and do not merely reflect the creators' opinions about controversial historical events."); *Colborn v. Netflix Inc.*, 541 F. Supp. 3d 888, 901 (E.D. Wis. 2021) (Netflix's implication that plaintiff criminally framed Avery for murder was not a nonactionable opinion). Netflix asserted cold hard facts in the true story about Harvey – the eye gouging, head smashing monster, who raped Gadd, got convicted (twice), and served five years in prison. See *Toufanian v. Oreffice*, 2021 WL4353115, *5 (C.D.Cal. 2021) (statements of opinion are "broad, unfocused, and wholly subjective."). Regardless, "a statement that implies a false assertion of fact, even if couched as an opinion, can be actionable." *Dickinson v. Cosby*, 37 Cal.App.5th 1138 (2019).

1

2

**POINT III**

**HARVEY IS NOT A PUBLIC FIGURE**

3      The determination of whether Plaintiff is a public figure is a question of law.

4 *Rosenblatt v. Baer*, 383 U.S. 75, 88 n. 15, 86 S.Ct. 669, 677 n. 15 (1966). As the

5 moving party, the defendant bears the burden of showing plaintiff is a public figure.

6 *Unsworth v. Musk*, 2019 WL 8220721, *4 (C.D.Cal. 2019). "Absent clear evidence

7 of general fame or notoriety in the community, and pervasive involvement in the

8 affairs of society, an individual should not be deemed a public personality for all

9 aspects of his life." *Gertz.* To establish defamation, a public figure must show actual

10 malice, whereas a private person need only show negligence. *Gertz v. Robert Welch,*

11 *Inc.*, 418 U.S. 323, 345-246, 94 S.Ct. 2997, (1974).

12      Netflix claims Harvey is a public figure because Harvey "ran for Parliament"

13 in 1999. Netflix Br. at 15.  Netflix is wrong factually and legally. First, Harvey never

14 "ran for Parliament." Harvey Decl., ¶¶ 6-7; Levenson Decl., ¶ 6, Exh. 4. *Id.* Harvey

15 was never selected to be a candidate and was never a candidate. Harvey Decl., ¶ 6-7.

16 Netflix Exh. M (ECF 26-19) ("Nobody could believe it when [Harvey] even tried to

17 put herself forward as a candidate for the Scottish Parliament and Westminster. . .

18 she stood absolutely no chance."); Netflix Exh. T (EF 26-26) (Harvey complained

19 she was not even on the short list of potential nominees.

20      Regardless, a candidate for office is not a general public figure after the

21 election. See *Rutt v. Bethlehems' Globe Pub. Co.*, 335 Pa.Super 163, 181 (Pa. 1984)

22 (within three months after defeat in a primary election, plaintiff was not an all-

23 purpose public figure); *MacDonald v. Brodkorb*, 939 N.W.2d 468, 479-480 (Ct. of

24 Appeals of Minn. 2020) (candidate for office is a limited public figure only during

25 the time he is running for office). Moreover, "a public figure can be so far removed

26 from his former position in the public eye, that the publisher will no longer enjoy the

27 prophylactic treatment accorded him when he deals with those persons who truly are

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

1 | public officials or public figures." *Briscoe v. Reader's Digest Association Inc.,* 4

2 | Cal.3d 529, n. 13 (1971) (en bank).

3 |     *Kapellas v. Kofman*, 1 Cal.3d 20 (1969) and *Mosesian v. McClatchy*

4 | *Newspapers*, 233 Cal.App.3d 1685, 1696-1697 (1991), cited by Netflix, do not hold

5 | otherwise. These cases stand for the unremarkable rule that candidates (present

6 | tense) for public office are public figures because they "accept this risk of closer

7 | scrutiny" since the public must be afforded the opportunity to evaluate the

8 | candidate's fitness for office. *Kapellas* at 37; *Mosesian* at 1696-1697. Netflix cites

9 | no case remotely holding that a former candidate for office remains a public figures

10 | 25 years later, let alone a person who was never selected to be a candidate.

11 | **A. Harvey Is Not A Limited Public Figure**

12 |     Three elements must be present in order to characterize a plaintiff as a limited

13 | purpose public figure: (1) there must be a public controversy, which means the issue

14 | was debated publicly and had foreseeable and substantial ramifications for

15 | nonparticipant; (2) the plaintiff must have undertaken some voluntary act through

16 | which he or she sought to influence resolution of the public issue. In this regard it is

17 | sufficient that the plaintiff attempts to thrust him or herself into the public eye; and

18 | (3) the alleged defamation must be germane to the plaintiff's participation in the

19 | controversy. *Ampex Corp. v. Cargle*, 128 Cal.App.4[th] 1569, 1577 (2005).

20 |     Netflix argues that Harvey is a limited public figure on *all issues* related

21 | stalking, harassment and assault because she "voluntarily injected herself into a

22 | public controversy, namely stalking and harassment of Laura Wray and Donald

23 | Dewar." Netflix Br. at 15. First, these events occurred 25 years ago. See *Briscoe* at n.

24 | 12 (""It would be a crass legal fiction to assert that a matter once public never

25 | becomes private again.").

26 |     Second, Harvey's problems with Wray and Dewar were never a "public

27 | controversy" defined in law as an "issue that was debated publicly and had

28 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

foreseeable and substantial ramifications for nonparticipants." *Ampex* at 1577. Netflix does not contend Harvey's disputes with Wray and Dewar affected anyone other than them. The fact that an article reported that Wray accused Harvey of stalking does not make Harvey a public figure. See *Wolston v. Reader's Digest Ass'n., Inc.*, (1979) 443 U.S. 157, 167, 99 S.Ct. 2701, 2707 ("[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention.").

Third, Netflix fails to identify any voluntary act by Harvey by which she sought to influence the public on her disputes with Wray or Dewar. *Ampex Corp.* at 1577. The full extent of Harvey's public involvement was purportedly being quoted as stating "I'll be contacting my solicitor." Netflix Exh. M. (ECF 26-19).

Finally, Harvey's problems with Wray and Dewar in the late 1990s are not germane to Netflix's false statements in 2024 that Harvey raped Gadd, attacked Gadd, was convicted twice and served five years in prison. *Ampex Corp*. at 1577. Accordingly, Netflix has failed to satisfy any prong of three-part limited public figure analysis.

**B. Netflix Had Actual Malice**

'[A]ctual malice' means that the defamatory statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Khawar v. Globe Intern., Inc.*, 19 Cal.4th 254, 275 (1998). Reckless disregard, in turn, means that the publisher in fact entertained serious doubts as to the truth of his publication." *Id.* To prove actual malice, therefore, a plaintiff must demonstrate with sufficient evidence that the defendant realized that his statement was false or that the subjectively entertained serious doubts as to the truth of his statement." *Id.* To prove this culpable mental state, the plaintiff may rely on circumstantial evidence, including evidence of motive and failure to adhere to professional standards. *Id.* at 275. Actual malice is established when a publisher learns facts casting doubt on a

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

story but chooses to publish anyway. *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 901 (9th Cir. 1992).

Netflix plainly has actual malice because it has known since May 2024 that Harvey was never convicted, yet Netflix continues to this day to publish that this is true. Netflix's motive is clear – by turning Gadd's one-man Play "based on a true story" about a woman (played by a barstool) who received a warning letter about stalking into an actual "true story" about a woman was convicted of stalking and served four and a half years in prison, and then years later returns to stalking only be convicted again and serve additional prison time, Netflix knew it would have "compelling content" to add subscribers. Complt., ¶ 11; Levenson Decl., ¶ 3, 12; Exh. 1 at 33, Exh. 9.  In transforming the Play into the Series, Netflix made 'Martha' *more* like Harvey – identical physical appearance, nationality, speech, accent, cadence, and social media messages than the Play, and easier to identify.

*The Sunday Times* recently reported after this lawsuit was filed that that the line in the title screen of Episode One, " 'this is a true story' . . . was a request from Netflix, and that Gadd expressed concerns about presenting it as such."  Levenson Decl., ¶ 7, Exh. 5 at 2. The reporting by the Sunday Times also confirms that Netflix did not follow industry custom when it stated "this is a true story." *Id*. ("even the most basic compliance process would have stopped them putting 'this is a true story' at the start of the show,' says one TV executive. A second adds: 'this failed every conceivable compliance test. Harvey should have been told that it was coming out, she should have had a right of reply – but most of all, they had a duty to disguise her better."). Discovery is necessary to establish the full extent of Netflix's actual malice.

**C. Harvey Is Not Libel-Proof**

A plaintiff is libel-proof when he is "so unlikely by virtue of his life as a habitual criminal to be able to recover anything other than nominal damages as to warrant dismissal of the case, involving as it does First Amendment considerations."

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

Cardillo v. Doubleday & Co., Inc., 518 F.2d 638, 639 (2d Cir.1975). A determination of libel-proof "[d]epend[s] upon the nature of the conduct, the number of offenses, and the degree and range of publicity received." *Wynberg v. National Enquirer, Inc*., 564 F.Supp. 924, 928 (C.D.Cal.1982). The passage of time and geographical distance from when and where press coverage existed are also relevant factors. *Von Kahl v. Bureau of Nat. Affairs, Inc.*, 934 F.Supp.2d 204 (D.C. 2013).

Harvey is not libel-proof because she has never been convicted of any crime and is a private person unknown by the public. Harvey Decl., ¶¶ 13-14. While Netflix dug up two articles that reported accusations of Harvey stalking, those articles were published more than twenty years ago in Scotland, whereas Harvey has resided in London since 2005. Putnam Decl., Exhs. M, T; Harvey Decl., ¶ 8. Moreover, one article relied on by Netflix refers to Harvey, by her former surname, "Muir." Netflix Exh. B (ECF 28-5). The articles do not accuse of Harvey of criminal convictions, sexually assault or violent physical attacks, as Netflix represented in Baby Reindeer. Complt., ¶¶ 88. There is no evidence anyone has seen these articles in twenty years or read them. Even if these articles were known, Netflix's over the top false statements that Harvey is an eye-gouging, head smashing, convicted criminal, and rapist, plainly did more to damage Harvey's reputation than articles Netflix dug up on the Internet. Harvey is not libel-proof.

**D. Attorneys' Fees Should Be Awarded**

A plaintiff who prevails on an anti-SLAPP motion may recover its attorneys' fees and costs if the plaintiff satisfies § 128.5. *In re Aroonsakool*, 2012 WL 458819 (S.D.Cal. 2012). Pursuant to § 128.5(b)(2), an anti-SLAPP is "frivolous" if its (A) totally and completely without merit; or (B) for the sole purpose of harassing an opposing party." *Id.*

Netflix's anti-SLAPP motion is completely without merit. First, the Complaint is not even subject to an anti-SLAPP motion because Netflix has admitted to making

false statements of criminal convictions. Second, Netflix used the motion to harass

Plaintiff by filing over 75 exhibits that are irrelevant and scandalous.

## CONCLUSION

For the foregoing reasons, Netflix's special motion to strike should be denied

and attorneys' fees awarded to Harvey.

Dated: August 26, 2024
       New York, NY

                                    THE ROTH LAW FIRM, PLLC


                                    By:    */s/ Brian Levenson*
                                           Brian Levenson (*admitted phv*)
                                           brian@rrothlaw.com
                                           Richard A. Roth (*admitted phv*)
                                           rich@rrothlaw.com
                                           295 Madison Ave., Fl. 22
                                           New York, NY 10017
                                           P: (212) 542-8882


                                    LAW OFFICES OF ALLEN HYMAN

                                    By:    /s/ Allen Hyman
                                           Allen Hyman (CSB No. 73371)
                                           10737 ½ Riverside Dr.
                                           N. Hollywood, CA 91602
                                           lawoffah@aol.com
                                           P: (818) 763-6289


                                    *Attorneys for Plaintiff Fiona Harvey*

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**
**Case No. 2:24-cv-04744-RGK-AJR**

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Fiona Harvey certifies that this brief contains 5,579 words, which complies with the word limit of the Court's standing order. In making this calculation, I have relied on the word count of the word-processing system used to prepare the document.

Dated: August 26, 2024

By: */s/ Brian Levenson*

Brian Levenson

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
Case No. 2:24-cv-04744-RGK-AJR