LATHAM & WATKINS LLP
Marvin S. Putnam (Bar No. 212839)
*marvin.putnam@lw.com*
Laura R. Washington (Bar No. 266775)
*laura.washington@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Telephone: +1.424.653.5500
Facsimile: +1.424.653.5501

*Attorneys for Defendants*
Netflix, Inc., and
Netflix Worldwide Entertainment, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIONA HARVEY,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC., and NETFLIX WORLDWIDE ENTERTAINMENT, LLC,<br><br>Defendants. | Case No. 2:24-cv-04744-RGK-AJR<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION TO STRIKE THE DECLARATIONS OF LAURA WRAY, LOUISE OAKLEY, AND RICHARD GADD**<br><br>Hon. R. Gary Klausner |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 5

II. HARVEY IS NOT ENTITLED TO EMERGENCY *EX PARTE* RELIEF .......... 7

III. THE COURT SHOULD DENY THE APPLICATION TO STRIKE .......... 9

A. Legal Standard. .......... 10

B. The Gadd and Wray Declarations and Exhibits Thereto Are Relevant to the Subject Matter of the Litigation .......... 10

1. The Gadd Declaration and Exhibits Thereto Are Relevant .......... 10

2. The Wray Declaration and Exhibits Thereto Are Relevant .......... 12

C. The Oakley Declaration Is Relevant and Proper for Consideration by the Court Under Fed. R. Civ. P. 44.1 .......... 14

1. Netflix Provided Proper Notice of an Issue of Foreign Law Pursuant to Fed. R. Civ. P. 44.1 .......... 14

2. Federal Rule of Evidence 702 And *Daubert* Do Not Apply to Oakley's Foreign Law Declaration And Harvey's Other Objections Are Unavailing .......... 15

IV. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ........ 7, 14, 15, 16

*DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*,
268 F.3d 829 (9th Cir. 2001) ........ 15

*Elliot v. Lions Gate Ent. Corp.*,
639 F. Supp. 3d 1012 (C.D. Cal. 2022) ........ 11, 13, 14

*HFGL Ltd. v. Alex Lyon & Sons*,
264 F.R.D. 146 (D.N.J. 2009) ........ 16

*Karimi v. Golden Gate School of Law*,
361 F. Supp. 3d 956 (N.D. Cal. 2019) ........ 11, 13, 14

*Krish v. Balasubramaniam*,
2006 WL 2884794 (E.D. Cal. Oct. 10, 2006) ........ 15

*Marcus v. ABC Signature Studios, Inc.*,
279 F. Supp. 3d 1056 (C.D. Cal. 2017) ........ 10

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995) ........ 5, 8, 9

*Nee v. Fed. Deposit Ins. Corp.*,
2011 WL 13185691 (C.D. Cal. Mar. 29, 2011) ........ 5, 10, 12

*Nieves-Villanueva v. Soto-Rivera*,
133 F.3d 92 (1st Cir. 1997) ........ 16

*Pendleton v. 10Q LLC*,
2023 WL 9420542 (C.D. Cal. Jan. 12, 2023) ........ 9

*Santos v. TWC Admin. LLC*,
2014 WL 12703021 (C.D. Cal. Sept. 15, 2014) ........ 8, 9

*Stoyas v. Toshiba Corp.*,
2022 WL 17082663 (C.D. Cal. Nov. 17, 2022) ........ 15, 16, 17, 18

*teamLab Inc. v. Museum of Dream Space, LLC*,
650 F. Supp. 3d 934 (C.D. Cal. 2023) ..... 15

*United States v. Prigmore*,
243 F.3d 1 (1st Cir. 2001) ..... 16

**RULES**

Fed. R. Civ. Proc. 12(f) ..... 10

Fed. R. Civ. Proc. 44.1 ..... 16, 17

**I. INTRODUCTION.**

Plaintiff Fiona Harvey ("Harvey") filed a Motion to Strike Declarations of Laura Wray, Richard Gadd, and Louise Michelle Oakley that Defendants Netflix, Inc. and Netflix Worldwide Entertainment, LLC's (collectively, "Netflix") submitted in support of its Special Motion to Strike. Harvey remarkably asserts that the evidence of her own conduct—provided by Richard Gadd ("Gadd") and Laura Wray ("Wray"), and opined on by expert Louise Michelle Oakley ("Oakley")—should be stricken as immaterial, impertinent, and scandalous. There is no doubt that this evidence demonstrates Harvey's shameful and rather embarrassing conduct, but that is not a basis to strike it. Harvey's claims put this precise conduct squarely at issue. These declarations are directly relevant and material to this litigation, and properly considered in support of Netflix's Special Motion to Strike.

Pursuant to the Court's August 27, 2024 Order (ECF No. 46), the Court properly construes Harvey's Motion to Strike as an *ex parte* application (the "Application"), and Netflix does the same. Harvey's motion cannot be heard prior to Netflix's under the Local Rules and this Court's Standing Order, so she cannot obtain the relief she seeks without the Court's emergency assistance. Harvey has plainly not established her entitlement to such emergency *ex parte* relief under the standard set forth in *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). She could (and should) have properly calendared her motion so that it could be timely heard—but did not do so. Any purported crisis justifying emergency relief is of her own making. The Court's inquiry should end there; it can and should deny Harvey's Application for that reason alone.

Should the Court nonetheless consider Harvey's motion, it should still deny it. To prevail, Harvey must establish that the evidence provided by Gadd, Wray, and Oakley could have "no possible bearing" on the subject matter of the litigation. *Nee v. Fed. Deposit Ins. Corp.*, 2011 WL 13185691, at *2 (C.D. Cal. Mar. 29, 2011) (citations omitted) (cited in Application at 8). She utterly fails to make that showing.

Harvey's motion (wrongly) focuses narrowly on six, cherry-picked, discrete alleged statements in *Baby Reindeer* (the "Series"), and claims that the evidence does not address those particular statements. That is not the standard to strike it. The standard is whether the evidence has a bearing on the subject matter of the litigation. And while Harvey now conveniently ignores her allegation that "*Baby Reindeer* includes the repeated lie that Harvey stalked Gadd," Compl. ¶ 62, the subject matter of the litigation, Harvey's Complaint, and the Series have always revolved around allegations of stalking and harassment.

The evidence Harvey seeks to strike demonstrates that Harvey is a dangerous stalker who harassed Gadd, Wray, and others—exactly what she claims not to be in order to make her defamation claim. Gadd's and Wray's detailed description of Harvey's harassment and stalking is indisputably relevant to Harvey's defamation claim because it shows (i) that the alleged defamatory statements are substantially true, (ii) that Harvey is a libel-proof plaintiff who cannot suffer reputational damage due to her past stalking and harassment, and (iii) that Harvey is a public figure such that she must prove malice.[1] This proffered evidence is also highly relevant to Harvey's credibility as a witness. It contradicts, for example, statements Harvey made in her public interview on *Piers Morgan Uncensored*, including that she only contacted Gadd a few times. Gadd's declaration and the emails, letters, and voicemails attached thereto establish that Harvey's statement was a lie. Harvey does not refute in her declaration (filed under penalty of perjury) the fact she sent these emails, letters, or voicemails.

Moreover, Harvey does not address Craig Seymour's ("Seymour") declaration (ECF No. 26-4). Seymour's testimony corroborates and confirms

[1] The substantial truth argument, libel-proof plaintiff argument, and malice argument (premised on Harvey being a public figure) are all alternative arguments to Netflix's primary argument that the alleged defamatory statements in the Series are not "of and concerning" Harvey. Netflix contends that the Series does not make any statements about Harvey.

Gadd's. So, Harvey is not refuting what occurred, but rather that she simply does not like the evidence submitted (*i.e.*, the emails, letters, voicemails, and other documents) that show she actually did the things Gadd, Wray, and Seymour assert she did. Harvey is not entitled to have this relevant, almost entirely undisputed evidence stricken simply because she wishes to sweep her contemptible and admittedly scandalous (but, again, relevant) conduct under the proverbial rug.

Harvey's claims about the expert testimony provided by Oakley also fail. Oakley, an experienced Senior Prosecutor in the United Kingdom, provided expert testimony explaining the relevant harassment and stalking law in the United Kingdom and has opined that, based on facts provided by Gadd, Wray, and Seymour concerning Harvey's harassment and stalking, and assuming these facts are true, there was sufficient evidence to provide a realistic prospect of conviction of stalking punishable by up to eight years in prison under the laws of the United Kingdom. As with the evidence provided by Wray and Gadd, Oakley's testimony is relevant to Harvey's defamation claim and to Netflix's substantial truth argument. Netflix properly provided notice of the issue of foreign law raised in Oakley's expert declaration, and Oakley is entitled to explain foreign law and opine on ultimate facts as a foreign law expert pursuant to Federal Rule of Civil Procedure 44.1. Indeed, Harvey's claim to not have committed any crime that would warrant conviction in the United Kingdom puts her own conduct and its foreign-law consequences at issue. Contrary to Harvey's assertions, Federal Rule of Evidence 702 and the *Daubert* evidentiary standard do not apply to Oakley's foreign law declaration.

The Court thus should also deny the Application because the evidence submitted by Gadd, Wray, and Oakley is directly relevant to the litigation and proper for the Court to consider. Harvey has not come close to establishing otherwise.

## II. HARVEY IS NOT ENTITLED TO EMERGENCY *EX PARTE* RELIEF.

Pursuant to its August 27, 2024 Order Re: Motion to Strike Declarations of Laura Wray, Richard Gadd, and Louise Michelle Oakley, the Court construes

Harvey's Motion to Strike as an *ex parte* application. ECF No. 46. As the Court noted, Harvey's motion to strike the evidence in support of Netflix's motion must be heard alongside Netflix's motion, and Harvey did not file the motion to strike in sufficient time for that. *Id.* Since "Plaintiff cannot obtain the relief she seeks through a regularly noticed motion," she must therefore satisfy the requirements for seeking *ex parte* relief. An *ex parte* application is "a means of obtaining extraordinary relief and is appropriate in only rare circumstances." *Santos v. TWC Admin. LLC*, 2014 WL 12703021, at *1 (C.D. Cal. Sept. 15, 2014) (citing *Mission Power*, 883 F. Supp. at 492). To justify *ex parte* relief, the movant must establish two things. First, the movant must establish "why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner." *Mission Power*, 883 F. Supp. at 492. Second, the movant must show that it is "without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Id.* The Court's standing order reiterates the extraordinary nature of *ex parte* applications, stating, "*Ex parte* applications are solely for extraordinary relief and should be used with discretion. Sanctions may be imposed for misuse of *ex parte* applications." ECF No. 9 at ¶ 11 (citing *Mission Power*). Here, Harvey has not established—and cannot establish—that the requested relief "cannot be calendared in the usual manner" *or* that she is "without fault in creating the crisis." *Mission Power*, 883 F. Supp. at 492–93. The Court should therefore deny her Application.

*First*, Harvey has not shown (and cannot show) that her motion and the relief requested therein "cannot be calendared in the usual manner." *Mission Power*, 883 F. Supp. at 492. She could and should have set the hearing on her motion in the "usual manner," *i.e.*, by filing in sufficient time for the motion to be heard alongside Netflix's on September 16.

*Second*, Harvey has not shown that she is "without fault in creating the crisis that requires *ex parte* relief." *Mission Power*, 883 F. Supp. at 492. Harvey does not

assert that there is a crisis requiring *ex parte* relief, much less that she was without fault in creating any such crisis. *See generally* Application.[2] To the extent Harvey wished or needed to have her Application heard concurrently with Netflix's Special Motion to Strike, she could have filed the motion at any time from August 12, 2024 through August 19, 2024 (which accounts for the statutory meet and confer period) and calendared her motion in the "usual manner" to be heard at the same time as Netflix's motion. *Pendleton v. 10Q LLC*, 2023 WL 9420542, at *1 (C.D. Cal. Jan. 12, 2023) (denying *ex parte* application where "[p]laintiff created her own emergency"). Alternatively, she could have simply filed evidentiary objections to the Wray, Gadd, and Oakley declarations instead of her Application. She instead chose to file the Application to strike and wait until August 26th to file it, and thus is not "without fault in creating" any purported "crisis." *Mission Power*, 883 F. Supp. at 492.[3]

Harvey clearly has not met her burden under *Mission Power*, and she is not entitled to this extraordinary relief. The Court should deny her Application on this basis alone.

## III. THE COURT SHOULD DENY THE APPLICATION TO STRIKE.

Even if the Court finds that Harvey has carried her burden under *Mission Power* (she has not), her Application fails because the evidence she seeks to strike

---

[2] While it is possible that Harvey's scheduling of her motion for September 16, 2024 was a negligent mistake, any such resulting "crisis" was still of her own making. She is not entitled to *ex parte* relief.

[3] Netflix would be unfairly prejudiced if the Court were to grant the *ex parte* application, because Harvey has had over three weeks to prepare the Application, while Netflix had less than two days to respond. Moreover, Harvey's motion necessarily implicates arguments contained in Netflix's Special Motion to Strike, *see* disc. *infra* at 10-18, which is set for hearing on September 16, 2024, and Netflix has not yet filed its reply in support of that motion, which is currently due on September 3, 2024. ECF No. 36. Harvey has not provided any explanation for why she should "jump to the front of the line" and have her proposed motion heard ahead of Netflix's, and there is no good cause for any such preferential treatment of her motion. *Santos*, 2014 WL 12703021, at *5 ("[A]fter considering the *Mission Power* factors, the court is not convinced that the circumstances justify allowing [plaintiff] to 'jump to the front of the line' and have his motion to intervene heard before defendants' motion for summary judgment.")

is directly relevant to the subject matter of the litigation. The proffered evidence plainly relates to Harvey's claims and is highly relevant to whether the alleged defamatory statements are substantially true, whether Harvey is a libel-proof plaintiff, and whether Harvey is a public figure. Harvey provides no legitimate basis to exclude this evidence.

**A. Legal Standard.**

Federal Rule of Civil Procedure 12(f) provides that a "court ***may*** strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Matters are "immaterial" if they have "no essential or important relationship to the claim for relief or the defenses being plead," "impertinent" if they "do not pertain, and are not necessary, to the issues in question," and "scandalous" if they "cast a cruelly derogatory light on a party or other person." *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1062 (C.D. Cal. 2017). Harvey's own authority establishes a motion to strike "should ***not*** be granted" "unless it is clear that the matter to be stricken could have ***no possible bearing*** on the subject matter of the litigation." *Nee*, 2011 WL 13185691, at *2 (emphasis added and citations omitted) (cited in Application at 8).

**B. The Gadd and Wray Declarations and Exhibits Thereto Are Relevant to the Subject Matter of the Litigation.**

1. The Gadd Declaration and Exhibits Thereto Are Relevant.

Harvey does not dispute the veracity of paragraphs 24 through 65 of the Declaration of Richard Gadd in Support of Defendants' Special Motion to Strike (the "Gadd Declaration") (ECF No. 35) and Exhibits 1–60 thereto (collectively, the "Gadd Evidence") except for Gadd's testimony that Harvey shoved the back of Gadd's neck and pinched his bum. *See* Harvey Decl. ¶ 15. She does not dispute that for three years she would show up at the pub where he worked, follow him, and attend his comedy shows. Gadd Decl. ¶ 14–15; *see generally* Harvey Decl. Contrary to her statements given in a public interview after filing her Complaint, *see* disc.

*infra* at 11, she does not dispute Gadd's testimony that Harvey sent Gadd thousands of emails, hundreds of voicemails, and handwritten letters, often including unsolicited sexual, violent, and derogatory content. Gadd Decl. ¶ 23; *see generally* Harvey Decl. She also does not dispute that Gadd eventually obtained a First Instance Harassment Warning against her. Gadd Decl. ¶ 53; *see generally* Harvey Decl. Harvey's conclusory statement that the Gadd Evidence has "no relevance to Harvey's claims," Application at 9, is thus belied by the basic allegations in her Complaint. The Gadd Evidence is relevant to Harvey's claims and to whether the alleged defamatory statements are substantially true.

Harvey alleges that "*Baby Reindeer* includes the repeated lie that Harvey stalked Gadd." Compl. ¶ 62. The Gadd Evidence establishes that Harvey did stalk Gadd and establishes the severe extent of that stalking. *See generally* Gadd Decl.; Gadd Decl. Exs. 1–60. That means that the Gadd Evidence is relevant and has bearing on the subject matter of this litigation. This evidence also contradicts Harvey's statements in a public interview that she only contacted Gadd on a few occasions, and speaks directly to Harvey's credibility, which the Court can and should assess when considering Harvey's declaration in support of her opposition to the Special Motion to Strike (ECF No. 42). *See* Request for Judicial Notice ISO Defendants' Special Motion to Strike, Ex. A (Harvey's May 9, 2024 interview on *Piers Morgan Uncensored*). The Gadd Evidence further establishes that Harvey's actual conduct is far *worse* than the fictional Martha's depiction in the Series. *See* Special Motion to Strike at 14 ("The thousands of actual emails, handwritten letters, social media posts, and voicemails sent by Harvey are awash with violent hate speech and sexually explicit, deeply disturbing vitriol that is nowhere depicted in the Series."). And it of course establishes that Netflix's alleged "repeated lie" that Harvey stalked Gadd is not just substantially true, *Elliot v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1027 (C.D. Cal. 2022); *Karimi v. Golden Gate School of Law*, 361 F. Supp. 3d 956, 979 (N.D. Cal. 2019), but entirely true.

Harvey tellingly fails to provide any authority for the notion that the Court should disregard such highly relevant evidence solely on the basis that it contains "hateful," "racist," "homophobic," "lewd," and "explicit" material that Harvey sent unsolicited to Gadd as part of her harassment and stalking campaign against him. Application at 9. The Court should decline to strike any portion of the Gadd Evidence because this evidence not only has "possible bearing" on the "subject matter of the litigation," *Nee*, 2011 WL 13185691, at *2 (citations omitted), but is highly relevant.

2. The Wray Declaration and Exhibits Thereto Are Relevant.

Harvey does not dispute the veracity of the Declaration of Laura Wray in Support of Defendants' Special Motion to Strike (the "Wray Declaration") (ECF No. 26-27) and exhibits thereto (collectively, the "Wray Evidence"). She does not dispute that she stalked and harassed Wray, made death threats against Wray and her politician husband, and made false reports to authorities that Wray and her husband mistreated their developmentally disabled child. *See, e.g.*, Wray Decl. ¶¶ 14, 19; Application at 8–9; *see also generally* Harvey Decl. Nor does she dispute that Wray was granted an Interim Interdict against Harvey, which is akin to a temporary restraining order in the United States. Wray Decl. ¶¶ 20, 23; Application at 8–9; *see also generally* Harvey Decl. Despite acknowledging Netflix's reliance on the Wray Evidence, *see* Application at 8 (citing the Special Motion to Strike's citations to the Wray Evidence), she nevertheless falsely asserts that the Wray Evidence is irrelevant to "any of Harvey's claims of defamation against Netflix concerning Richard Gadd in *Baby Reindeer*." Application at 9. Yet, the Wray Evidence is plainly relevant to Harvey's claims and Netflix's Special Motion to Strike those claims.[4]

---

[4] Harvey's assertion in her motion that the evidence must be relevant to six specific alleged statements rather than relevant to her general claims and the subject matter of the litigation (*see, e.g.*, Application at 9) is baseless. *See Nee*, 2011 WL 13185691, at *2 (a motion to strike "should ***not*** be granted" "unless it is clear that the matter to be stricken could have ***no possible bearing*** on ***the subject matter of the litigation***.") (emphasis added and citations omitted).

The Wray Evidence is highly relevant to Netflix's argument that the alleged defamatory statements are substantially true, that Harvey is a libel-proof plaintiff, and that Harvey is a public figure such that she must prove malice. *See* Special Motion to Strike at 13–16. As to these three arguments, this evidence is relevant to whether the alleged defamatory statements that "Harvey was a convicted stalker who served a four-and-a-half-year sentence in Scotland" and "Harvey was [a] convicted stalker and harasser who pled guilty and was sentenced to a nine-month sentence and a five year restraining order" are substantially true. Compl. ¶ 88. The Wray Evidence establishes that Harvey stalked and harassed Wray and her husband and that Wray received an Interim Interdict against Harvey with respect to this stalking and harassment. Wray Decl. ¶¶14, 19, 20, 23. As explained in Netflix's Special Motion to Strike, substantial truth is a complete bar to alleged defamation, and a statement is substantially true so long as its substance or gist is justified. *See Elliot*, 639 F. Supp. 3d at 1027; *Karimi*, 361 F. Supp. 3d at 979; Special Motion to Strike at 13–14. Courts routinely hold that where, as here, a plaintiff engaged in conduct akin to that asserted by the defendant, a defamation claim must be dismissed. *Elliot*, 639 F. Supp. 3d at 1026–27; Special Motion to Strike at 13–14. In addition, the Wray Evidence confirms public reporting of these incidents, which is relevant to whether Harvey is a libel-proof plaintiff and to whether she is a public figure. *See* Special Motion to Strike at 14–16.

While Harvey claims the Wray Evidence is irrelevant because it does not have anything to do with whether she was convicted for stalking, *see* Application at 8–9, that is not the standard. The Wray Evidence demonstrates that the gist of this alleged statement is true because it evidences she was a known stalker and harasser who actually faced legal consequences, *i.e.*, the Interim Interdict Wray received against her. Harvey does not refute this evidence and has not plausibly shown that the Wray Evidence has no bearing on this issue or to the subject matter of the litigation. The Court therefore should deny Harvey's request to strike the Wray Evidence because

it is highly relevant to the Harvey's defamation claim and Netflix's substantial truth argument.

### C. The Oakley Declaration Is Relevant and Proper for Consideration by the Court Under Fed. R. Civ. P. 44.1.

The Court should also deny Harvey's request to strike the Expert Declaration of Louise Michelle Oakley in Support of Defendants' Special Motion to Strike (the "Oakley Declaration") (ECF No. 26-3). This foreign law expert declaration is relevant to whether the alleged defamatory statements, including that Harvey served time for stalking, *see* Compl. ¶ 88, are substantially true. Harvey concedes that the Oakley Declaration falls under the purview of Federal Rule of Civil Procedure 44.1, *see* Application at 10–11, and, pursuant to that Rule 44.1, Oakley is permitted (as she does) to provide the Court with the relevant substantive United Kingdom law that would apply to the facts established by Gadd, Wray, and Seymour regarding Harvey's past stalking and harassment. Rule 44.1 also permits Oakley, having reviewed that evidence, to offer her opinion that "there was sufficient evidence to provide a realistic prospect of conviction" of stalking punishable by up to eight years in prison under the laws of the United Kingdom. Oakley Decl. ¶¶ 80–84. Oakley's testimony will aid the Court in determining whether the substance or gist of the alleged defamatory statements is justified such that those statements are considered "substantially true." *See Elliot*, 639 F. Supp. 3d at 1027; *Karimi*, 361 F. Supp. 3d at 979; Special Motion to Strike at 13–14. Harvey's arguments (1) that Netflix failed to provide notice of this testimony and (2) that the Court should apply Federal Rule of Evidence 702 and *Daubert* to exclude the testimony are both wholly meritless.

#### 1. <u>Netflix Provided Proper Notice of an Issue of Foreign Law Pursuant to Fed. R. Civ. P. 44.1</u>.

As an initial matter, Netflix provided proper notice of an issue of foreign law pursuant to Federal Rule of Civil Procedure 44.1. Harvey's own authority recognizes that Rule 44.1 notice is not required to be provided in some separate

standalone document in advance of a filing that raises an issue of foreign law. Instead, it may be "given in the pleadings," including, for example, by raising the issue of foreign law in a dispositive motion itself. *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 846–49 (9th Cir. 2001) ("notice of intent to raise an issue of foreign law, ***if not given in the pleadings***, generally should be given before or during the pretrial conference") (emphasis added) (cited in Application at 11); *Krish v. Balasubramaniam*, 2006 WL 2884794, at *3 (E.D. Cal. Oct. 10, 2006) ("Arguably, by raising the issue of foreign law ***in its motion to dismiss***, Defendant has satisfied the requirements of Rule 44.1.") (emphasis added) (cited in Application at 13). Netflix gave sufficient notice of raising an issue of foreign law in its Special Motion to Strike *and* in its concurrently filed Oakley Declaration. *See* Special Motion to Strike at 14 ("Indeed, Louise Oakley, an experienced Senior Prosecutor in the United Kingdom, reviewed Gadd, Wray, and Seymour's declarations and Harvey's emails, letters, and voicemails and concludes 'there was sufficient evidence to provide a realistic prospect of conviction' of stalking punishable by up to eight years in prison. *See* Expert Declaration of Louise Michelle Oakley ¶¶ 80-84."); *see also generally* Oakley Decl.

2. <u>Federal Rule of Evidence 702 And *Daubert* Do Not Apply to Oakley's Foreign Law Declaration And Harvey's Other Objections Are Unavailing</u>.

Contrary to Harvey's assertions, the Oakley Declaration is not subject to Federal Rule of Civil Procedure 702 or *Daubert*, and its explanation of foreign law and application of foreign law to facts are entirely relevant and proper. At most, Harvey's objections speak to the weight the Court should assign to Oakley's testimony. They do not provide a basis for wholesale exclusion of that testimony.

As the Honorable Dean D. Pregerson recently explained, "[u]nder Rule 44.1, courts may consider any relevant material or source that may aid them in determining foreign law." *Stoyas v. Toshiba Corp.*, 2022 WL 17082663, at *1 (C.D. Cal. Nov. 17, 2022); *see also teamLab Inc. v. Museum of Dream Space, LLC*, 650 F. Supp. 3d

934, 947 (C.D. Cal. 2023) ("under Federal Rule of Civil Procedure 44.1, the Court 'may consider any relevant material or source that could aid it in this determination'") (citing *Stoyas*, 2022 WL 17082663, at *1). "A determination of foreign law based on Rule 44.1 is treated as a ruling on a question of law, and ***the materials considered need not be otherwise admissible under the Federal Rules of Evidence***." *Stoyas*, 2022 WL 17082663, at *1 (emphasis added). "Accordingly, experts considered under Rule 44.1 ***need not meet the standards [] in Federal Rule of Evidence 702, as applied in Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)**." *Id.* (emphasis added); *see also* Fed. R. Civ. Proc. 44.1 (the Court may consider relevant testimony "***whether or not . . . admissible under the Federal Rules of Evidence***") (emphasis added).

*First*, Harvey's assertion that expert testimony is presumptively improper if it is offered "solely to establish the meaning of a law" is patently false. Harvey's cases stand only for the uncontroversial proposition that experts may not opine on the meaning of *domestic law* in the United States. *See United States v. Prigmore*, 243 F.3d 1, 18 (1st Cir. 2001) (FDA experts testify concerning the meaning of applicable regulations) (cited in Application at 12); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (expert testifying regarding "various opinions of the Supreme Court of Puerto Rico") (cited in Application at 12). On the other hand, it is black letter law that the Court can consider a foreign law expert's testimony regarding the meaning of foreign law, as Harvey's own authority recognizes. *See, e.g.*, *Nieves-Villanueva*, 133 F.3d at 100–01 (while "expert testimony on [] purely legal issues is rarely admissible[,] . . . [t]he one well-recognized exception is for questions of foreign law, where the judge may be aided by the expert's assistance") (cited in Application at 12); *HFGL Ltd. v. Alex Lyon & Sons*, 264 F.R.D. 146, 148 (D.N.J. 2009) ("the Court may use an expert report to determine substantive foreign law") (cited in Application at 12–13). The Court here can and should consider Oakley's

testimony regarding the meaning of United Kingdom law. *See* Oakley Decl. ¶¶ 18–79 (describing relevant foreign law).

*Second*, Harvey's assertion that the Oakley Declaration "should be excluded because it is an impermissible attempt to apply U.K. law to the facts of this case" (Application at 12) fails because the Court can consider such "attempts" from foreign law experts to apply foreign law to facts under Rule 44.1. *Stoyas*, 2022 WL 17082663, at *2. In *Stoyas*, for example, plaintiffs argued that a foreign law expert's opinion "lack[ed] proper support and [was] unreliable" because "it improperly opine[d] on ultimate facts[.]" *Id.* The court rejected that argument, holding that "[a]s to [the declaration's] opinion on ultimate facts, ***that limitation does not apply to Rule 44.1 evidence***, which does not need to pass through the standards of Federal Rule of Evidence 702." *Id.* (emphasis added).[5]

*Finally*, Harvey's assertion that Oakley offers unfounded speculation (Application at 13) is false and not grounds for striking her opinion. As Harvey concedes, "Oakley's report cites extensive materials she considered in forming her opinions," *id.*), and Oakley draws on her considerable experience to render her opinions. *See, e.g.*, Oakley Decl., ¶¶ 5 ("In forming my opinions, I have read and considered the materials discussed below. I have also relied on my education, experience, and expertise in forming my opinions."), 9 ("Since May 2002, I have received thousands of instructions in criminal cases. I have conducted hundreds of trials throughout the criminal courts in England and Wales. As a result, I regularly advise on the sufficiency of evidence and the appropriateness of charges in offences of violence, such as . . . offences under the Protection from Harassment Act"). In

---

[5] The Court should follow *Stoyas*, which is recent, on-point authority within the Central District, as opposed to the stale, out-of-circuit, and out-of-district cases Harvey relies on for the proposition that a foreign law expert may not opine on the ultimate application of foreign law to the facts of a case. *See* Application at 12–13. Indeed, Rule 44.1 on its face states the Court may consider such testimony "***whether or not . . . admissible under the Federal Rules of Evidence***." Fed. R. Civ. Proc. 44.1 (emphasis added).

any event, the extent to which Oakley may have offered "improper conjecture" simply affects "the weight to which the Court [may] afford [the foreign law expert's] conclusions on certain matters." *Stoyas*, 2022 WL 17082663, at *2.[6] It is not a basis to strike Oakley's declaration.

**IV. CONCLUSION.**

Netflix respectfully requests that the Court deny Harvey's *ex parte* application and the relief requested therein.

Dated: August 28, 2024

Respectfully submitted,

LATHAM & WATKINS LLP
Marvin S. Putnam

By *_/s/ Marvin S. Putnam_*
Marvin S. Putnam
Attorneys for Defendants
Netflix, Inc., and Netflix Worldwide Entertainment, LLC

[6] The three cases Harvey cites (Application at 13) are inapposite because they do not address foreign law experts and apply the Federal Rules of Evidence, which are inapplicable to the Oakley Declaration. *See* disc. *supra* at 15-16.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Netflix, Inc., and Netflix Worldwide Entertainment, LLC, certifies that this brief contains 4,789 words, which complies with the word limit of the Court's standing order. In making this calculation, I have relied on the word count of the word-processing system used to prepare the document.

Dated: August 28, 2024

By: */s/ Marvin S. Putnam*
Marvin S. Putnam