LATHAM & WATKINS LLP
  Marvin S. Putnam (Bar No. 212839)
    *marvin.putnam@lw.com*
  Laura R. Washington (Bar No. 266775)
    *laura.washington@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Telephone: +1.424.653.5500
Facsimile: +1.424.653.5501

*Attorneys for Defendants*
Netflix, Inc., and
Netflix Worldwide Entertainment, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIONA HARVEY, | Case No. 2:24-cv-04744-RGK-AJR |
| Plaintiff, | **DEFENDANTS' REPLY IN FURTHER SUPPORT OF SPECIAL MOTION TO STRIKE** |
| v. | |
| NETFLIX, INC., and NETFLIX WORLDWIDE ENTERTAINMENT, LLC, | Date: September 16, 2024<br>Time: 9:00 a.m.<br>Place: Courtroom 850 |
| Defendants. | Hon. R. Gary Klausner |

## I. INTRODUCTION.

Simply watching the Series[1] and viewing the context of the alleged defamatory statements dispels any notion that the Series is *of and concerning* Harvey. If that were not enough to strike her claims (and it is), Netflix's substantial evidence demonstrates that Harvey's claims have no merit. Rather than address Netflix's supporting evidence, Harvey instead asserts—*without any authority*—that her claims are automatically established because the Series depicts criminal conduct by a fictional character. Harvey would have this Court disregard the undisputed evidence that the Series fictionalizes characters, events, and dialogue, merely because the story was described as "true." That has no effect on Harvey's legal burden to establish, through *admissible evidence*, that the Series makes a *provably false statement of fact about her,* and that Netflix acted with actual malice. She utterly fails to meet that standard.

Contrary to Harvey's contentions, the anti-SLAPP statute applies to statements concerning unlawful behavior. And Harvey's weak attempts to characterize these statements as a "private" dispute are belied by the actual evidence and settled law. Netflix's distribution of the Series—a dramatic work examining salient issues of harassment, stalking, trauma and abuse—is plainly "conduct in furtherance of the exercise of . . . free speech in connection with a public issue or an issue of public interest," as Cal. Code Civ. Proc. § 425.16 (e) provides. Harvey had the burden to show her claims are *legally sufficient and substantiated*. The admissible evidence demonstrates that Harvey did not—and cannot—meet this burden. The Court should thus grant Netflix's Special Motion to Strike.

## II. ARGUMENT.

### A. Harvey's Claims Arise from Protected Activity.

Harvey asserts—without a shred of authority—that her claims do not relate to

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in Netflix's Special Motion to Strike.

protected activity under the anti-SLAPP statute because the defamatory statements concern criminal conduct.[2] That is not the law. *See, e.g., Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 139, 144–45 (2011) (statements implying plaintiffs committed murder within public interest and protected by SLAPP statute); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 263 (9th Cir. 2013) (alleged fraudulent business practices protected); *Todd v. Lovecruft*, 2020 WL 60199, at *13 (N.D. Cal. Jan. 6, 2020) (alleged sexual abuse protected). Statements made in the context of a creative, dramatic work concerning stalking and harassment are squarely within the protections of the anti-SLAPP statute. Multiple cases hold that the creation and dissemination of film and television are entitled to the anti-SLAPP statute's protections. *See De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 849–50 (2018); *Tamkin*, 193 Cal. App. 4th at, 143–44; *Brodeur v. Atlas Enter., Inc.*, 248 Cal. App. 4th 665, 674 (2016). Harvey does not dispute this, nor that the Series' subject matter—abuse, harassment, and stalking—are topics of widespread, public interest. *See generally* Opp. (ECF 41); Netflix Memo. of Law (ECF 26-1), 8-9.

Harvey next asserts the alleged defamation does not implicate a public interest because Harvey is a private person.[3] This ignores her own allegations that the statements also concern Gadd—a celebrated actor and writer.[4] Compl. ¶¶ 24-28, 53-70. The public is indisputably interested in both Gadd and Harvey's stalking and

---

[2] *Briganti v. Chow*, 42 Cal. App. 5th 504, 508-09 (2019) and *New Show Studios LLC v. Needle*, 2014 WL 12495640, at *10 (C.D. Cal., 2014), cited by Harvey as ostensible, hold precisely the opposite.

[3] The private disputes addressed in *Abuemeira v. Stephens*, 246 Cal. App. 4th 1291, 1298 (2016), *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1127 (2003), and *Rivero v. Am. Fed'n of State, Cnty. and Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 919-924 (2003) are readily distinguishable from the issues here—namely, public stalking and harassment.

[4] Harvey asserts Netflix should not be permitted to argue the Series is not understood to concern her and also argue the SLAPP statute applies because *Harvey* alleges the Series concerns Gadd. But there is nothing inconsistent about these positions. It is Harvey who cannot selectively disclaim her own allegations to defeat Netflix's motion. *See Hu and Assocs., LLC v. New Life Senior Wellness Ctr., LLC*, 2017 WL 10591754, at *17 (C.D. Cal. July 7, 2017).

3

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' REPLY IN FURTHER SUPPORT OF
SPECIAL MOTION TO STRIKE

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

harassment of him. Putnam Decl. Exs. B-H; *see also Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677–78 (2010).[5] In any event, Harvey is hardly a private person. Her stalking and harassment of other high-profile individuals has been widely covered in the press. Putnam Decl. Exs. M-O. Additionally, the evidence demonstrates the challenged statements are also aimed at furthering (and did further) public discourse surrounding salient topics of abuse, harassment, and stalking, Gadd Decl. ¶¶ 7-8, 13; Putnam Decl. Exs. 1-L, which, as Harvey's own cited authority holds, is yet another independent ground to find the SLAPP statute applies here. *See Geiser v. Kuhns*, 13 Cal. 5th 1238, 1243 (2022).

### B. Harvey's Claims Are Not Legally Sufficient or Substantiated.

Because Harvey's claims arise out of protected activity, the burden shifts to her to show they have merit. She does not—and cannot.

#### 1. No Reasonable Viewer Would Understand the Series to Make a Factual Statement About Harvey.

The evidence demonstrates that no reasonable viewer would understand the Series to make *any* statement of fact—never mind one about Harvey—whom it never even mentions. Harvey's opposition—which mostly regurgitates the same broad similarities between her and the Series' Martha character as identified in the Complaint—does not change that the Series is not *of and concerning* her. *See* Netflix Memo. of Law (ECF 26-1), 10-11. Apparently realizing this, she now adds supposed "idiosyncratic facts" that she claims would lead a reasonable viewer to identify her as the Martha character—such as Harvey and Martha both drink tea and are "highly stressful" with "emotional issues," and "bright and, at times, extremely funny," Hala Decl. ¶ 5-8—yet even these latest additions are insufficient to meet Harvey's burden. *See Tamkin*, 193 Cal. App. 4th at 146–47; *Sarver v. Hurt Locker LLC*, 2011 WL

---

[5] *Bernstein v. LaBeouf*, 43 Cal. App. 5th 15, 23 (2019) is inapposite. There, LaBeouf's celebrity could not transmute statements of no importance, directed at a person never involved in any public issue, into issues of public interest. *Id.*

11574477, at *7–8 (C.D. Cal. Oct. 13, 2011); *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 320, 322 (1997); *Aguilar v. Universal City Studios, Inc.*, 174 Cal. App. 3d 384 (1985).

Harvey points to Gadd's description of his interactions with her as ostensible corroborating evidence. But *Gadd's* personal knowledge of Harvey's actual transgressions has no bearing on whether a *reasonable viewer* would somehow understand that the Martha character *is* Harvey. Failing to even engage with Netflix's evidence that the context of the challenged statements defeats her claim, Harvey instead focuses solely on the statement that the Series is a "true story"—irrespective of its actual context, which constitutional jurisprudence requires. It is thus telling that Harvey cites to no authority suggesting that such a statement—whether made in the Series or elsewhere[6]—somehow magically deprives viewers of their ability to discern between fictionalized, dramatic content and statements of fact. That is because it does not. Even in the context of a docudrama claiming to portray real events, viewers are aware "such programs are more fiction than fact." *Partington v. Bugliosi*, 56 F.3d 1147, 1155 (9th Cir. 1995).

Similarly, that certain individuals may have suspected the character Martha was based on Harvey after viewing the Series does not establish that a *reasonable viewer* would do the same. After all, even admissible, reliable evidence of a viewer's actual beliefs is not dispositive and should be discounted when patently unreasonable or unreliable. *Aguilar*, 174 Cal. App. 3d at 391; *Middlebrooks v. Curtis Publ'g Co.*, 413 F.2d 141, 142 (4th Cir. 1969). And here, the evidence submitted by Harvey is either inadmissible,[7] does not support her claims,[8] or is

---

[6] Harvey does not address Netflix's argument that its statements made to Parliament are privileged and thus concedes the issue. *See Reyes v. Wells Fargo Bank*, 2017 WL 11568871, at *4 (C.D. Cal. Aug. 17, 2017).

[7] *See* Netflix's Objections to Plaintiff's Evidence Submitted in Support of Opposition to Anti-SLAPP Motion ("Objections").

[8] In addition to being inadmissible hearsay, Exs. 1-23 of the Harvey Declaration,

5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' REPLY IN FURTHER SUPPORT OF
SPECIAL MOTION TO STRIKE

facially unreliable,[9] given the nature and context of the Series. In the Series, the alleged defamatory statements made in the context of stylistic, cinematic choices reaffirm for the viewer that the Series is not an accurate portrayal of historical fact but a fictionalized, dramatic work—it is the character Donny's fevered account of trauma, self-doubt, and shame. *See, e.g.,* Ep. 1 at 28:38, Ep. 2 at 20:50, Ep. 3 at 14:10, Ep. 7 at 12:24, 28:18. In fact, each episode includes a disclaimer that the Series was fictionalized for dramatic purposes.[10] *See generally* Series; Netflix Decl. ¶ 8. Taking into account the Series' entire context—as the law requires—no reasonable viewer could understand the Series as making actual factual statements about Harvey. *Sarver*, 2011 WL 11574477, at *8; *Mossack Fonseca & Co., S.A. v. Netflix, Inc.*, 2020 WL 8510342, at *4 (C.D. Cal. Dec. 23, 2020).

### 2. The Alleged Defamatory Statements Are Substantially True.

Netflix provided reliable evidence from multiple third parties establishing Harvey (1) sexually and physically assaulted and stalked and harassed Gadd, (2) stalked and harassed other high-profile individuals, and (3) faced legal repercussions for her conduct warranting conviction if prosecuted. *See* Gadd Decl. ¶¶ 16-17, Wray Decl. ¶¶ 8-13, Seymour Decl. ¶¶ 1-10, Oakley Decl. ¶¶ 85-86. Through this

---

which purport to be social media messages sent to Harvey from unidentified third parties, do not establish that reasonable viewers would understand the Series to make factual statements about her. Most do not even mention the Series. Those that do merely inquire about a possible connection to Harvey. Moreover, the messages post-date either Harvey's self-identification or her alleged identification by an "internet sleuth," and thus do not demonstrate anyone identified Harvey from the Series itself. *See, e.g.,* Armstrong Decl., ¶¶ 3-4; Dingwall Decl., ¶¶ 6, 8.

[9] Harvey's personal hairdresser's belief that *she* is Martha because she shares common characteristics with a fictional character is not reasonable. *See* Hala Declaration. It entirely disregards the context of the fictional Series, and given his personal relationship with Harvey, is unreliable. *Aguilar*, 174 Cal. App. 3d at 391.

[10] *Gaprindashvili v. Netflix, Inc.*, 2022 WL 363537, *6 (C.D.Cal. 2022), *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 59 (S.D.N.Y. 2021), and *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918 (7th Cir. 2003) offer Harvey no support. They either have no analysis at all of the disclaimers, were decided on a different standard, and/or involved works that strongly suggested they were portraying the real plaintiff, including by using plaintiff's real name.

evidence, Netflix demonstrated that the gist of the alleged defamation—that Harvey is a dangerous stalker who harassed Gadd and others—is substantially accurate. *See Karimi v. Golden Gate School of Law*, 361 F. Supp. 3d 956, 979 (N.D. Cal. 2019). Aside from her self-serving denials, Harvey has provided ***no*** admissible evidence to controvert the evidence submitted by Netflix, which shows Harvey inflicted trauma on Gadd, in the form of hundreds of violent and explicit emails, hours of terrifying voicemails, and physical and sexual assaults. Gadd Decl. ¶¶ 14-56, Exs. 1-52.[11] The Series' purported exaggerations, such as the severity of the assault, legal consequences, and amount of genital touching are unimportant compared to the actual avalanche of abuse Gadd suffered at Harvey's hands. Such differences are one of degrees not type, and are precisely the type of flexibility the First Amendment requires. *See, e.g.*, *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 514 (1991) (if every inaccuracy constituted the falsity required to prove defamation that would be inconsistent with First Amendment principles); *Lawrence v. Altice USA*, 841 Fed. App'x 273, 275–77 (2d Cir. 2021) (news report that plaintiff arrested for stalking substantially true even though inaccurate as report consistent with plaintiff's history of similar behavior). For constitutional purposes, the gist remains substantially true. *Elliot v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1021 (C.D. Cal. 2022).

And it is not the case that, as Harvey would have it, where a statement addresses criminal conduct, one need not establish falsity.[12] Rather, Harvey was required to show that her established conduct would have a different—*and more positive*—effect on the audience than the alleged defamatory statements. *Jackson v.*

---

[11] Harvey's only "evidence" beyond her declaration is a document of unknown origin that Harvey claims establishes she has "never been convicted of a crime." Harvey Decl. ¶ 20, Ex. 24. Aside from being inadmissible hearsay, the document does not rebut Netflix's evidence showing the alleged defamatory statements are substantially true. Netflix's Objections at 14.

[12] Harvey misapprehends *Burrill v. Nair*, 217 Cal. App. 4th 357 (2013), which actually supports Netflix. *Burrill* stands for the proposition that accusations of criminal conduct are defamatory *only* if proved *false*. *Id.* at 387.

*Mayweather*, 10 Cal. App. 5th 1240, 1262–63 (2017), as modified (Apr. 19, 2017). She comes nowhere close.[13]  Not only is her actual conduct sufficient to have warranted criminal punishments at least as severe as those the Martha character faced, Oakley Decl. ¶¶ 85-86, but much of it is substantially *worse* than that depicted in the Series. Gadd Decl. Exs. 3-41.[14]  Because the truth has an even worse effect than the fictional Martha could have, the alleged defamatory statements are not actionable. *Masson*, 501 U.S. at 517.

### 3. The Alleged Defamatory Statements Are Mere Opinion.

Even accepting Harvey's argument that the Series is a retelling of her relationship with Gadd, the First Amendment protects Gadd's personal descriptions of events in his own life, retold in a fictionalized, dramatic memoir. *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401–02 (1999).  Harvey's argument regarding other cases involving Netflix thus misses the point legally and factually, as none of those cases involved the specific circumstances and context here.[15]

## C. Harvey Does Not Establish Netflix's Actual Malice.

Harvey is a public figure that must establish Netflix acted with actual malice, which requires *clear and convincing* evidence that Netflix intended to defame her or acted with reckless disregard to the possibility the Series would.  *De Havilland*, 21

---

[13] Harvey's repeated claims that the Series depicts Martha "raping" Donny are wholly unsupported.  The ambiguous scene, Ep. 2 at 20:50, connotes the "inappropriate touching" Gadd was subjected to by Harvey. Gadd Decl. ¶ 17.

[14] Harvey asserts that reasonable viewers will identify her as Martha, in part, because she was publicly accused of stalking and harassing Wray, while also arguing that very publicity has been forgotten.  She cannot have it both ways, and her well-known history of stalking and harassment renders her libel-proof.  *See Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 927–28 (C.D. Cal. 1982).

[15] *Fairstein*, 553 F. Supp. 3d at 58 and *Colborn v. Netflix Inc.*, 541 F. Supp. 3d 888, 901 (E.D. Wis. 2021) are inapposite.  Neither involved statements made in the context of a fictionalized work portraying traumatic events from the author's life and both were decided on different legal standards.  Moreover, Colborn's claims were dismissed on summary judgment, in part, because they were premised on nonactionable opinions.  *See Colborn v. Netflix Inc.*, 661 F. Supp. 3d 838, 849 (E.D. Wis. 2023).

Cal. App. 5th at 869. Harvey does not meet this high bar. Harvey's political activities alone, which Harvey concedes included seeking nomination, and being shortlisted, as a candidate for Parliament, Harvey Decl. ¶ 6; Gadd Decl. Ex. 14, make her a general-purpose public figure.[16] *Mosesian v. McClatchy Newspapers*, 233 Cal. App. 3d 1685, 1696 (1991). She also easily qualifies as a limited-purpose public figure given her publicly disclosed stalking and harassment. Putnam Decl. Ex. M.

Harvey claims that time has somehow extinguished her limited public figure status. That is not the law in this, or any other, Circuit.[17] *Chapman v. J. Concepts, Inc.*, 528 F. Supp. 2d 1081, 1094 (D. Haw. 2007), aff'd on other grounds, 401 F. App'x 243 (9th Cir. 2010) (time does not alter public figure status); *Mosesian*, 233 Cal. App. 3d at 1703 (public figure status does not stop with publicity); *St. v. Nat'l Broad. Co.*, 645 F.2d 1227, 1235 (6th Cir. 1981) (person remains public figure indefinitely for purposes of later commentary on relevant controversy). And the allegations against Harvey concerned more than her and her victims. The very reason the allegations generated media attention was that the victims were the First Minister of Scotland and a member of Parliament's family, whose harassment and stalking concern the citizenry more broadly and the political process. Harvey also plainly attempted to influence public opinion by denying she was a stalker, offering her own version of the events, and threatening legal action. Putnam Decl. Ex. M. As such, the allegedly defamatory statements directly contradict that public denial, which her own authority states is all that is required to show they are germane to the public controversy. *See Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1578

---

[16] Harvey provides no authority for her assertion that the functional details of her candidacy are legally relevant, and Netflix is aware of none.

[17] *Briscoe v. Reader's Digest Association Inc.*, 4 Cal.3d 529 (1971), *Rutt v. Bethlehems' Globe Pub. Co.*, 335 Pa.Super 163 (Pa. 1984), and *MacDonald v. Brodkorb*, 939 N.W.2d 468 (Minn. Ct. of App. 2020) do not establish otherwise. *Briscoe* was overruled in *Gates v. Discovery Comm'ns, Inc.*, 34 Cal. 4th 679 (2004) and *Rutt* and *MacDonald* carry no weight as they are state court decisions from foreign jurisdictions made on different standards.

(2005). She is certainly a public figure.

As a public figure, Harvey had to prove Netflix's actual malice by clear and convincing evidence. *De Havilland*, 21 Cal. App. 5th at 869. Yet, the undisputed evidence demonstrates Netflix did not intend to defame Harvey or act with reckless disregard. Netflix never mentioned Harvey, Netflix Decl. ¶ 10, included a disclaimer in each episode, *id.* ¶ 8, sought to disguise the inspiration for Gadd's work, Compl. ¶¶ 34, 77, and understood the Series was fictionalized, Netflix Decl. ¶ 7. Netflix did not intend or have reason to believe the Series would defame Harvey. *Id.* ¶ 9.

Contrary to Harvey's claim, Netflix's purported failure to retract the Series is legally irrelevant to actual malice. *See D.A.R.E Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270, 1287 (C.D. Cal. 2000), aff'd sub nom. *D.A.R.E. Am. v. Rolling Stone Mag.*, 270 F.3d 793 (9th Cir. 2001).[18] Even were that not true, Harvey presents no *direct evidence* that Netflix "made 'Martha' more like Harvey," as she baselessly claims. "Actual malice cannot be implied and must be proven by direct evidence." *Beilenson*, 44 Cal. App. 4th 944, 952 (1996). Harvey nonetheless asks this Court to disregard actual evidence of Netflix's intent and instead make improper and unsupported inferential leaps to conclude Netflix made changes to the Martha character to defame Harvey. Netflix did not. The Court should not make such inferences. And Harvey has obviously not established Netflix's actual malice. *Id.*[19]

### D. Discovery Has Not Been Requested, Nor Is It Warranted.

Harvey's opposition vaguely references discovery. Harvey has not propounded any discovery on Netflix nor made the needed motion to request such discovery. She thus has waived any purported need for discovery before the

---

[18] Harvey also asserts that Netflix's malice is shown by a *Sunday Times* article discussing Netflix purported failure to "follow industry custom." That article is hearsay and improper legal opinion; it must be disregarded by the Court. *See* Netflix's Objections at 5-6.

[19] Harvey does not dispute her remaining claims must fall if her defamation claim is struck, conceding the issue. *Reyes*, 2017 WL 11568871, at *4. They also independently fail for the reasons set forth in Netflix's Motion to Dismiss briefing.

resolution of this Motion. In any event, discovery would not have been warranted here. The evidence already submitted demonstrates that Harvey cannot establish Netflix made a provably false statement of fact about her. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846–47 (9th Cir. 2001) (discovery only warranted if evidence necessary to opposition). The Court thus can (and should) decide the Motion on the evidence before it. *The Garment Workers Ctr. v. Super. Ct.*, 117 Cal. App. 4th 1156, 1162 (2004).

### E. Harvey's Request for Attorneys' Fees Should Be Denied.

There is no basis to find that Netflix's motion is "***totally and completely without merit***" or brought for the "***sole purpose*** of harassing" Harvey as required to grant her request for fees. Cal. Code Civ. Proc. § 128.5(b)(2). Netflix provided substantial evidence to support its Motion and authority contradicting Harvey's assertion that her claims are automatically established because the challenged statements concern criminal activities. *See* Sections II.A-C *supra*. And Harvey acknowledges that Netflix's evidence bears on whether the challenged statements are substantially true. *See* Opp. (ECF 41), 11-12. As such, Netflix's motion has plenty merit. There is no basis to grant Harvey's request for fees.

## III. CONCLUSION.

Inspired by Gadd's struggles with past abuse, the Series is a dramatic work. Its characters, scenes, and dialogue convey Gadd's story in an imaginative style that has garnered critical acclaim. The Series is not a documentary representing literally true details and imagery. The anti-SLAPP statute protects Netflix's distribution of the Series and bars Harvey's baseless attacks on Netflix's exercise of free speech. For the foregoing reasons, Netflix requests the Court grant its Motion.

Dated: September 3, 2024

Respectfully submitted,
LATHAM & WATKINS LLP

By  /s/ Marvin S. Putnam
    Marvin S. Putnam
    Attorneys for Defendants

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Netflix, Inc., and Netflix Worldwide Entertainment, LLC, certifies that this brief contains 10 pages, which complies with the page limit for reply briefs set by the Court's standing order.

Dated: September 3, 2024      By: */s/ Marvin S. Putnam*
                                  Marvin S. Putnam