LATHAM & WATKINS LLP
  Marvin S. Putnam (Bar No. 212839)
    *marvin.putnam@lw.com*
  Laura R. Washington (Bar No. 266775)
    *laura.washington@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Telephone: +1.424.653.5500
Facsimile: +1.424.653.5501

*Attorneys for Defendants*
Netflix, Inc., and
Netflix Worldwide Entertainment, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIONA HARVEY, | Case No. 2:24-cv-04744-RGK-AJR |
| Plaintiff, | **DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT** |
| v. | |
| NETFLIX, INC., and NETFLIX WORLDWIDE ENTERTAINMENT, LLC, | Date: September 16, 2024<br>Time: 9:00 a.m.<br>Place: Courtroom 850 |
| Defendants. | Hon. R. Gary Klausner |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS COMPLAINT

## I. INTRODUCTION.

Harvey's opposition is an exercise in avoidance, obfuscation, and distortion. Replete with hyperbolic and inflammatory rhetoric,[1] it tellingly lacks any actual substance. In fact, Harvey does not even bother to respond to many of Netflix's arguments and has thus waived any response. She entirely ignores Netflix's on-point authority, relies on inapposite caselaw, and attempts to resuscitate her defective pleading with non-judicially noticeable "facts" contained nowhere in her Complaint.[2] Harvey cannot now rely on "facts" outside her Complaint to introduce allegations she never pled. Netflix's motion to dismiss must be determined on the actual allegations in Harvey's Complaint and the Series,[3] which is incorporated by reference. Both plainly demonstrate that Harvey's claims are insufficiently pled.

Harvey's Complaint concedes that the Series contains dramatic scenes and content created to make the story emotionally compelling, and the portrayal of the Martha character is entirely "fabricated." In other words, Harvey acknowledges it is a fictional story. Despite this, she remarkably alleges that viewers would know the Martha character is her because of one tweet, one episode where the *fictional narrator* Donny explains this is his "true story," and one reference to a similar line on a website. Given the fictional Series' context, including disclaimers and cinematic elements, that is hardly sufficient to state any claim against Netflix—and certainly not one for defamation. The Series is plainly not *of and concerning* Harvey. And contrary to Harvey's misplaced assertions, the passage of time did not

---

[1] Harvey's opposition takes many liberties in describing the Series. As just one example, she repeatedly claims the Series depicts the Martha character "raping" the Donny character and asserts she has thus been called a rapist. This scene could certainly be interpreted differently. *See* Ep. 2 at 20:50. Harvey's liberties only reinforce that this Court must watch the Series, as her allegations cannot be accepted as true if they are contradicted by the Series. *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).

[2] *See* Defendants' Opposition to Plaintiff's Request for Judicial Notice in Opposition to Defendants' Motion to Dismiss requesting the Court deny judicial notice.

[3] Capitalized terms not defined herein have meaning ascribed to them in Netflix's Motion to Dismiss.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS COMPLAINT

somehow restore her reputation such that she is no longer libel-proof. Nor has the passage of time converted her from a public figure to a private one. She simply fails to sufficiently allege a defamation claim.

Harvey's other claims are mere surplusage and should be dismissed outright. They also independently fail. Her IIED claim fails because the alleged conduct is not outrageous. And she cannot simply repackage her defamation claim as negligence. She must actually allege the elements of a negligence claim. She entirely fails to do so. Last, her right of publicity claims also fail because the Series is an expressive work protected by the First Amendment. And Harvey's inapposite authority cannot change that she failed to plausibly allege that Netflix somehow used her identity to its advantage commercially or otherwise.

All of Harvey's claims thus should be dismissed for these pleading deficiencies. That said, Netflix's concurrently filed Motion to Strike seeks to strike the Complaint in its entirety because it is barred by the anti-SLAPP statute. For judicial economy, Netflix again respectfully requests that the Court first determine the merits of that Motion to Strike, turning to Netflix's Motion to Dismiss only as necessary to determine the sufficiency of any claim that might somehow remain.

## II. HARVEY'S CLAIMS SHOULD BE DISMISSED.

### A. Harvey's Defamation Claim Fails.

#### 1. Harvey Fails to Allege a Provably False Statement of Fact.

Harvey's opposition asserts the unremarkable position that a fictional work can be defamatory. Opp. at 5-6.[4] That is legally true, but substantively misses the mark. Harvey fails to meaningfully address that each alleged defamatory statement is presented in the context of a fictional Series with cinematic and dramatic elements that are more fantastical than realistic. And thus, she fails to adequately allege that

---

[4] Harvey's attempt to rely on statements to Parliament is barred because they are absolutely privileged under California Civil Code section 47(b). Harvey does not respond to that argument (*see* Mot. at 9 n.4; *see also generally* Opp.) and therefore waives it. *Yagman v. Wunderlich*, 2021 WL 6804219, at *2 (C.D. Cal. Oct. 4, 2021).

3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS COMPLAINT

the Series makes any provably false statements of fact "of and concerning" *her*. The broad similarities Harvey alleges exist between her and the Martha character are insufficient. *See* Mot. at 7-8.[5] So too are her allegations that she received hate mail and death threats, which in reality often simply asked whether she might be the inspiration for the Martha character, Compl. ¶ 37; Opp. at 5, because she does not allege they were the understandings of *reasonable* viewers. Her attempts to rely on the Series' fictional narrator relaying "this is a true story" and a website's use of this phrase in an article (Opp. at 5) are likewise insufficient, as she entirely ignores that the *fictional character* Donny relayed those words, and incorrectly assumes reasonable viewers cannot use other cues to properly consider the content presented in a fictional series. Yet longstanding legal precedent—and Harvey's own authority—recognizes they can. *See, e.g., Partington v. Bugliosi*, 56 F.3d 1147, 1155 (9th Cir. 1995) (Opp. at 6). Her intentional dismissal of the Series' fictional context is highlighted by her characterization of Martha as doing things to *Gadd*, which ignores that Gadd is merely an actor playing the fictional character *Donny*; Martha is doing things to Donny, not Gadd. *See* Opp. at 2.

She also attempts to downplay the legal significance of the Series' disclaimers by arguing that the user has to click "Watch Credits" to view them. That allegation is not in her Complaint, and she does not otherwise ask the Court to take judicial notice of it. Opp. at 6-7. It must be disregarded. Regardless, she cites no authority that such a transition would be relevant. *Id.* Nor does she cite any authority for her assertion that the disclaimers are defective because they appear "halfway through the credits."[6] Opp. at 6-7. In fact, Harvey does not actually challenge the wording

---

[5] The Opposition (at 4-5) also mischaracterizes the allegations in the Complaint, which do not allege an "identical personal history" and messages. Compl. ¶¶ 40-41.

[6] Harvey's reliance on *Gaprindashvili v. Netflix, Inc.*, 2022 WL 363537, *6 (C.D. Cal. Jan. 27, 2022), *Fairstein v. Netflix, Inc.*, 553 F.Supp.3d 48, 59 (S.D.N.Y. 2021), and *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918 (7th Cir. 2003) is unavailing, as they either have no analysis of the disclaimers and/or involved works that strongly suggested they were portraying the real plaintiff, including by using plaintiff's real name.

of the disclaimers or their appearance in each episode. Given this fatal failure, among others, she does not sufficiently allege that a reasonable viewer could somehow believe the Series makes any provable false statement about her.

### 2. The Alleged Defamatory Statements Are Not Actionable.

The alleged statements are also non-actionable opinion. Harvey completely ignores Netflix's authority demonstrating that the First Amendment shields Gadd's personal descriptions of events in his own life, retold in a fictionalized, dramatic memoir. *See, e.g.*, *Partington*, 56 F.3d at 1154; *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401-03 (1999); *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995). The cases Harvey cites are inapposite. Opp. at 7-8. They do not involve statements made in the context of a dramatic, fictionalized work portraying traumatic events from an artist's life.

### 3. Harvey Is Libel-Proof.

Harvey does not dispute that the public record contains accusations of her reprehensible conduct. Putnam Decl., Exs. B, C, G.[7] While she states she never committed a crime, all that is required is "anti-social or criminal behavior." *Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 928 (C.D. Cal. 1982).[8] Moreover, it is irrelevant that the articles detailing her behavior were published more than twenty years ago in Scotland because the challenged communication relates to her past conduct. *See, e.g.*, *Lamb v. Rizzo*, 391 F.3d 1133, 1139 (10th Cir. 2004) (communication related to past conduct and does not matter it happened 31 years ago). Her suggestion that no one has seen the articles in 20 years is belied by her own allegations that they were referenced in the Series. Compl. ¶ 41. This claim is also particularly dubious given the articles' current public availability. Putnam Decl.

---

[7] Harvey's assertion that these judicially noticeable facts cannot be considered is wrong. *See* Request for Judicial Notice ("RJN") in Support of Motion to Dismiss ("MTD"); Reply in Support of RJN in Support of MTD.

[8] *Cardillo v. Doubleday & Co., Inc.*, 518 F.2d 638, 639 (2d Cir. 1975) (Opp. at 8) does not state that one *must* be a criminal to qualify as libel-proof.

5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS COMPLAINT

¶¶ 4, 5, 9. And the fact that one article uses her maiden name ignores that another discusses that same conduct and uses her current name. Putnam Decl., Exs. B, C. Harvey provides no authority for the fantastical proposition that her failed attempt to hide her reputation through a name change somehow affects the applicability of the libel-proof doctrine to her defamation claim.

### 4. Harvey Failed to Allege Netflix Acted with Actual Malice.

Contrary to Harvey's assertion, she has been, is, and remains a public figure. Again, the passage of time is irrelevant. *See, e.g.*, *St. v. Nat'l Broad. Co.*, 645 F.2d 1227, 1235 (6th Cir. 1981) (once person becomes public figure in connection with particular controversy, she remains one for purposes of later commentary on that controversy).[9] Further, Harvey was not merely a passive participant—she publicly denied she was a stalker and attempted to influence public opinion on the controversy. Putnam Decl., Ex. B.[10] And Harvey's stalking had ramifications on non-participants, including Wray's disabled child and Scottish citizenry given her targets were a member of Parliament and First Minister of Scotland. Her prior denial of stalking directly contradicts the alleged defamatory statements, which is all that is required to show they are germane to the public controversy. *See Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1578 (2005).

Harvey is thus a public figure and required to allege actual malice. She plainly did not. Her unrelated allegations concerning statements to Parliament, Gadd's purported unreliability, and the use of "true story" do not constitute allegations of actual malice. Again, Harvey cannot rely on the statements to Parliament because they are absolutely privileged under California Civil Code section 47(b), and she waived the issue. *See supra* at 4 n. 4. In any event, the Supreme Court has made

---

[9] Harvey's reliance on *Briscoe v. Reader's Digest Association Inc.*, 4 Cal.3d 529 (1971) is misplaced; it was overruled by *Gates v. Discovery Comm'ns, Inc.*, 34 Cal. 4th 679 (2004).

[10] *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157 (1979) is therefore inapposite because the plaintiff there was merely a passive participant.

clear that "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).[11] And Harvey's assertion that "Netflix took Gadd's story and decided to turn it into a 'true story,'" Opp. at 12, is alleged nowhere in the Complaint. She cannot now attempt to rewrite her Complaint through her opposition to belatedly attempt to manufacture non-existent allegations of actual malice.

### B. Harvey's Remaining Claims Are Duplicative.

Harvey has no substantive response to Netflix's assertion that every allegation in her Complaint is connected to and made in support of her defamation claim. Nor does she address or attempt to distinguish any of Netflix's authority. She concedes IIED claims *can be* duplicative. She then asserts, without any authority, that hers is not because it references "false, unconfirmed and explosive allegations," which are, of course, the same allegations in her duplicative defamation claim. Opp. at 12. Next, she attempts to distinguish her negligence claim by asserting it is based on Netflix's failure to conceal her identity, *id.*, but identification is a key element of defamation and her Complaint alleges Netflix breached a duty of care "by lying repeatedly about Harvey in *Baby Reindeer*," after which she then recites the alleged defamatory statements. Compl. ¶ 106.[12] And her right of publicity claim, arises from the same "nucleus of facts." *Baez v. Pension Consulting All., Inc.*, 2017 WL 9500979, at *5 (C.D. Cal. July 20, 2017).[13] Harvey's fabricated distinctions between these claims and her defamation claim are meritless.

---

[11] *Khawar v. Globe Intern. Inc.*, 19 Cal.4th 254, 275 (1998) is inapposite because Harvey does not allege "republication of a third party's defamatory falsehoods." *Id.*
[12] Harvey's reliance on *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1037 n.9 (9th Cir. 1991) is unavailing because plaintiff there did not bring a defamation claim.
[13] *Sears v. Russell Road Food and Beverage LLC* is inapposite because it applies Nevada law. 460 F. Supp. 3d 1065, 1072 (D. Nev. 2020).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS COMPLAINT

### C.     Harvey's IIED Claim Independently Fails.

Harvey fails to sufficiently allege outrageous conduct. Her opposition makes no attempt to distinguish *McClintock v. West*, 219 Cal. App. 4th 540, 556 (2013), where the court held "accusing a person of stalking" and "stating that one is afraid of [her]" is not "extreme and outrageous" conduct. *Id.* Nor does she respond to Netflix's argument that the disclaimers reinforce the *reasonableness* of Netflix's conduct. She instead relies solely on *Belen v. Ryan Seacrest Prods., LLC*, which involved the "outrageous" conduct of a defendant displaying someone's breasts on public television while she was in a private dressing room, 65 Cal. App. 5th 1145, 1164 (2021), and *Ely v. Wal\*Mart, Inc.*, where plaintiff alleged defendant contacted her new employer and lied about her. 875 F. Supp. 1422, 1424 (C.D. Cal. 1995); Opp. at 13. Neither case involves accusations of stalking nor expressing fear. Regardless, Harvey does not even specifically allege what constitutes the supposedly outrageous conduct here, which is fatal. *See Lias v. Cnty. of Alameda, Off. of Cnty. Couns.*, 2005 WL 8177657, at *4 (N.D. Cal. June 8, 2005). Her opposition cites to alleged statements to Parliament (which Harvey cannot rely on, *see supra* at 4 n. 4) and to Paragraphs 91 and 109 of her Complaint, which consist of the alleged defamatory statements in the Series regarding *stalking* and the Series' viewership, as the purported "outrageous" conduct. Yet, these are precisely the types of allegations that *McClintock* establishes are not "outrageous." 219 Cal. App. 4th at 556.

Additionally, Harvey also fails to plausibly allege that Netflix's supposedly outrageous conduct was the actual and proximate cause of her emotional distress. Her assertion that certain viewers and the press may have thought she might be Martha and thus she was afraid to go outside or read the news, (Opp. at 13-14), is contradicted by the fact that she decided to subsequently leave her home and become the news, by sitting down with Piers Morgan for an interview where she *affirmatively*

8

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS COMPLAINT

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

*identified herself as Martha*, which has since been viewed *14 million* times. Putnam Decl., Ex. A. Harvey offers no explanation for her actions because she cannot.

### D. Harvey's Negligence and Gross Negligence Claims Also Fail.

Harvey's effort to repackage her defamation claim as a negligence claim violates established legal principles. Other than citing misleading dicta, Harvey has no response to Netflix's authority establishing that streamers owe no duty to confirm or ensure the accuracy of works they stream separate from the duty not to defame—which is of course encompassed by her infirm defamation claim. Mot. at 13-14; *Schering Corp. v. First Databank Inc.*, 2007 WL 1068206, at *7 (N.D. Cal. Apr. 10, 2007). Harvey cites only one case, *Winter*, to ostensibly support her negligence theory, yet the Ninth Circuit there explicitly foreclosed Harvey's theory in *dismissing* plaintiffs' negligence claim. 938 F.2d at 1037 ("Were we tempted to create this duty, the gentle tug of the First Amendment and the values embodied therein would remind us of the social costs."). Harvey misrepresents the court's *dicta* in which the court simply suggested a defamation claim would have been stronger. 938 F.2d at 1037 n.9.[14] She also fails to provide any response to Netflix's authority establishing that California courts have declined to find a duty for claims implicating expression, Mot. at 14, and does not dispute that the Series is an expressive work. Aside from merely citing to allegations in her Complaint, she likewise does not substantively respond to Netflix's arguments that she failed to adequately allege breach given the reasonable viewer standard nor proximate cause given her interview with Piers Morgan and waives any contrary argument.[15]

---

[14] Harvey's reliance on *Bindrim v. Mitchell*, 92 Cal. App. 3d 61, 73 (1979), and *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 901 (9th Cir. 1992), Opp. at 15, only confirms her claim fails—these cases each address *defamation*, not negligence. *Id.*

[15] Harvey's citation to *Belen*, 65 Cal. App. 5th at 1163 is irrelevant given it does not address breach or causation.

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS COMPLAINT

### E. Harvey's Right of Publicity Claims Also Fail.

Harvey's right of publicity claim is barred because the Series is an expressive work subject to First Amendment protection. *See Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002). Harvey does not dispute that the Series is an expressive work and therefore waives that argument. *Yagman*, 2021 WL 6804219, at *2. Harvey instead relies entirely on *Time, Inc. v. Hill*, 385 U.S. 374 (1967) for the proposition that "Netflix's calculated falsehood with respect to Harvey's identity to gain more subscribers does not enjoy first amendment immunity." Opp. at 17. Contrary to Harvey's representation to the Court, *id.*, however, *Time, Inc.* is a case about **New York's** right of ***privacy*** statute and thus has no relevance here. While Harvey cites *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) and *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387 (2001), for the proposition that the First Amendment's bar is not absolute, Opp. at 17, she does not argue that those cases are analogous. Indeed, they are not. Each concerns commercial products, *id.*, which is very different than a streaming series employing creative elements that contributes to the public interest and addresses issues of public concern. Mot. at 3-5, 7-9.

Harvey's claims also fail for two additional and independent reasons. *First*, Harvey does not plausibly allege that Netflix used Harvey's identity. Her attempt to distinguish *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (1997) by asserting "the character in the work of fiction was plainly not the plaintiff," Opp. at 17, is circular—the Series is also a fictionalized work and Harvey plainly is not Martha.[16] *Second*, Harvey's only response to Netflix's argument— that she failed to adequately allege that the appropriation of her name or identity was

---

[16] Harvey's authority is inapposite. It involves unique and immediately recognizable features as opposed to the general characteristics that Harvey references (age, nationality, profession, accent) and the use of a phrase that she does not allege *anyone* would have immediately recognized. *See Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 827 (9th Cir. 1974); *Kirby v. Sega of America, Inc.*, 144 Cal. App. 4th 47 (2006).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS COMPLAINT

somehow to Netflix's advantage commercially or otherwise—is to cite Paragraph 1 of her Complaint, which contains no such allegation.[17]

### F. Harvey Failed to Allege Punitive Damages.

Harvey does not dispute that she fails to adequately allege punitive damages, Opp. at 18, and she thus waives that argument. *Yagman*, 2021 WL 6804219, at *2. Her only argument, that Netflix should have filed a motion to strike instead of a motion to dismiss, is wrong and contradicts this Court's recent guidance. *Gomez v. Cnty. of Los Angeles*, 2023 WL 3431279, at *1 n.1 (C.D. Cal. Mar. 17, 2023) (Klausner, J.) (Defendant "moves to strike Plaintiff's prayer for punitive damages because of insufficient factual allegations under [Rule] 12(f).  'The proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6), not Rule 12(f).'") (citation omitted).  Netflix's motion is proper, Harvey waived any other argument, and dismissal of Harvey's demand for punitive damages is warranted.

## III. CONCLUSION.

For the foregoing reasons and those in the Motion, Netflix respectfully requests that the Court dismiss all of Harvey's claims for failure to state a claim.

Dated:  September 3, 2024         Respectfully submitted,

LATHAM & WATKINS LLP
Marvin S. Putnam

By  /s/ *Marvin S. Putnam*
Marvin S. Putnam
Attorneys for Defendants
Netflix, Inc., and Netflix Worldwide Entertainment, LLC

---

[17] Her claim also fails because she fails to allege any current value to her identity.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Netflix, Inc., and Netflix Worldwide Entertainment, LLC, certifies that this brief contains 10 pages, which complies with the page limit for reply briefs set by the Court's standing order.

Dated: September 3, 2024                    By: */s/ Marvin S. Putnam*
                                                  Marvin S. Putnam