1  LATHAM & WATKINS LLP
      Marvin S. Putnam (Bar No. 212839)
2       *marvin.putnam@lw.com*
      Laura R. Washington (Bar No. 266775)
3       *laura.washington@lw.com*
4  10250 Constellation Blvd., Suite 1100
   Los Angeles, California 90067
5  Telephone:  +1.424.653.5500
   Facsimile:  +1.424.653.5501
6
7  *Attorneys for Defendants*
   Netflix, Inc., and
8  Netflix Worldwide Entertainment, LLC

9

10              UNITED STATES DISTRICT COURT

              CENTRAL DISTRICT OF CALIFORNIA
11

12

13  FIONA HARVEY,                    | Case No. 2:24-cv-04744-RGK-AJR

                      Plaintiff,     | **DEFENDANTS' EVIDENTIARY
14                                   | OBJECTIONS TO EVIDENCE
                                     | OFFERED BY PLAINTIFF IN
15        v.                         | SUPPORT OF HER OPPOSITION TO
                                     | DEFENDANTS' SPECIAL MOTION
16  NETFLIX, INC., and NETFLIX       | TO STRIKE
   WORLDWIDE ENTERTAINMENT,
17  LLC,                             | Date:       September 16, 2024
                                     | Time:       9:00 a.m.
                      Defendants.    | Place:      Courtroom 850
18
19                                     Hon. R. Gary Klausner

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

## I.    INTRODUCTION.

In opposing defendants Netflix, Inc. and Netflix Worldwide Entertainment, LLC's (collectively, "Netflix") Special Motion to Strike (the "Motion"), plaintiff Fiona Harvey ("Harvey") cannot rely on declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory. Yet, in support of her Opposition to Defendants' Special Motion to Strike (the "Opposition"), Harvey proffered declarations and other evidence that are fundamentally flawed and replete with hearsay, lack of foundation, speculative assertions, improper legal conclusions, and irrelevant information. Such deficiencies render most of Harvey's proffered evidence unreliable, inadmissible, and improper. Netflix therefore submits these evidentiary objections to Harvey's improper evidence.

## II.    LEGAL STANDARD.

For purposes of an anti-SLAPP motion, courts consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Pro. § 425.16, subd. (b)(2). Courts may also consider declarations supporting or opposing an anti-SLAPP motion so long as they are based on personal knowledge and executed under penalty of perjury. *Anheuser-Busch Cos., Ltd. Liab. Co. v. Clark*, No. 2:13-cv-00415-TLN-CKD, 2017 U.S. Dist. LEXIS 42680, at *9 (E.D. Cal. Mar. 23, 2017) (collecting cases). "Declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 26 (2007); *see Tuchscher Dev. Enterprises, Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1238 (Cal. Ct. App. 4th Dist. 2003) (rejecting a declaration "supported only by information and belief or his mere understanding of events").

Harvey may only offer admissible evidence to support her claims. However, for the various reasons listed below, the declarations and numerous attached exhibits

2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

filed by Harvey in support of her Opposition are not admissible and consequently, the Court should not consider these documents.

## III.   OBJECTIONS.

### A.   Levenson Declaration and Attached Exhibits

#### 1.   Levenson Declaration

The Levenson Declaration is objectionable on several grounds.

Paragraph 5 contains a quote by Netflix's Senior Director, Public Policy Netflix, Mr. Benjamin King, from a letter to Parliament.  This statement is inadmissible as statements before Parliament are absolutely privileged and unactionable. *See Scott v. McDonnell Douglas Corp.*, 37 Cal. App. 3d 277, 288, 293 (1974); *Pettitt v. Levy*, 28 Cal.App.3d 484, 488 (1972).  Moreover, it is also inadmissible hearsay.  *See* Fed. R. Evid. §§ 801, 802.

Paragraphs 5 and 10 are irrelevant.  Under Federal Rule of Evidence 401, evidence is only relevant if it "(a) has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action." Fed. R. Evid. § 401.  Neither prong is satisfied as to either of these paragraphs.  In paragraph 5, the statement referencing "the person on whom the show is based" does not make any fact more probable, let alone one of consequence, particularly given that it does not even name Harvey.  The same can be said of paragraph 10, which discusses what screen Mr. Levenson saw after watching the Series on Netflix's platform and includes a similarly irrelevant screenshot.

Mr. Levenson also lacks personal knowledge sufficient to make paragraph 10 admissible evidence.  A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. § 602.  Mr. Levenson has made no showing that he has personal knowledge of other viewers' experiences with the Netflix platform to draw a conclusion with respect to other "viewer[s]."  This is particularly the case when Mr.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

Levenson concludes that "no disclaimer is seen by the viewer" and that "the disclaimer is never seen," without providing any basis for how he is aware of other viewers' experiences on the platform.  As such, this paragraph is improperly speculative, due to Mr. Levenson's lack of personal knowledge.

### 2. **Exhibit 1, Hearing Transcript**

Exhibit 1 is an entire transcript of statements before Parliament.  As mentioned above, such statements are absolutely privileged and unactionable.  *See Scott v. McDonnell Douglas* Corp., 37 Cal. App. 3d 277, 288, 293 (1974); *Pettitt v. Levy*, 28 Cal.App.3d 484, 488 (1972).

Similarly, Exhibit 1 is wholly irrelevant to Netflix's Anti-SLAPP Motion to Strike.  Although the reasonable belief of a viewer when watching the Series, and whether a reasonable viewer would understand the Series to be about Harvey, are both relevant issues, Exhibit 1 does not mention Harvey's name once.  To the extent Harvey argues that she is implicitly referenced in Exhibit 1, no reasonable person would understand Exhibit 1's vague references to the real-life inspirations of the characters in the Series to be referring to Harvey.  Thus, Exhibit 1 cannot be relevant to any issues before the Court.

Exhibit 1 also contains inadmissible hearsay.  Harvey cannot proffer out-of-court statements of Mr. King, Mr. Nicholson, and others at a May 8, 2024 hearing to prove the truth of what they state. Fed. R. Evid. §§ 801, 802.  Indeed, the transcript is entirely made up of out of court statements.  To the extent Harvey attempts to use these statements for the truth they assert, such as that individuals have identified certain characters from the Series, these statements constitute classic examples of inadmissible hearsay evidence.

### 3. **Exhibit 2, Tudum Article**

Exhibit 2 is irrelevant and inadmissible hearsay.   Exhibit 2 never mentions Harvey and no reasonable viewer of the Series would understand any statement in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

1    this article to concern or refer to her.  As a result, it is not an identifiable statement

2    of fact about Harvey and irrelevant.[1]

3                        4.    **Exhibit 5,** *Sunday Times* **Article**

4            Exhibit 5 is irrelevant, speculative, and inadmissible hearsay.  First, with

5    respect to relevance, there is no reason why an author at the *Sunday Times*, in this

6    case Ms. Rosamund Urwin, and her article about the "Baby Reindeer scandal" and

7    "true story TV" would have any relevance to the instant anti-SLAPP Motion to

8    Strike, where the relevant inquiry is what reasonable viewers believe when watching

9    the show.  Exhibit 5 also discusses other creative projects by Netflix besides the

10   Series, which plainly have no relevance here.

11           Relatedly, Exhibit 5 is also speculative and lacks proper foundation, with Ms.

12   Urwin lacking personal knowledge.  Ms. Urwin does not explain how she came to

13   learn any of the facts referenced in Exhibit 5 as to the Series; Ms. Urwin does not

14   even confirm whether she watched the Series beyond one episode.  Absent such

15   information, Exhibit 5 is improper on this basis as well.

16           Exhibit 5 also contains improper lay opinion.  Ms. Urwin has not been

17   qualified as an expert witness, but she posits what the impact of the Series will be

18   on the future of television.  *See*, *e.g.*, Levenson Decl. Ex. 5 ("Some are concerned

19   that the fallout will make it harder in future to make dramas based on real events.").

20   Neither Mr. Levenson nor Ms. Urwin provides any basis for how this conclusion is

21   based on their reasonable perception.  Ms. Urwin's article also proffers improper lay

22   opinions about what constitutes industry custom, and suggests that Netflix violated

23   this unsubstantiated custom.  *See*, *e.g.*, *id.* at 8 ("No one in the industry wants to see

24   the death of dramas"); *id.* at 7 (stating that "[o]rdinarily, TV production companies

25   work closely with broadcasters' editorial policy, compliance and legal teams").  Ms.

---

26

27   [1] Exhibit 2 should not be incorporated by reference because a document must be
     relevant to be incorporated by reference. *See Coto Settlement v. Eisenberg*, 593 F.3d

28   1031, 1038 (9th Cir. 2010) (holding that for a document to be incorporated by
     reference "there [must be] no disputed issues as to the document's relevance").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

Urwin has not been proffered as an expert and no foundation has been established to render her lay opinion admissible, nor could it as she relies on inadmissible hearsay and unnamed declarants for these improper opinions. *See id.* (sourcing her opinion from "a TV producer who recently made a series for the BBC"); Fed. R. Evid. § 701. This Court should not rely on Ms. Urwin's improper proffers.

Finally, Exhibit 5 also contains inadmissible hearsay. Harvey cannot proffer out-of-court statements of a *Sunday Times* article published on June 16, 2024 hearing to prove the truth of the matter asserted. *See* Fed. R. Evid. § 801. Exhibit 5 also contains layers of double hearsay, as the Exhibit also quotes, discusses, and is based on the out-of-court statements of others, including her statements regarding industry custom. It includes multiple statements based on unnamed sources: "[s]ources in the TV industry have told The Sunday Times that this line was a request from Netflix, and that Gadd expressed concerns about presenting it as such (both Netflix and Gadd's representatives did not respond to requests for comment)," Exhibit 5 at 2; that "TV executives react[ed] with bafflement – and sometimes horror," *id.*; and "[s]ome are concerned about the fallout," *id.* The article is a classic example of double-hearsay with statements made outside of court by an out of court declarant (Ms. Urwin) quoting purported out-of-court statements from unnamed sources.

### 5. Exhibit 6, Screenshot Excerpts from Gadd's eBook

Exhibit 6 is another classic example of inadmissible hearsay. Fed. R. Evid. §§ 801, 802. The Exhibit is entirely made of statements from an out of court declarant (Gadd).

Exhibit 6 also is not properly authenticated. Under the Federal Rules of Evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. § 901. No such evidence has been provided. Most noticeably, Mr. Levenson does not include a proof of purchase of the ebook via Mr. Gadd's website. Such low-quality screenshots

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

1  purportedly of Gadd's play, absent any other information, cannot be provably

2  authentic.

3      Lastly, these purported screenshots of Gadd's book are irrelevant.  Fed. R.

4  Evid. § 401.  There is no reason why Gadd's play, which is not the creative work at

5  issue, would have any bearing on the instant case, which pertains to reasonable

6  viewers' reactions of the Series as produced.  How Gadd portrayed the character of

7  "Martha" in the past does not demonstrate anything about what Netflix should or

8  should not have known, nor does it influence how reasonable viewers understand

9  the Series.

10          6.    **Exhibit 9, Netflix 10-K Form**

11      Exhibit 9, Netflix's 2024 10-K, is plainly irrelevant.  To the extent Harvey

12  wishes to argue that Exhibit 9 is relevant to Netflix's intent to earn profit via the

13  Series, there is no such conclusion one could draw from a form Netflix is obligated

14  by law to prepare.  Moreover, there is no mention of the Series anywhere in the

15  exhibit and there is no indication the reference to "compelling content" is referring

16  to the Series, so Harvey's attempted use of this exhibit is entirely misguided and

17  irrelevant.  Consequently, there is no fact at issue in this case where Netflix's 2024

18  10-K form would be relevant.  For this same reason, Exhibit 9 is not suitable for

19  incorporation by reference.  *See Coto Settlement*, 593 F.3d at1038 (for a document

20  to be incorporated by reference, there must be "no disputed issues as to the

21  document's relevance").

22          7.    **Paragraph 13, Laura Wray Piers Morgan Uncensored**

23                **Interview**

24      Ms. Wray's Piers Morgan Uncensored interview is inadmissible hearsay.  Ms.

25  Wray's statements in the interview are out of court statements by a non-party and

26  are not subject to any hearsay exception.  *See* Fed. R. Evid. § 803.[2]  Moreover, Ms.

27
28  ---

[2] In her Opposition, Harvey states that Wray's statement is admissible hearsay.  Opp.

Wray's impressions in the interview are irrelevant as the conclusions of Ms. Wray, who was the target of a five-year harassment campaign by Harvey, are not probative of whether any reasonable viewer of the Series would believe Martha is Harvey. *See* Fed. R. Evid. §§ 401, 402; Declaration of Laura Wray in Support of Defendants' Special Motion to Strike ¶¶ 6-31.

### 8.    **Exhibit 10, Jennifer Tabak LinkedIn**

Exhibit 10 is not relevant. Fed. R. Evid. § 401. Harvey cannot demonstrate that the LinkedIn profile of Ms. Lisa Taback, the Vice President of Talent Relations & Awards at Netflix, is at all relevant to any fact of consequence. Indeed, this is further underscored by the fact that Harvey does not even reference this Exhibit in her Opposition and only cites this exhibit in support of a misplaced, speculative argument in an attempt to challenge one of the public articles Netflix seeks to have judicially noticed. *See* Plaintiff's Opposition to Defendants' Request for Judicial Notice in Support of Their Motion to Strike at 6-7.

### 9.    **Exhibits 11, 12, 13, Gotham and Venice Film Festival Website Screenshots**

Similarly, Exhibits 11, 12, and 13 are also irrelevant. Exhibit 11 is a screenshot of the board of directors at the Gotham that does not relate to any issue in the case. If Harvey wishes to tenuously connect Ms. Taback's role at Netflix with her role at the Gotham, this weak connection does not undermine any of Netflix's judicially noticed exhibits let alone relate to any issue before the Court. Likewise, screenshots of websites that give awards for film and television are not probative of any issue before the Court. Moreover, like with Exhibit 10, Harvey does not even reference Exhibits 11, 12, or 13 in her Opposition, which further undermines their relevance.

---

at 8. However, Harvey does not state under which exception and that is because there is no applicable exception here as Harvey offers Wray's statement for the truth of the matter asserted, that "'Martha' is Fiona Harvey." *Id.*

1    Exhibits 11, 12, and 13 also constitute inadmissible hearsay as these exhibits
2    are written by an unknown, out of court individual.  Fed. R. Evid. §§ 801, 802.

3    **B.    Harvey Declaration and Attached Exhibits**

4         **1.    Harvey Declaration**

5    The Harvey Declaration is similarly objectionable on numerous grounds.

6         In paragraph 6, Harvey purports to explain the nomination process for
7    potential candidates for Members of Parliament, yet she does not purport to explain
8    or establish that was the process that was in effect when she sought nomination as a
9    candidate.  As a result, her statement here should be disregarded for a lack of
10   foundation.  Fed. R. Evid. §§ 401, 402, 602.  In addition, her statement here that she
11   "did not canvass, or make speeches, or run media advertisements seeking votes from
12   members of the public," Harvey Decl. ¶ 6, is irrelevant because whether she initiated
13   the media coverage is irrelevant, rather the issue is whether there existed a public
14   controversy regarding Harvey's attempted run for a Scottish Parliament seat and that
15   her involvement in politics existed in the public realm.[3]

16        In paragraph 9, Harvey's statement that "Gadd craved attention at the bar"
17   and that "he flirted with me and we exchanged banter" is inadmissible because it is
18   conclusory, speculative, and entirely irrelevant.  Harvey does not (and cannot) know
19   what Gadd "craved" in a pub 10 years ago and she cannot attest to this.  Moreover,
20   her opinion that he flirted with her and that they exchanged banter is conclusory and
21   irrelevant as it has no probative value in connection with whether the Series (not her
22   understanding of events) makes a provably false statement about her.

23        Paragraph 13 is inadmissible as it is argumentative, an improper legal
24   conclusion, and conclusory.  First, here Harvey improperly concludes that "Netflix
25   made [allegations] about *me* in *Baby Reindeer*."  Harvey Decl. ¶ 13 (emphasis

26   _____

27   [3] Exhibits M and T to the Declaration of Marvin Putnam in Support of Defendants'
     Special Motion to Strike (the "Putnam Decl.") clearly show the existence of such a
28   controversy and that her involvement in politics existed in the public realm.  *See*
     Putnam Decl. Exs. M, T.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

added).  This statement presumes the ultimate issue before this Court—whether any reasonable viewer would understand the Series to make statements of fact about Harvey.  Moreover, Harvey improperly states here that *Baby* Reindeer somehow made "allegations."  The Series is a fictional television show—it cannot and did not make any allegations, let alone any allegations about Harvey.

Second, Harvey concludes that those purported "allegations . . . are completely false." *Id.*  As a threshold matter, Harvey's statement here is entirely conclusory and argumentative as it does not explain what these purported "allegations" are. *Albergo v. Immunosyn Corp.*, No. 09CV2653 DMS (AJB), 2011 U.S. Dist. LEXIS 5455, at *11 (S.D. Cal. Jan. 19, 2011) ("In opposing an anti-SLAPP motion, 'declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded.'" (quoting *Gilbert*, 147 Cal. App. 4th   at 26.  More importantly, Harvey's conclusion here is inadmissible as an impermissible legal conclusion opining on the central issue before this Court of whether Harvey has met her burden that the Series makes any provably false statements about her.  Fed. R. Evid. § 701.

Paragraph 14 is similarly inadmissible.  Harvey here states that she is "horrified that Netflix included scenes in *Baby Reindeer* where *I* am having sex with Gadd."  Harvey Decl. ¶ 6 (emphasis added).  This paragraph should be entirely disregarded because it improperly concludes, without any basis for doing so, that Martha *is* Harvey.  Harvey cannot testify to this as it is a legal issue before this Court—whether the Series is reasonably interpreted to make statements about Harvey.

Paragraph 16 also includes an impermissible legal conclusion and irrelevant assertions.  Here, Harvey declares that "[n]o one from Netflix, including Richard Gadd," contacted her.  Harvey Decl. ¶ 16.  Harvey here presupposes and erroneously concludes that Gadd is part of Netflix and this should be disregarded as an improper legal conclusion. Fed. R. Evid. § 701.  Netflix and Gadd are separate, and one cannot

10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

be conflated with the other. Moreover, this fact is irrelevant to deciding whether the Series made a provably false statement about Harvey. Fed. R. Evid. §§ 401, 402.

Paragraph 17 is also inadmissible because it is irrelevant, hearsay, lacks any foundation, and is an improper legal conclusion. Harvey claims that she was contacted by total strangers and members of the media "as a result of *Baby Reindeer*." This is entirely speculation and argumentative as Harvey provides no basis to support or explain how the contact came "as a result of *Baby Reindeer*." Nor could she as Harvey cannot testify for or on behalf of other individuals. Moreover, this is an improper legal conclusion that goes to very heart of the matter before this Court—whether the Series is reasonably interpreted to make statements about Harvey. In addition, this is hearsay as Harvey cannot proffer the out-of-court statements from "strangers and members of the media" to prove the truth of what she asserts the messages state, that the Series is about her. Finally, paragraph 17 is entirely irrelevant as the date Harvey stated she started to receive messages, April 21, 2024, post-dates either Harvey's self-identification or her alleged identification by an "internet sleuth," and thus does not demonstrate that any of the individuals identified Harvey from the Series itself, as opposed to through Harvey's public statements or the work of a select number of uniquely motivated "sleuths." *See*, *e.g.*, Putnam Decl. Ex. S; Armstrong Decl., ¶¶ 3-4; Dingwall Decl., ¶¶ 6, 8.

Paragraph 18 is entirely inadmissible. First, Harvey's statement "I did not do any of the actions that Baby Reindeer says that I did" is an improper legal conclusion as it presupposes that Martha is Harvey. Fed. R. Evid. § 701. Second, Harvey's statement that "Netflix has twisted my words" and that her comment in a televised interview was not that "Baby Reindeer was not me," but rather "that I did not do the things Richard Gadd said I did in Baby Reindeer," should be disregarded because it is directly contradicted by the very video interview Harvey attempts to explain away. Indeed, the video evidence shows the opposite of what Harvey declares under penalty of perjury. For example, Harvey stated in the interview the Series "is a work

11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

1  of fiction," and that Martha "cannot be me" because she "is a fictional character . . .

2  of [Gadd's] imagination."  Putnam Decl. Ex A. at 7:33, 14:49, 17:22.  Moreover,

3  when asked if she was "100% sure [Martha is] not you," Harvey answered "yeah,

4  absolutely."  *Id.* at 16:04.  Where, as here, one party's version of events is clearly

5  contradicted by video evidence, then that party's version should not be credited.  *See*

6  *Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021) ("We do not credit a party's

7  version of events that the record, such as an unchallenged video recording of the

8  incident, quite clearly contradicts.") (internal quotation marks omitted).  Moreover,

9  the entire paragraph is argumentative and conclusory.  *See Gilbert*, 147 Cal. App.

10  4th at 26.

11       Paragraph 19 should also be disregarded as irrelevant and an improper legal

12  conclusion.  As a threshold matter, Harvey does not rely on paragraph 19 anywhere

13  in her Opposition, thus conceding that this paragraph is entirely irrelevant.

14  Furthermore, Harvey, again, improperly asserts that something happened "[a]s a

15  result of Baby Reindeer."  Harvey Decl. ¶ 19.  This is an improper legal conclusion

16  and argumentative.

17       Finally, paragraph 20 is based on inadmissible hearsay and lacks any

18  foundation.   As described in Section III.B.3 below, Harvey fails to lay any

19  foundation for what this document is, how she procured it, and how it "confirm[s]"

20  she has never been convicted of a crime.   Harvey Decl. ¶ 20.   Moreover, the

21  "Certificate" Harvey bases her statement on is inadmissible hearsay as it is offered

22  for the truth of its contents, to confirm that she has never been convicted of a crime.

23  *See* Fed. R. Evid. §§ 801, 802.

24            2.    **Exhibits 1-23, Facebook Messages**

25       Exhibits 1-23 of the Harvey Declaration constitute classic examples of

26  inadmissible hearsay and are entirely irrelevant. Fed. R. Evid. §§ 801, 802. Exhibits

27  1-23 purport to be social media messages sent to Harvey from unidentified third

28

1  parties and are inadmissible hearsay because they are out-of-court statements offered

2  for their truth and are not subject to any hearsay exception.  *Id.* § 803.

3  In addition, these exhibits are entirely irrelevant as the messages do not bear

4  on whether reasonable viewers would understand the Series to make factual

5  statements about Harvey.  First, most of messages do not even mention the Series,

6  *see* Harvey Decl. Exs. 1-4, 7-11, 13, 15-16, 20, 22-23, and those that do generally

7  inquire about a possible connection between Harvey and the Series, *see id.* Exs. 6,

8  14, 17, 18, 21.  Second, every one of the messages post-dates either Harvey's self-

9  identification or her alleged identification by an "internet sleuth," and thus does not

10 bear on whether any of the individuals identified Harvey from the Series itself, as

11 opposed to through Harvey's public statements or the work of a select number of

12 uniquely motivated "sleuths."  *See*, *e.g.*, Putnam Decl. Ex. S; Armstrong Decl., ¶¶

13 3-4; Dingwall Decl., ¶¶ 6, 8.  The Court should disregard Exhibits 1-23 as irrelevant

14 and inadmissible hearsay.

15                 3.     **Exhibit 24, "Certificate from the United Kingdom"**

16 Exhibit 24 entirely lacks foundation and is inadmissible hearsay.  Harvey fails

17 to offer any evidence to "support a finding that th[is] item is what [she] claims it is."

18 Fed. R. Evid. § 901.  Indeed, Harvey offers no explanation as to how she obtained

19 this "Certificate," how this is a "Certificate from the United Kingdom," what a

20 "Certificate from the United Kingdom" is, or how this "confirm[s]" that she has

21 never been convicted of a crime.  *See* Fed. R. Evid. § 901.  In fact, the exhibit

22 undermines itself here as it specifically states that it is "not a certificate issued by

23 the Disclosure and Barring Service" and is merely "***representative*** of information"

24 that could be issued.  Harvey Decl. Ex. 24 at 2 (emphasis added).

25 In addition, this Exhibit is hearsay and inadmissible as an unauthenticated out-

26 of-court statement being offered for the truth of its unexplained contents.  *See* Fed.

27 R. Evid. §§ 801-03.

28

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
CENTURY CITY

C.    **Hala Declaration**

The Jon Hala Declaration is almost entirely irrelevant and inadmissible hearsay.

Paragraph 3 states that he "was introduced to [Harvey] just by a colleague and became her hair stylist" and that when Mr. Hala "started his own salon, Fiona came with me and continues to be a frequent customer." This has no probative value to the claims at issue and is irrelevant and inadmissible. Fed. R. Evid. §§ 401, 402.

Paragraph 4 states that Mr. Hala understood the series was a true story, which constitutes an improper legal conclusion and has no tendency to prove or disprove the claims at issue. Fed. R. Evid. § 704, 401. Paragraph 4 also recounts Mr. Hala telling his wife "that's Fiona Harvey, my customer." Mr. Hala's conversation with his wife is inadmissible hearsay. Fed. R. Evid. §§ 801, 802.

In paragraphs 5 through 8, Mr. Hala recites various perceptions of the Martha character that remind him of Harvey. Mr. Hala's perceptions offer no probative value as to what a *reasonable viewer's* perception of the Martha character would be as Mr. Hala, who counts Ms. Harvey as a frequent customer, is anything but a reasonable viewer. Fed. R. Evid. §§ 401, 602, 701.

Paragraph 7 includes speculative, improper legal conclusions regarding Gadd and his intentions as a creator. Mr. Hala does not and cannot know what Gadd intended in creating the Series. These statements lack foundation and are not supported by any personal knowledge on the part of Mr. Hala. Fed. R. Evid. §§ 602.

Paragraph 8 is not based on Mr. Hala's personal knowledge and entirely objectionable. Indeed, he states that Gadd "depicts her standard of living and food she ate," but in the very next sentence admits that he no basis for this statement because he "ha[s] never visited [her] flat."

Paragraph 9 states that Harvey has diabetes and discusses the symptoms of diabetes. This paragraph has no "tendency to make a fact more or less probable than it would be without the evidence", nor is it "of consequence in determining the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

1   action."  Fed. R. Evid. § 401.  Thus, it is inadmissible.  It also includes further

2   speculative, improper legal conclusions regarding Gadd's and Netflix's intentions

3   behind *Baby Reindeer*, which lack foundation and are not supported by Mr. Hala's

4   personal knowledge.  Fed. R. Evid. § 602.

5       Paragraphs 10 and 12 express Mr. Hala's sympathy for Harvey after April

6   2024.  Mr. Hala's sympathies are devoid of probative value and are inadmissible.

7   Fed. R. Evid. §§ 401, 402.

8       In paragraphs 11 and 13, Mr. Hala recounts that he "became aware that

9   numerous news outlets . . . were following the story," that the story "was all over

10  Instagram and social media," and that Gadd "had a small following as a terrible

11  comedian."  Mr. Hala lacks personal knowledge sufficient to make paragraphs 11

12  and 13 admissible evidence.  Mr. Hala does not specify how he "became aware" of

13  this information or otherwise establish any foundation for these proffers.  Mr. Hala

14  even expressly admits in paragraph 11 that he did not personally see any stories on

15  social media because he "do[es] not have time in the day to spend on those social

16  media apps."  A witness may only testify to a matter if evidence is introduced

17  sufficient to support a finding that the witness has personal knowledge of the matter.

18  Fed. R. Evid. § 602.  These paragraphs, as well as Mr. Hala's related statement in

19  paragraph 12 that "I understand the social media cites were filled with negative

20  comments about Fiona Harvey," are inadmissible.  *Id.*

21      In paragraph 14, Mr. Hala reasserts his confidence that "Martha is Fiona

22  Harvey", which is speculative and unsupported by personal knowledge, lacks

23  foundation, and constitutes an improper legal conclusion.  Fed. R. Evid. § 602.  He

24  states that "[a]t the salon, we all talk about how closely Gadd depicted Fiona Harvey

25  as Martha."  The conversations between Mr. Hala's employees are hearsay,

26  improperly conclusory, and inadmissible.  Fed. R. Evid. §§ 801, 802, 602.

27

28

### D.    Dingwall Declaration

The Dingwall declaration is also objectionable on several grounds.   In paragraph 6, Mr. Dingwall describes searching Google for "real life Martha" and finding results which "referred [him]" to Harvey.  Mr. Dingwall thus admits that he did not identify Harvey from viewing *Baby Reindeer*, but rather piggybacked on research from an undisclosed "internet sleuth."  Mr. Dingwall's evidence has no probative value as to whether a reasonable viewer would understand the Series itself to make statements about Harvey and is thus inadmissible as irrelevant.  Fed. R. Evid. §§ 401, 402.

In paragraph 7, Dingwall suggests that Harvey "was a completely unknown person who was thrust in the spotlight as a result of *Baby Reindeer*."  Dingwall does not offer any foundation or other personal knowledge to support this assertion, which is speculative and constitutes an improper conclusion of law.  Fed. R. Evid. §§ 602.

In paragraph 9, Dingwall states that people questioned him for writing an article about Harvey and giving her a voice.  This paragraph is inadmissible hearsay, Fed. R. Evid. §§ 801, 802, and is also inadmissible because it has no probative value to the claims at issue, Fed. R. Evid. §§ 401, 402.  Mr. Dingwall also states in this paragraph that "[p]eople were taking *Baby Reindeer* as a true story," but fails to establish any foundation for this statement and in any event, it is a recitation of out-of-court statements by unidentified individuals.  Thus, paragraph 9 is inadmissible speculation, constitutes an improper legal conclusion, and is hearsay.  Fed. R. Evid. §§ 602, 701, 801, 802.

### E.    Armstrong Declaration

In paragraph 4 of her declaration, Ms. Armstrong asserts that she identified Harvey by sleuthing on the internet and Google searching details from articles written about Baby Reindeer.  Ms. Armstrong's internet investigation has no probative value as to what a reasonable viewer could deduce from watching *Baby Reindeer* itself.  Ms. Armstrong's research tactics have no "tendency to make a fact

16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

more or less probable", nor are they "of consequence in determining the action." Fed. R. Evid. § 401. Paragraph 4 is thus inadmissible. *Id.*

In paragraph 5, Ms. Armstrong states that "[she] believes" that she was one of the first internet sleuths to compare Harvey and Martha. Her statement here—that she "believes" something to be true—is pure conclusory speculation and inadmissible. Fed. R. Evid. §§ 602, 701; *see Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200, 2008 U.S. Dist. LEXIS 71761, 2008 WL 11334030, at *15 (C.D. Cal. Mar. 17, 2008) (statements such as with phrases such as "I believe" "raise doubts as to [the declarant's] personal knowledge."). Ms. Armstrong's statement in paragraph 6 that she "do[es] not know Harvey but am concerned for her safety" is similarly irrelevant, inadmissible, and cannot carry weight here. Fed. R. Evid. §§ 401, 402.

## IV.    TABLE OF EVIDENTIARY OBJECTIONS

For the Court's convenience, Netflix's provides a table of evidentiary objections that summarizes the discussions above.

| Evidence or Paragraph | Objections |
|---|---|
| Levenson Decl., ¶ 5: Annexed as Exhibit 3 is a true and correct copy of a letter dated May 23, 2024 from Netflix to the Committee clarifying its statement at the Hearing that "the person on whom the show is based" was the subject of a court order and not a criminal conviction. | Irrelevant (Fed. R. Evid. §§ 401, 402). <br><br> Inadmissible; privileged (Fed. R. Evid. §§ 402, 501). <br><br> Inadmissible hearsay (Fed. R. Evid. §§ 801, 802). |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

| Evidence or Paragraph | Objections |
|---|---|
| Levenson Decl., ¶ 10:  When Baby Reindeer is viewed on the Netflix platform (not the thumb drive Netflix provided to the Court) the next episode of Baby Reindeer begins before the credits complete such that no disclaimer is seen by the viewer. | Lack of foundation (Fed. R. Evid. § 901). Lacks personal knowledge (Fed. R. Evid. §§ 602). Inadmissible speculation (Fed. R. Evid. §§ 602, 701) Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Levenson Decl., ¶ 10:  At the end of any episode the viewer is presented with this choice at the end of the episode: . . . If "Watch Credits" is not selected, then the disclaimer is never seen. | Lacks personal knowledge; inadmissible speculation (Fed. R. Evid. §§ 602, 701.) Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Levenson Decl. Ex. 1:  Transcript of May 8, 2024 Hearing of the Culture, Media and Sport Committee in the House of Commons. | Irrelevant (Fed. R. Evid. §§ 401, 402). Inadmissible; privileged (Fed. R. Evid. §§ 401, 402, 501). Inadmissible Hearsay (Fed. R. Evid. §§ 801, 802). |
| Levenson Decl. Ex. 2:  Tudum Article | Irrelevant (Fed. R. Evid. §§ 401, 402). Inadmissible hearsay (Fed. R. Evid. §§ 801, 802). |

18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

| Evidence or Paragraph | Objections |
|---|---|
| Levenson Decl. Ex. 5:  Article titled Will the Baby Reindeer Scandal Kill 'True Story' TV. | Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Inadmissible hearsay (Fed. R. Evid. §§ 801, 802).<br><br>Inadmissible speculation; lacks foundation (Fed. R. Evid. §§ 602, 701).<br><br>Improper Lay Opinion (Fed. R. Evid. § 701). |
| Levenson Decl. Ex. 6:  Screenshot excerpts from the ebook of the play, Baby Reindeer. | Lacks personal knowledge & lacks foundation (Fed. R. Evid. § 602).<br><br>Inadmissible hearsay (Fed. R. Evid. §§ 801, 802).<br><br>Improper authentication. (Fed. R. Evid. § 901).<br><br>Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Levenson Decl. Ex. 9: Netflix 2024 10-K | Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Levenson Decl. ¶ 13:  Laura Wray Piers Morgan Uncensored Interview | Inadmissible hearsay (Fed. R. Evid. §§ 801, 802).<br><br>Irrelevant (Fed. R. Evid. §§ 401, 402). |

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

| Evidence or Paragraph | Objections |
|---|---|
| Levenson Decl. Ex. 10: LinkedIn Profile of Lisa Taback. | Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Inadmissible Hearsay (Fed. R. Evid. §§ 801, 802). |
| Levenson Decl. Ex. 11: Board of Directors page from The Gotham Film & Media Institute's website. | Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Inadmissible Hearsay (Fed. R. Evid. §§ 801, 802). |
| Levenson Decl. Ex. 12: copy of the Partnership page from The Gotham Film & Media Institute's. | Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Inadmissible Hearsay (Fed. R. Evid. §§ 801, 802). |
| Levenson Decl. Ex. 13: article about the Venice Film Festival sponsored by Netflix and The Gotham Film & Media Institute. | Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Inadmissible Hearsay (Fed. R. Evid. §§ 801, 802). |
| Harvey Decl., ¶ 6: "Unlike the primary process in American politics where the public votes for a nominee, under the Parliamentary system, the nominees who get to run for Members of Parliament are chosen by the Labour Party itself." | Inadmissible speculation (Fed. R. Evid. § 602, 701).<br><br>Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Harvey Decl., ¶ 6: "In other words, I did not canvass, or make speeches, or run media advertisements seeking votes from members of the public, when I sought the nomination. I simply was not chosen by the Labour Party." | Irrelevant (Fed. R. Evid. §§ 401, 402). |

| Evidence or Paragraph | Objections |
|---|---|
| Harvey Decl., ¶ 9: "Gadd craved attention at the bar. He flirted with me and we exchanged banter" | Inadmissible speculation (Fed. R. Evid. §§ 602, 701).<br><br>Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Harvey Decl., ¶ 13: The allegations Netflix made about me in Baby Reindeer are completely false. I never waited for Gadd outside his home. I never had any sexual contact with Gadd. I never attacked Gadd. I never gouged his eyes or smashed a glass over his head. I never stalked a police officer. I have never been indicted of a crime. I have never been convicted of a crime. I have never pled guilty to a crime. I have never been to prison. | Improper legal conclusion (Fed. R. Evid. §§ 701, 704.)<br><br>Argumentative; conclusory. *See Gilbert v. Sykes*, 147 Cal. App. 4th 13, 26 (2007).<br><br>Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Harvey Decl., ¶ 14: I am horrified that Netflix included scenes in Baby Reindeer where I am having sex with Gadd. | Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Improper legal conclusion (Fed. R. Evid. § 701). |
| Harvey Decl., ¶ 16: No one from Netflix, including Richard Gadd, contacted me about Baby Reindeer before or after it was released. | Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Improper legal conclusion (Fed. R. Evid. § 701). |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

| Evidence or Paragraph | Objections |
|---|---|
| Harvey Decl., ¶ 17: As a result of Baby Reindeer, total strangers and members of the media began to contact me on or about April 21, 2024 through Facebook identifying me as "Martha" from Baby Reindeer. Exhibits 1-23. The Exhibits are a fraction of the thousands, I estimate 5,000 – 10,000 messages, I received from total strangers in response to Baby Reindeer. These individuals accused me of rape (Exhibits 1-2, 22), threatened me (Exhibits 1-2) and told me to kill myself or wished me grave harm (Exhibits 5-6, 16). Individuals specifically referenced the "hang my curtains" tweet. Exhibits 12-13, 15. Others attempted to call me. Exhibits 5, 11. | Irrelevant (Fed. R. Evid. §§ 401, 402). Inadmissible hearsay (Fed. R. Evid. §§ 801, 802). Improper legal conclusion (Fed. R. Evid. § 701). |
| Harvey Decl., ¶ 18:  As a result of being identified and out of concern for my safety, I decided to go on the Piers Morgan Uncensored show to defend myself and explain that while I do know Richard Gadd, I did not do any of the actions that Baby Reindeer says that I did. . . . I have reviewed Netflix's claim that on Piers Morgan I said Baby Reindeer was not me. Netflix has twisted my words.  My comment was that I did not do the things Richard Gadd said I did in Baby Reindeer. | Contradicted by video evidence.  *See Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021). Argumentative; conclusory.  *See Gilbert*, 147 Cal. App. 4th at 26. Improper legal conclusion (Fed. R. Evid. § 701). |
| Harvey Decl., ¶ 19:  As a result of Baby Reindeer, I had to close my Face book account and stopped watching the news for fear of any story about me. I am afraid to go outside out of fear of being attacked. Some weeks I do not leave my apartment. I am suffering from, among other things, constant panic attacks, chest pains, anxiety, nightmares, depression, nervousness, stomach pains, loss of appetite, fear and insomnia. The stress and anxiety is also severely affecting my diabetes. | Irrelevant (Fed. R. Evid. §§ 401, 402). Improper legal conclusion (Fed. R. Evid. § 701). |

22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION

| Evidence or Paragraph | Objections |
|---|---|
| Harvey Decl., ¶ 20:  Annexed as Exhibit 24 is a true and correct copy of a Certificate from the United Kingdom confirming that I have never been convicted of a crime. | Inadmissible hearsay (Fed. R. Evid. §§ 801, 802).<br><br>Lack of foundation (Fed. R. Evid. § 901). |
| Harvey Decl., Exs. 1-23:  Facebook messages. | Inadmissible hearsay (Fed. R. Evid. §§ 801, 802).<br><br>Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Harvey Decl., Exhibit 24:  Certificate from the United Kingdom confirming that I have never been convicted of a crime. | Lack of foundation; not properly authenticated (Fed. R. Evid. § 901).<br><br>Inadmissible hearsay (Fed. R. Evid. §§ 801, 802). |
| Hala Decl., ¶ 3: I have known Fiona Harvey just under seven years, when I was introduced to her just by a colleague and became a hair stylist.  When I started my own salon, Fiona came with me and continues to be a frequent customer. | Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Hala Decl., ¶ 4: I understood, as represented very early in the first episode, that the series was a "true story."  After completing the first episode, I turned to her and said, "that's Fiona Harvey, my customer." | Improper legal conclusion (Fed. R. Evid. § 701).<br><br>Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Inadmissible Hearsay (Fed. R. Evid. §§ 801, 802). |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

| Evidence or Paragraph | Objections |
|---|---|
| Hala Decl., ¶ 5: That conclusion was very obvious for many reasons.  Fiona, like Martha in the series, is a strong and spicey Scottish woman who used to live in Camden.  Martha looks like her.  Martha sounds like her.  Martha dresses like her.  Martha is an attorney, like Fiona Harvey.  Martha is very bright and, at times, extremely funny and endearing, like Fiona Harvey.  Martha, also like Fiona Harvey, is a highly stressful individual who does have emotional issues, another aspect of Martha captured in the series. | Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Improper legal conclusion (Fed. R. Evid. § 701). |
| Hala Decl., ¶ 6:  Martha, like Fiona Harvey, is Scottish with a strong Scottish accent.  Martha is the same age.  Martha has the same cadence and, like Fiona Harvey, is overweight with the same physical appearance as Fiona.  Martha even dresses like Fiona, as they both wear big, baggy dresses.  She even wears her watch tightly strapped on her large wrist, as Fiona does. | Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Hala Decl., ¶ 7:  Indeed, I was very impressed how well Richard Gadd, the writer and actor in the series, was able to make Martha appear to be Fiona in every way.  He even has her drinking tea, which Fiona does every time she comes into my salon.  All of those characteristics are remarkably identical. | Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Improper legal conclusion (Fed. R. Evid. § 701). |
| Hala Decl., ¶ 8:  Gadd even depicts her standard of living and the food she eats.  While I have never visited the flat, I do know that, like Martha, Fiona Harvey regularly eats pre-packed, ready-made microwave food.  I know that because we talk about it when she comes to the salon and, often times, either before or after her hair appointment, she will tell me she is going to buy that type of food.  And in the series there is a scene that shows her kitchen with those same foods. | Irrelevant (Fed. R. Evid. §§ 401, 402).<br><br>Improper legal conclusion (Fed. R. Evid. § 701).<br><br>Lacks personal knowledge; inadmissible speculation (Fed. R. Evid. §§ 602, 701). |

| Evidence or Paragraph | Objections |
|---|---|
| Hala Decl., ¶ 9: Having seen the series, I decided not to tell Fiona about it because I did not want to upset her. I also know that Fiona is diabetic and that individuals suffering from diabetes can have difficult moments, depending on their sugar intake, so I intentionally did not want to tell her about the series but wondered if she was aware of *Baby Reindeer* and how Gadd and Netflix produced a show about her. | Irrelevant (Fed. R. Evid. §§ 401, 402). Improper legal conclusion (Fed. R. Evid. § 701). |
| Hala Decl., ¶ 10: Sometime in April 2024, after I had already seen the series, Fiona Harvey came in for a hair appointment. She was very upset and afraid and told me there was a series about her. I did not tell her that I had seen it as I did not want to upset her. | Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Hala Decl., ¶ 11: I did not closely follow the story but became aware that numerous news outlets, including the Daily Mail and Daily Record in Scotland, were following the story. I also became aware that numerous individuals of my staff followed the story which was all over Instagram and Facebook. They were very much aware of and on top of the situation. I simply did not do so, as I do not have time in the day to spend on those social media apps. | Irrelevant (Fed. R. Evid. §§ 401, 402). Inadmissible speculation (Fed. R. Evid. §§ 602, 701). |
| Hala Decl., ¶ 12: As Fiona continued to come in for her hair on occasion, she was very concerned about people recognizing her as I understand the social media cites were filled with negative comments about Fiona Harvey. I became concerned for her health and wellbeing. | Irrelevant (Fed. R. Evid. §§ 401, 402). Inadmissible speculation (Fed. R. Evid. §§ 602, 701). |
| Hala Decl., ¶ 13: I was also generally familiar with Richard Gadd before the Netflix series. He had a small following as a terrible comedian. | Irrelevant (Fed. R. Evid. §§ 401, 402). |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

| Evidence or Paragraph | Objections |
|---|---|
| Hala Decl., ¶ 14:  The more I watched the episodes the more confident I was that Martha is Fiona Harvey.  There is no doubt.  Indeed, my entire staff and I have watched the series and recognized that it is about Fiona Harvey.  At the salon, we all talk about how closely Gadd depicted Fiona Harvey as Martha. | Irrelevant (Fed. R. Evid. §§ 401, 402).  Improper legal conclusion (Fed. R. Evid. § 701); Inadmissible Hearsay (Fed. R. Evid. §§ 801, 802). |
| Dingwall Decl., ¶ 6: I Googled "real life Martha" and it referred me to the X social media platform where I found Fiona Harvey's tweet to Richard Gadd about 'hanging her curtains' in minutes. | Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Dingwall Decl., ¶ 7: She was a completely unknown person who was thrust in the spotlight as a result of *Baby Reindeer*. | Improper legal conclusion (Fed. R. Evid. § 701).  Inadmissible speculation (Fed. R. Evid. §§ 602, 701). |
| Dingwall  Decl., ¶ 9: Immediately after my article was published, I received intense feedback from people who questioned why I was giving a voice to Fiona Harvey, since she was a convicted criminal who did the things shown in Baby Reindeer. | Inadmissible Hearsay (Fed. R. Evid. §§ 801, 802).  Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Dingwall Decl., ¶ 9: People were taking *Baby Reindeer* as true story. | Improper legal conclusion (Fed. R. Evid. § 701).  Inadmissible speculation (Fed. R. Evid. §§ 602, 701).  Inadmissible hearsay (Fed. R. Evid. §§ 801, 802). |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

| Evidence or Paragraph | Objections |
|---|---|
| Armstrong Decl., ¶ 4: I found Fiona Harvey by searching social media for the "curtains" comment which was easy.  I also found the article about Harvey stalking Laura Wray referenced in Baby Reindeer article by Googling, in essence, "barrister, disabled child, stalker." | Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Armstrong Decl., ¶ 5: So many people caught on to her identity very quickly and I was, I believe, a day ahead of them and may have been one of the first to identify her. | Improper lay opinion (Fed. R. Evid. § 701). Inadmissible speculation (Fed. R. Evid. §§ 602, 701). Irrelevant (Fed. R. Evid. §§ 401, 402). |
| Armstrong Decl., ¶ 6: I do not know Harvey but am concerned for her safety. | Irrelevant (Fed. R. Evid. §§ 401, 402). |

Dated:  September 4, 2024

Respectfully submitted,

LATHAM & WATKINS LLP
Marvin S. Putnam

By  */s/ Marvin S. Putnam*
Marvin S. Putnam
Attorney for Defendants
Netflix, Inc., and Netflix Worldwide
Entertainment, LLC

27

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Case No. 2:24-cv-04744-RGK-AJR
DEFENDANTS' EVIDENTIARY OBJECTIONS TO
PLAINTIFF'S EVIDENCE ISO OPPOSITION