UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendants' Special Motion to Strike [DE 26] Defendants' Motion to Dismiss [DE 28], and Plaintiff's Motion to Strike [DE 43]

## I. INTRODUCTION

On June 6, 2024, Fiona Harvey ("Plaintiff") filed a Complaint against Netflix, Inc. and Netflix Worldwide Entertainment, LLC (collectively, "Defendants"), asserting six claims under California law: (1) defamation; (2) intentional infliction of emotional distress ("IIED"); (3) negligence; (4) gross negligence; (5) violations of her right of publicity under California common law; and (6) violations of her right of publicity under California Civil Code § 3344. (ECF No. 1.)

Presently before the Court are Defendants' Special Motion to Strike under California's anti-strategic lawsuit against public participation ("anti-SLAPP") statute (ECF No. 26), Defendants' Motion to Dismiss (ECF No. 28), and Plaintiff's Motion to Strike (ECF No. 43). For the following reasons, the Court **DENIES** Defendants' Special Motion to Strike, **GRANTS** Defendants' Motion to Dismiss **in part**, and **DENIES** Plaintiff's Motion to Strike.

## II. FACTUAL BACKGROUND

### A. The Complaint

Plaintiff alleges the following facts in her Complaint:

Defendants operate Netflix, an eponymous streaming media service that produces and distributes content to over 260 million paid subscribers worldwide. On April 11, 2024, Defendants released a seven-episode limited television series written, produced, and starring Scottish comedian Richard Gadd, titled *Baby Reindeer* (the "Series"). The Series is set in 2015 and follows Donny Dunn, a struggling Scottish comedian played by and based on Gadd, trying to advance his comedy career while working as a bartender at a pub and dealing with a stalker named Martha Scott.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

Despite using fictional names for its characters, the Series is heavily based on reality. In an interview with GQ Magazine, Gadd stated that he "disguised" his real stalker as Martha in the Series. As it turns out, Martha is none other than Plaintiff. There are numerous similarities between Martha and Plaintiff. For instance, the Series portrays Martha as a Scottish lawyer living in London, twenty years older than Donny, accused of stalking a lawyer in a newspaper article, who communicated with Donny on social media. Likewise, Plaintiff is a Scottish lawyer living in London, twenty years older than Gadd, accused of stalking a lawyer in a newspaper article, who communicated with Gadd on social media. Further, Martha's accent, manner of speaking, and cadence are also indistinguishable from Plaintiff's. However, there are several keys differences between Plaintiff and Martha. In particular, the Series:

(1) States that Martha is a twice convicted criminal that spent five years in prison for stalking;

(2) States that Martha stalked a police officer;

(3) Depicts Martha sexually assault[1] Donny in an alley, grabbing his genitals without consent;

(4) Depicts Martha violently attack Donny in a pub, smashing a glass bottle over his head and gouging his eyes with her thumbs; and

(5) Depicts Martha stalk Donny by waiting outside his home every day for up to 16 hours a day.

Despite these differences, Defendants present the Series to be a true story. Less than two minutes into the first episode, the text "this is a true story" appears on screen. Believing the Series to be true, viewers immediately got to work trying to identify the real Martha. Within days, these viewers found a public post Plaintiff made on Gadd's social media profile in 2014, asking him to "hang my curtains," which matched a quote from the Series. Thus, the viewers concluded that Plaintiff was the real Martha and that Plaintiff also:

(1) Was a twice convicted criminal that spent five years in prison for stalking;

(2) Stalked a police officer;

(3) Sexually assaulted Gadd in an alley, grabbing his genitals without consent;

---

[1] In her Complaint, Plaintiff alleges that a scene at the end of the second episode depicts Martha sexually assault Dunn. Defendants appear to take issue with this characterization, arguing that the scene is "ambiguous" and actually shows "inappropriate touching." (Defs.' Reply ISO Special Mot. to Strike at 8, n.13, ECF No. 56.) However, the scene clearly shows Martha pin Dunn to a wall, rub his genitals, and say, "You beat it. I made you beat." Plaintiff's characterization is fair.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

(4) Violently attacked Gadd in a pub, smashing a glass bottle over his head and gouging his eyes with her thumbs; and

(5) Stalked Gadd by waiting outside his home every day for up to 16 hours a day.

None of these statements were true, however. Nonetheless, these viewers inundated Plaintiff with threatening and harassing messages. This harassment became so pervasive that it caused Plaintiff to suffer severe emotional distress in the form of anxiety, nightmares, panic attacks, shame, depression, nervousness, stomach pains, loss of appetite, and fear. Specifically, a fear of going outside.

Defendants should have known that the statements and portrayals of Plaintiff through Martha were false, and that viewers would discover her identity and harass her based on these false statements and portrayals. Yet, Defendants made no effort to investigate the accuracy of these statements and portrayals, or take further measures to hide her identity.

**B.      Defendants' Special Motion to Strike**

The parties submit the following facts in support of their briefings regarding Defendants' Special Motion to Strike[2]:

1. *Plaintiff's Stalking*

In 1997, Plaintiff was hired as a trainee solicitor at the law firm L & L Lawrence Solicitors under Laura Wray, a Scottish solicitor, who was then married to a member of British Parliament. (Wray Decl. ¶¶ 1, 3–5, ECF No. 26-28.) Wray terminated Plaintiff's employment just a few weeks after hiring her. (*Id.* ¶ 5.) Consequently, Plaintiff launched a harassment campaign against Wray and her family, sending threats, following them, and making false police reports against them. (*Id.* ¶¶ 6–19.) Plaintiff's harassment continued until April 29, 2002, when Wray obtained an Interim Interdict, which is essentially a restraining order prohibiting Plaintiff from contacting her. (*Id.* ¶¶ 20–25.) Plaintiff's conduct got the attention of the media, leading to multiple news stories between 2000 and 2004. (Wray Decl., Exs. 6, 9, 14, ECF Nos. 26-33, 26-36, 26-41.) These news stories revealed that Plaintiff had also stalked First Minister of Scotland Donald Dewar. (Putnam Decl., Ex. M, ECF No. 26-19.)

Around 2014, Plaintiff met Gadd, who at the time, was a struggling comedian working at a pub. (Gadd Decl. ¶ 14, ECF No. 23-1.) Plaintiff almost immediately began stalking and harassing Gadd. She

---

[2] Some of the parties' evidence was submitted via Requests for Judicial Notice. To the extent that the Court relies on such exhibits, the Court **GRANTS** the respective Requests. To the extent that the Court does not rely on such exhibits, the Court **DENIES** the respective Requests **as moot**. Likewise, to the extent that the Court relies on evidence to which either party has objected, those objections are **OVERRULED**. To the extent that the Court does not rely on evidence to which either party has objected, those objections are **DENIED as moot**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

learned Plaintiff's shift pattern so she could be at the pub while he was working, followed him around town, and attended many of his comedy and theater performances. (*Id.* ¶¶ 15, 21.) She even got "handsy" with him, pinching and touching various parts of his body including his "bum" without consent. (*Id.* ¶ 17.) And on one occasion, she got violent with him, "shov[ing] him in the back of [his] neck." (*Id.* ¶ 19.) And for years, she sent him countless emails, social media messages, voicemails, and handwritten letters. (*Id.* ¶¶ 22–44.) Plaintiff's harassment continued until 2017, when Gadd obtained a First Instance Harassment Warning against her. (*Id.* ¶ 53.)

Plaintiff was never prosecuted or convicted of a crime for her conduct. (Harvey Decl., Ex. 24, ECF No. 42-24.) However, according to Louise Michelle Oakley, a criminal lawyer who practices in England and Wales, Plaintiff's conduct toward Wray, Dewar, and Gadd rose to the level of criminal stalking, likely punishable by at least five years' imprisonment. (Oakley Decl. ¶ 84, ECF No. 26-3.)

   2. *Plaintiff's Political Activity*

Around 1999, Plaintiff was active in politics. (Harvey Decl. ¶ 6, ECF No. 42.) She sought a nomination for a seat in the Scottish Parliament. (Putnam Decl., Ex. T, ECF No. 26-26.) This nomination process was private; she "did not canvass, or make speeches, or run media advertisements seeking votes from members of the public." (Harvey Decl. ¶ 6.) Though she was "o[n] four shortlists for fo[]ur seats," her bid was ultimately unsuccessful. (Gadd Decl., Ex. 14, ECF No. 27-14.)

   3. *The Release of the Series*

Two weeks after the Series aired, Plaintiff identified herself as the real Martha on Facebook and criticized Gadd and the Series. (Putnam Decl., Ex. S, ECF No. 26-25.) Not long after, Plaintiff sat for an interview with Piers Morgan to reaffirm that Martha was based on her but deny many of the statements about Martha that were falsely attributed to her. (Putnam Decl., Ex. A, ECF No. 26-7.)

Shortly after Plaintiff filed her Complaint, The Sunday Times ran an article about the lawsuit. (Levenson Decl., Ex. 5, ECF No. 41-7.) The article suggested that Defendants went out of their way to add the "this is a true story" line, stating: "Sources in the TV industry have told The Sunday Times that this line was a request from [Defendants], and that Gadd expressed concerns about presenting it as such." (*Id.*) Defendants added this line even though Gadd's original theater play, which the Series was adapted from, stated that it was simply "based on a true story." (Levenson Decl., Ex. 6, ECF No. 41-8.) However, each episode of the Series included a disclaimer after the end credits stating: "This program is based on real events: however, certain characters, names, incidents, locations, and dialogue have been fictionalized for dramatic purposes." (Netflix Decl. ¶ 8, ECF No. 26-2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

### III. PLAINTIFF'S MOTION TO STRIKE

#### A. Judicial Standard

Under Federal Rule of Civil Procedure ("Rule") 12, a court has discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. (12)(f). In evaluating a motion to strike, a court must "view the pleading under attack in the light most favorable to the pleader." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). Motions to strike are disfavored, *see Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003), and "are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

#### B. Discussion

Defendants bring a Special Motion to Strike and a Motion to Dismiss. Defendants support their Special Motion to Strike with declarations by Gadd and Wray stating that Plaintiff stalked and harassed them, as well as a declaration by Oakley opining that Plaintiff could have been convicted and given the same sentence as Martha. Plaintiff moves to strike these declarations as immaterial and scandalous. However, for the reasons discussed below, these declarations are relevant and material. Accordingly, the Court **DENIES** Plaintiff's Motion.

### IV. DEFENDANTS' SPECIAL MOTION TO STRIKE

#### A. Judicial Standard

Under California Code of Civil Procedure § 425.16, also known as the anti-SLAPP statute, a defendant may file a special motion to strike a complaint that is brought primarily to chill the valid exercise of free speech and petition. Such motions may be brought in federal court against a plaintiff's state law claims. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970–73 (9th Cir. 1999).

Section 425.16 provides a two-step burden-shifting framework. First, the defendant has the burden of showing that the challenged cause of action arises from activity protected under the statute. *Blackburn v. Brady*, 116 Cal. App. 4th 670, 675 (2004). "If the defendant does not meet this threshold burden, the court must deny the motion." *Id.* at 676. If the defendant meets the burden, then the plaintiff must demonstrate a probability of prevailing on the merits of the claim. *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66–67 (2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

To establish the requisite probability of prevailing, the plaintiff must "demonstrate both that the claim is legally sufficient and that there is sufficient evidence to establish a prima facie case with respect to the claim." *Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007). The court evaluates the evidence using a "summary-judgment-like procedure," considering only whether the evidence, if credited, would support the claims. *Id.*; *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002).

If the plaintiff is unable to satisfy its burden, the court should grant the defendant's motion and strike the complaint. *DuPont Merck Pharm. Co. v. Super. Ct.*, 78 Cal. App. 4th 562, 564 (2000). Because the statutory intent is to provide a quick, inexpensive method of dismissing these sorts of lawsuits, leave to amend is improper. *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001).

**B.** **Discussion**

Plaintiff asserts claims for: (1) defamation; (2) IIED; (3) negligence; (4) gross negligence; (5) violations of her right of publicity under California common law; and (6) violations of her right of publicity under California Civil Code § 3344. Defendants move to strike the Complaint in its entirety, arguing that the claims fail under anti-SLAPP. The Court evaluates each step of the anti-SLAPP framework in turn.

1. *Protected Activity*

Under the first step of the anti-SLAPP framework, the defendant bears the burden of showing that the challenged cause of action arises from an activity protected by the statute. Section 425.16 protects "the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e). Speech in connection with a public issue or public interest generally "concerns a person or entity in the public eye, conduct that could directly affect a large number of people beyond the direct participants, or a topic of widespread, public interest." *Geiser v. Kuhns*, 13 Cal. 5th 1238, 1248 (2022) (quoting *Rivero v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 919–24 (2003)) (cleaned up).

Courts employ a two-part analysis to determine if speech is connected with a public issue. First, the court determines what issue the speech implicates based on the content of the speech. *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149–50 (2019). Second, the court determines whether there is a functional relationship between the speech and the public conversation about the issue based on context. *Id.* The first step will "virtually always" be satisfied, as defendants can easily "succeed in drawing a line—however tenuous—connecting their speech to an abstract issue of public interest." *Id.* The second step is usually more important, as "it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate." *Id.* (quoting *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

Here, Plaintiff's claims arise from the Series. Defendants argue that the Series is protected speech because it concerns sexual abuse, harassment, and stalking. The Court agrees. The Series discusses issues of sexual abuse, harassment, and stalking, which are well-established topics of widespread public interest. *See, e.g., M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 629 (2001). The Series contributes to the public debate surrounding these issues by highlighting them and showing how victims are impacted by them. *See id.* Thus, the Series satisfies both steps and constitutes protected speech under anti-SLAPP.

Having found that Defendants met their burden of showing that the Series and statements are protected speech, the Court proceeds to the second step of the anti-SLAPP framework.

  2. *Probability of Prevailing on the Merits*

Under the second step of the anti-SLAPP framework, Plaintiff bears the burden of demonstrating a probability of prevailing on the merits of her claims. The Court addresses each claim in turn.

    a. *Defamation*

To prevail on a defamation claim, a plaintiff must identify: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010). "The defamatory statement must specifically refer to, or be 'of and concerning,' the plaintiff." *John Doe 2 v. Super. Ct.*, 1 Cal. App. 5th 1300, 1312 (2016) (quoting *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1042 (1986)).

Plaintiff asserts a claim for defamation, alleging that Defendants used Martha to make false statements about her. Specifically, Plaintiff alleges that Defendants falsely stated that Plaintiff:

(1) Was a twice convicted criminal that spent five years in prison for stalking;

(2) Stalked a police officer;

(3) Sexually assaulted Gadd in an alley, grabbing his genitals without consent;

(4) Violently attacked Gadd in a pub, smashing a glass bottle over his head and gouging his eyes with her thumbs; and

(5) Stalked Gadd by waiting outside his home every day for up to 16 hours a day.

Plaintiff argues that her claim has a probability of succeeding on the merits because the above statements were false, defamatory, unprivileged, harmed Plaintiff's reputation and caused her emotional distress. Defendants disagree, arguing that the claim fails because: (1) the statements are not about

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

Plaintiff; (2) the statements are not assertions of fact; (3) the statements are substantially true; (4) Plaintiff is libel-proof; (5) the statements are legally protected opinion; and (6) Plaintiff is a public figure and cannot establish actual malice. The Court addresses each argument in turn.

                    i.      Statements About Plaintiff

To be defamatory, a statement must be reasonably interpreted as an assertion of fact about an individual. *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999). "In actions based on the identification of a fictional character with the actual plaintiff, 'the test is whether a reasonable person . . . would understand that the fictional character therein pictured was, in actual fact, the plaintiff acting as described.'" *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 146 (2011) (quoting *Bindrim v. Mitchell*, 92 Cal. App. 3d 61, 78 (1979)). "Whether defamatory statements can reasonably be interpreted as referring to plaintiffs is a question of law for the court." *Id.*

Defendants argue that a reasonable person would not understand that Martha is, in actual fact, Plaintiff, such that any statements about Martha would be about Plaintiff. In particular, Defendants argue that the similarities between Martha and Plaintiff are so broad that a reasonable person would not have been able to identify her. The Court disagrees.

This is not the typical case where a plaintiff happens to be one of hundreds of people that match a fictional character's broad characteristics. *See, e.g., Tamkin*, 193 Cal. App. 4th at 147 (rejecting defamation claim because the plaintiff's similarities to a fictional character of the same name were broadly applicable to many people); *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 320 (1997) (same). Rather, Martha and Plaintiff have specific similarities that few others could claim to share. Specifically, Martha and Plaintiff are both Scottish lawyers living in London, twenty years older than Donny/Gadd, accused of stalking a lawyer in a newspaper article, who communicated with Donny/Gadd on social media. While there may be numerous Scottish lawyers living in London of the same approximate age as Plaintiff, it is very likely that only Plaintiff has been accused of stalking a lawyer in a newspaper article while also communicating with Gadd on social media.

Nonetheless, Defendants argue that even if the similarities were strong and specific, a reasonable person would not have identified Plaintiff because it required research and "cybersleuthing." And these cybersleuths are not representative of reasonable persons. However, Plaintiff alleges that it required little effort for these cybersleuths to find her, as they simply found her public posts on Gadd's social media referencing the same "hang my curtains" joke featured in the Series. Defendants do not offer any evidence to the contrary or provide any convincing argument as to why this effort would be unreasonable, particularly given Gadd's statement confirming that Martha was based on a real stalker, which could arguably be viewed as an invitation to find Plaintiff. Thus, this argument fails.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

Having established that a reasonable person could understand the statements about Martha to be about Plaintiff, for clarity and brevity, the Court refers to the statements as statements about Plaintiff from this point forward.

> ii. Assertions of Fact

Whether a statement may be perceived as a factual assertion depends on "the totality of the circumstances in which it was made." *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995). Courts consider three factors: (1) "the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work"; (2) "the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation"; and (3) "whether the statement itself is sufficiently factual to be susceptible of being proved true or false." *Id.*

As to the second factor, dramatic devices may demonstrate that a statement is not an assertion of fact. For instance, in *Khodorkovskaya v. Gay*, the D.C. Circuit, drawing upon California law, found that a theatrical play based on historical fiction did not contain assertions of fact because it used dramatic, borderline fantastical elements. 5 F.4th 80, 86–87 (D.C. Cir. 2021). For instance, the play included a comical depiction of Russian leader Vladimir Putin, often accompanied by a larger-than-life-sized stuffed tiger, who on multiple occasions recites an absurdist poem about "voluptuous tarts." *Id.* The play also included a ghost. *Id.* The court found that these "fantastical device[s] . . . confirm[ed] to any reasonable viewer that the play is fictional" and did not convey historical facts. *Id.*

Defendants argue that a reasonable person would not understand the statements about Plaintiff to be assertions of fact. Specifically, Defendants argue that a reasonable person would understand from context that the alleged statements are not factual because the Series uses dramatic cinematic elements like tonally dissonant soundtracks, literal tunnel vision, timelapses, and montages. The Court disagrees.

Each of the factors suggest that the statements would be interpreted as assertions of fact. First, while the statements were made in a Series that largely has the trappings of a black comedy-drama, the very first episode states unequivocally that "this is a true story," thereby inviting the audience to accept the statements as fact.[3] Second, while the Series uses some dramatic cinematic elements, these elements are not so absurd or surreal as to neutralize the audience's expectations that they are watching a "true story." Indeed, these dramatic devices are far tamer than the fantastical use of stuffed tigers, absurdist poetry, and ghosts in *Khodorkovskaya*. Third, the statements are sufficiently factual to be susceptible of being proved true or false. Whether Plaintiff was convicted, stalked a police officer, sexually assaulted

---

[3] To be sure, Defendants note that the Series also included a disclaimer in its end credits stating that the Series was "based on real events" and had elements that were "fictionalized for dramatic purposes." (Netflix Decl. ¶ 8.) However, it is not clear that viewers would understand how to interpret it given the conflicting "this is a true story" line in the first episode.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

Gadd, violently attacked him, or waited outside his home are all provable assertions. Under the totality of the circumstances, a reasonable person could interpret the statements to be assertions of fact. Thus, this argument also fails.

### iii. Substantial Truth

Substantial truth is a defense to defamation. Under this defense, if "the substance . . . gist . . . [or] sting" of the allegedly defamatory statements are true, the defendant cannot be held liable for any "slight inaccuracy in the details." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991) (quoting *Heuer v. Kee*, 15 Cal. App. 2d 710, 714 (1936); 5 B. Witkin, Summary of California Law § 495 (9th ed. 1988)). In other words, "the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (quoting R. Sack, Libel, Slander, and Related Problems 138 (1980)).

Defendants argue that Plaintiff's claim fails because the statements about Plaintiff are substantially true. Specifically, Defendants offer evidence demonstrating:

(1) Although Plaintiff is not a twice convicted criminal that spent five years in prison for stalking, she could have been convicted and sentenced to five years in prison for stalking Wray, Dewar, and Gadd, (Oakley Decl. ¶ 84);

(2) Although Plaintiff did not stalk a police officer, she did previously stalk Wray, an attorney; her husband, a member of British Parliament; and Dewar, the First Minister of Scotland, (Wray Decl. ¶¶ 6–19; Putnam Decl., Ex. M);

(3) Although Plaintiff did not sexually assault Gadd in an alley, grabbing his genitals without consent, she did get "handsy" with him, pinching and touching various parts of his body including his "bum" without consent, (Gadd Decl. ¶ 17);

(4) Although Plaintiff did not smash a glass bottle over Gadd's head and gouge his eyes with her thumbs, she did shove him in the back of the neck, (*Id.* ¶ 19); and

(5) Although Plaintiff did not wait outside Gadd's home every day for up to 16 hours a day, she did follow him to the pub and his comedy and theater performances, (*Id.* ¶¶ 15, 21).

However, even assuming this evidence to be true, the Court disagrees that Defendants' statements would be substantially true. For instance, there is a major difference between stalking and being convicted of stalking in a court of law. Likewise, there are major differences between inappropriate touching and sexual assault, as well as between shoving and gouging another's eyes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

While Plaintiff's purported actions are reprehensible, Defendants' statements are of a worse degree and could produce a different effect on the mind of a viewer. Thus, this argument also fails.

        iv.    Libel-Proof

Under the libel-proof doctrine, "a plaintiff's reputation with respect to a specific subject may be so badly tarnished that he cannot be further injured by allegedly false statements on that subject." *Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 303 (2d Cir. 1986). In such a scenario, rather than allow the case to proceed for nominal damages, courts will dismiss the claim outright. *Cardillo v. Doubleday & Co., Inc.*, 518 F.2d 638, 639 (2d Cir. 1975).

Whether a plaintiff is libel-proof based on past conduct "[d]epend[s] upon the nature of the conduct, the number of offenses, and the degree and range of publicity received." *Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 928 (C.D. Cal. 1982). "The libel-proof plaintiff doctrine is to be sparingly applied, as it is unlikely that many plaintiffs will have such tarnished reputations that their reputations cannot sustain further damage." *Stern v. Cosby*, 645 F. Supp. 2d 258, 270 (S.D.N.Y. 2009). And even where application of the doctrine is appropriate, it must be cabined to statements on the same subject to which the plaintiff's reputation was tarnished. As then-Circuit Judge Scalia explained: "It is shameful that Benedict Arnold was a traitor; but he was not a shoplifter to boot, and one should not have been able to make that charge while knowing its falsity with impunity." *Liberty Lobby v. Anderson*, 746 F.2d 1563, 1568 (D.C. Cir. 1984) (Scalia, J.), *rev'd on other grounds*, 477 U.S. 242.

Defendants argue that Plaintiff's claim fails because she is libel-proof. Specifically, Defendants argue that Plaintiff's reputation has been badly tarnished by the public accusations that she stalked Wray. (Wray Decl. ¶¶ 6–19.) The Court disagrees.

As a threshold matter, it does not appear that any California court has recognized the libel-proof doctrine. *See Lutfi v. Spears*, 2010 WL 472347, at *6 n.2 (Cal. Ct. App. Nov. 23, 2010) (unpublished). Defendants do not cite any published California Courts of Appeal or California Supreme Court authority recognizing the doctrine. Nor is the Court aware of any such authority. On this basis alone, the Court may reject this argument. However, even if there were such an authority, the doctrine would not apply. Though Plaintiff's publicly reported stalking inevitably tarnished her reputation, it was reported only a handful of times over twenty years ago. It is difficult to imagine that such scant publicity would render Plaintiff's reputation so badly tarnished that she could not be defamed twenty years later. And even if Plaintiff could be considered libel-proof on the subject of stalking, it seems unlikely that this would apply to false statements of sexual assault and physical violence, in much the same way that Benedict Arnold's reputation as a traitor would not excuse false accusations of shoplifting. *Liberty Lobby*, 746 F.2d at 1568. Thus, this argument also fails.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

    v.  Legally Protected Opinion

  Even if all the elements of defamation are satisfied, a defamation claim may nonetheless fail if it is barred by the First Amendment. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) ("[L]ibel can claim no talismanic immunity from constitutional limitations. It must be measured by standards that satisfy the First Amendment."). One restriction imposed by the First Amendment applies to legally protected opinion. "When . . . an author writing about a controversial occurrence fairly describes the general events involved and offers his personal perspective about some of its ambiguities and disputed facts, his statements should generally be protected by the First Amendment." *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995).

  Defendants argue that the statements are legally protected opinion under the First Amendment. Specifically, Defendants argue that the Series is clearly written from Gadd's perspective and states Gadd's opinions. The Court disagrees. It is not clear that the Series states only Gadd's opinions. If anything, the Series appears to present itself as fact, not opinion, by stating that it "is a true story." Thus, this argument also fails.

    vi.  Public Figure and Actual Malice

  Another restriction imposed by the First Amendment applies to public figures. Public figures may only bring claims for defamation if they can show that the defamatory statement was made with "actual malice." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 162 (1967) (Warren, C.J., concurring) (citing *N.Y. Times Co.*, 376 U.S. at 280).

  Defendants argue that Plaintiff qualifies as a public figure, and thus must demonstrate actual malice. The Court first considers whether Plaintiff qualifies as a public figure.

    (a)  Public Figure

  There are two types of public figures. An all-purpose public figure is someone who has "achieve[d] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). A limited purpose public figure is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* Whereas an all-purpose public figure must prove actual malice for all defamation claims against him, a limited purpose public figure must prove actual malice only for defamation claims related to the public controversy he is associated with. *Reader's Digest Assn. v. Super. Ct.*, 37 Cal. 3d 244, 253–54 (1984). Persons running for political office are generally all-purpose public figures. *See, e.g., Kapellas v. Kofman*, 1 Cal. 3d 20, 36 (1969).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

Defendants argue that Plaintiff is either an all-purpose public figure because of her run for office, or a limited purpose public figure on issues related to stalking, harassment, and assault because of her publicly reported stalking of Wray and Dewar. Plaintiff disagrees, arguing that she does not qualify as an all-purpose public figure because her run for office was largely private, and that she does not qualify as a limited purpose public figure because her stalking was last publicized more than twenty years ago, and was not made public through any voluntary act. The Court agrees with Defendants that Plaintiff may qualify as a public figure.

First, Plaintiff offers no authority suggesting that the functional aspects of her political candidacy would disqualify her from being an all-purpose public figure. Plaintiff does not cite any caselaw suggesting that a candidate seeking a private nomination would not qualify as a political candidate and public figure.

Second, Plaintiff offers no binding authority suggesting that the length of time since her stalking was publicized or her lack of voluntary act in getting publicized would disqualify her from being a limited purpose public figure. Courts have consistently held that "the passage of time does not alter an individual's status as a limited purpose public figure." *Partington*, 56 F.3d at 1152 n.8 (collecting cases). Plaintiff's only case to the contrary, *Briscoe v. Reader's Digest Ass'n, Inc.*, is inapposite and outdated, as it concerned an invasion of privacy for truthful disclosure of past crimes, not defamation, and was later overruled. 4 Cal. 3d 529 (1971), *overruled by Gates v. Discovery Commc'ns, Inc.*, 21 Cal. 4th 679 (2004). And while Plaintiff argues that her stalking was not made public through any voluntary act, the caselaw makes clear that a person can become a limited public figure if he "voluntarily injects himself <u>or</u> is drawn into a particular public controversy." *Gertz*, 418 U.S. at 351 (emphasis added). Though Plaintiff might not have voluntarily injected herself into controversy, she was undoubtedly drawn into it.

Having found that Plaintiff may qualify as a public figure, the Court next addresses actual malice.

(b)     Actual Malice

If a plaintiff qualifies as a public figure, he must demonstrate that the defamatory statement was made with "actual malice," meaning "knowledge that it was false or with reckless disregard of whether it was false or not." *Curtis Pub. Co.*, 388 U.S. at 162. At trial, actual malice must be proved "by clear and convincing evidence." *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 856 (2018). To survive a special motion to strike under anti-SLAPP, which requires a plaintiff to show a "probability of prevailing," a public figure plaintiff must "show a probability of proving actual malice by clear and convincing evidence." *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1162, 1169–72 (2004).

Defendants argue that Plaintiff cannot show actual malice. The Court disagrees. The Series was adapted from Gadd's theater play, which stated that it was "based on a true story." (Levenson Decl., Ex.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

6.) This disclaimer put Defendants on notice that certain details were likely false. Yet, according to The Sunday Times, Defendants insisted on adding the "this is a true story" line to the Series despite Gadd's concerns. (Levenson Decl., Ex. 5.) This suggests a reckless disregard of whether statements in the Series were false, and thus, actual malice. Thus, this argument also fails.

Because each of Defendants' attempts to defeat the defamation claim fail, Plaintiff has demonstrated that the claim has a probability of prevailing on the merits. Accordingly, the Court **DENIES** Defendants' Special Motion to Strike as to the defamation claim.

        b.    *Plaintiff's Remaining Claims*

Defendants argue that Plaintiff's remaining claims for IIED, negligence, gross negligence, and right of publicity should be stricken if her defamation claim is stricken, as they are similarly premised on the Series. As discussed above, however, Plaintiff's defamation claim survives Defendants' Special Motion to Strike. Therefore, this argument fails. Defendants do not raise any other arguments with respect to these claims.[4] Thus, the Court **DENIES** Defendants' Special Motion to Strike as to the remaining claims.

Accordingly, the Court **DENIES** Defendants' Special Motion to Strike in its entirety.

**V.    DEFENDANTS' MOTION TO DISMISS**

    **A.    Judicial Standard**

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If a complaint fails to adequately state a claim for relief, the defendant may move to dismiss the claim under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges enough facts to allow the court to draw a reasonable inference that the defendant is liable. *Id*. A plaintiff need not provide detailed factual allegations, but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[4] To be sure, Defendants also argue that the claims fail for the reasons set forth in their Motion to Dismiss, citing directly to the Motion. The Court declines to consider these arguments in connection with the Special Motion to Strike, however, because Defendants' reliance on their Motion to Dismiss is an improper attempt to incorporate arguments by reference to circumvent the page limit. *See, e.g.*, *D'Agnese v. Novartis Pharm. Corp.*, 952 F. Supp. 2d 880, 885 (D. Ariz. 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

When ruling on a 12(b)(6) motion, the court must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Dismissal is "appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

**B.   Discussion**

Defendants argue that Plaintiff's claims, as well as her request for punitive damages, should be dismissed under Rule 12(b)(6) because they are inadequately pled. The Court addresses each in turn.

1.   *Defamation*

Plaintiff asserts a claim for defamation. Defendants move to dismiss this claim, making the same arguments from their Special Motion to Strike. However, as explained above in the second step of the anti-SLAPP framework, Plaintiff's defamation claim has a probability of prevailing on the merits, meaning that it is both legally sufficient and supported by evidence. *See Wilson*, 28 Cal. 4th at 821. Therefore, Plaintiff's defamation claim is well-pled. Thus, the Court **DENIES** Defendants' Motion to Dismiss as to the defamation claim.

2.   *IIED*

To plead IIED, a plaintiff must allege: (1) that the defendant engaged in "extreme and outrageous conduct . . . with the intention of causing, or reckless disregard of the probability of causing, emotional distress"; (2) severe or extreme emotional distress; and (3) causation. *Hughes v. Pair,* 46 Cal. 4th 1035, 1050 (2009). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 1050–51 (cleaned up).

Plaintiff asserts a claim for IIED, alleging that Defendants' allegedly defamatory statements were extreme and outrageous and caused her severe and extreme emotional distress. Defendants argue that this claim fails because: (1) no reasonable viewer would understand the statements about Martha to be about Plaintiff; (2) the statements were not so damaging as to be extreme and outrageous; (3) to the extent that Plaintiff alleges Defendants failed to investigate the accuracy of the statements, that failure is not extreme and outrageous; (4) Plaintiff's own conduct is the cause of her emotional distress because she identified herself as the real Martha; and (5) Plaintiff has not suffered any actual emotional distress, as her allegation that she is afraid to go outside is contradicted by her decision to sit for an interview. Defendants miss the mark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

First, as explained above, it appears that a reasonable viewer could understand the statements about Martha to be about Plaintiff. Second, the statements may be extreme and outrageous. The Series states that Plaintiff is a convicted criminal who sexually and violently assaulted Gadd. These statements may rise to the level of extreme and outrageous conduct. *See, e.g.*, *Heineke v. Santa Clara Univ.*, 2017 WL 6026248, at *10 (N.D. Cal. Dec. 5, 2017) ("false accusations of sexual harassment can satisfy the first element of an IIED claim") (collecting cases). Third, Defendants cite no convincing authority suggesting that their failure to investigate the accuracy of the statements would not be extreme and outrageous. While Defendants' cases found that failures to investigate insurance claims and workplace complaints were not extreme and outrageous, they do not state that all failures to investigate are per se not extreme and outrageous. *See Atteukenian v. Ohio Sec. Ins. Co.*, 2023 WL 8939218, at *2 (C.D. Cal. Nov. 17, 2023); *Bowman v. Adams & Assocs., Inc.*, 2022 WL 624882, at *2 (E.D. Cal. Mar. 3, 2022). Fourth, Plaintiff alleges that she was identified and suffered harm before she made public statements identifying herself as Martha. To the extent that Plaintiff's statements afterwards might have led to more harm, Defendants offer no authority suggesting that her contributing conduct would outright bar her claim. And fifth, while Plaintiff's decision to sit for an interview arguably contradicts her allegation that she is afraid to go outside, she also alleges that she has suffered anxiety, nightmares, panic attacks, shame, depression, nervousness, stomach pains, and loss of appetite. Defendants offer no argument that that these allegations are implausible or not credible. Thus, the Court **DENIES** Defendants' Motion to Dismiss as to the IIED claim.

    3. *Negligence and Gross Negligence*

To plead negligence, a plaintiff must allege (1) a legal duty; (2) breach of that duty; (3) causation; and (4) damages. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001). To plead gross negligence, a plaintiff must allege an act of negligence so extreme that it demonstrates "want of even scant care" or "an extreme departure from the ordinary standard of conduct." *City of Santa Barbara v. Super. Ct.*, 41 Cal. 4th 747, 754 (2007). Gross negligence is not a distinct cause of action. Rather, it is "simply a degree of negligence." *Epochal Enters., Inc. v. Encinitas Props., LLC*, 99 Cal. App. 5th 44, 55–56 (2024).

Plaintiff asserts claims for negligence and gross negligence, alleging that Defendants breached duties to accurately represent her, investigate the accuracy of the statements about her, and take measures to prevent viewers from identifying her. Defendants argue that these claims fail because they are largely duplicative of her defamation claim. The Court agrees with Defendants.

Plaintiff's allegations with respect to duty largely mirror her defamation claim. In this manner, Plaintiff essentially alleges that Defendants owed a duty to not defame her. However, Plaintiff offers no authority suggesting that she can bring a defamation claim and a negligence claim premised on that defamation claim. Indeed, multiple courts have rejected such negligence claims as duplicative. *See, e.g.*,

Case 2:24-cv-04744-RGK-AJR    Document 73-2    Filed 09/27/24    Page 17 of 18    Page ID #:2260

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

*Jacques v. Bank of Am. Corp.*, 2014 WL 7272769, at *10 (E.D. Cal. Dec. 18, 2014); *Schering Corp. v. First Databank Inc.*, 2007 WL 1068206, at *7 (N.D. Cal. Apr. 10, 2007).

To be sure, Plaintiff identifies a lone Ninth Circuit case suggesting that a defamation claim may also support a negligence claim: *Winter v. G.P. Putnam's Sons*. 938 F.2d 1033 (9th Cir. 1991). In *Winter*, the Ninth Circuit rejected a negligence claim premised on a publisher's duty to investigate the accuracy of negligent false statements. *Id.* at 1037. But in a footnote, the court stated that "[a] stronger argument might be made by a plaintiff alleging libel or fraudulent, intentional, or malicious misrepresentation, but such is not contended in this case." *Id.* at 1037 n.9. This footnote is of little weight. First, the Ninth Circuit did not state that such a claim would be viable. It simply stated that such a claim *might* be stronger than one that clearly failed. Second, the footnote is plainly dicta. The Ninth Circuit acknowledged that this argument was never made and therefore was not part of its holding. The Court declines to allow otherwise clearly duplicative claims to proceed based on such scant authority. Moreover, even if Plaintiff's negligence claim were not duplicative, her gross negligence claim would still fail because it is not a distinct cause of action. Thus, the Court **GRANTS** Defendants' Motion to Dismiss as to the negligence and gross negligence claims.

4. *Right of Publicity*

To plead a violation of the California common law right of publicity, a plaintiff must allege: (1) the defendant used his identity; (2) the appropriation of his identity was to defendant's advantage, commercially or otherwise; (3) he did not consent; and (4) he was injured as a result. *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1138 (9th Cir. 2006); *see also Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). To plead a violation of the right of publicity under California Civil Code § 3344, a plaintiff must allege: the defendant (1) knowingly (2) used his name, voice, signature, photograph, or likeness, (3) for purposes of advertising (4) without his consent. Cal. Civ. Code § 3344(a). The right of a publicity does not allow an individual to censor all portrayals of him. *Winter v. DC Comics*, 30 Cal. 4th 881, 889 (2003). Rather, it gives him the "right to prevent others from misappropriating the economic value generated by [his] fame." *Id.*

Plaintiff asserts a claim for violation of her right of publicity under California common law. Defendants argue that this claim fails because Plaintiff does not allege that Defendants used her identity to their advantage or for advertising.[5] The Court agrees with Defendants. Plaintiff does not allege that

---

[5] Defendants also argue that Plaintiff's claims are barred under the First Amendment, as claims for violation of right of publicity "'may not be maintained' against 'expressive works, whether factual or fictional.'" *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (quoting *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 871–72 (1979) (Bird, J. concurring)). But in *Time, Inc. v. Hill*, the Supreme Court held that the First Amendment did not bar a New York right of publicity claim, stating that "calculated falsehood should enjoy no immunity in the situation here presented us." 385 U.S. 374, 390 (1967). While Defendants argue that *Time* is inapplicable because it involved a New York law, they fail to appreciate that the case concerned the First Amendment's application to a New York law, and the First Amendment would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04744-RGK-AJR | Date | September 27, 2024 |
|---|---|---|---|
| Title | *Fiona Harvey v. Netflix, Inc. et al.* | | |

she is famous such that Defendants would stand to gain by using her identity. *See id.* Thus, she fails to adequately allege a right of publicity claim either under California common law or California Civil Code § 3344. Thus, the Court **GRANTS** Defendants' Motion to Dismiss as to the right of publicity claims.

     5.    *Punitive Damages*

Punitive damages may be imposed where a defendant is guilty of "oppression, fraud, or malice." Cal. Civ. Code § 3294(a).

Plaintiff includes a prayer for punitive damages in her Complaint, asserting that Defendants acted with oppression, fraud, and malice. Defendants argue that this prayer fails because Plaintiff does not provide any factual allegations to support her assertion. Plaintiff does not dispute this. Instead, Plaintiff argues that Defendants' Motion is improper because, according to her, Rule 12(b)(6) only allows a party to dismiss claims, not prayers for relief. Plaintiff misses the mark. As this Court recently explained, Rule 12(b)(6) is "[t]he proper medium for challenging the sufficiency of factual allegations" underlying a prayer for punitive damages. *Gomez v. Cnty. of Los Angeles*, 2023 WL 3431279, at *1 n.1 (C.D. Cal. Mar. 17, 2023) (quoting *Kelley v. Corrections Corp. of Am.*, 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010)). Having failed to identify any factual allegations showing oppression, fraud, or malice, Plaintiff's prayer for punitive damages fails. Thus, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's request for punitive damages.

**VI.**   **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Strike, **DENIES** Defendants' Special Motion to Strike, and **GRANTS** Defendants' Motion to Dismiss **in part**. Specifically, the Court **DISMISSES** Plaintiff's negligence, gross negligence, common law right of publicity, and California Civil Code § 3344 right of publicity claims, as well as her prayer for punitive damages. Plaintiff's defamation and IIED claims survive.

   **IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | JRE/sf |

---

similarly apply to California law. Because Plaintiff fails to allege all the elements of her claim, however, the Court need not resolve this issue.